**UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF CALIFORNIA**

**OFFICE OF THE CLERK
501 "I" Street
Sacramento, CA 95814**

U.S. District Court, Northern District of California
450 Golden Gate Avenue
Clerk's Office 14th Floor
San Francisco, CA 94102

**RE:** **DAVID LANCASTER vs. A. P. KANE**
**USDC No.:** **2:07-CV-02583-GEB-KJM**

Dear Clerk,

**MMC**

Pursuant to the order transferring the above captioned case to your court, dated April 04, 2008 , transmitted herewith are the following documents.

**Paper Documents: 5 to 5.**
**Electronic Documents: 1 to 5.**

**(PR)**

Documents maintained electronically by the district court are accessible through PACER for the Eastern District of California at **https://ecf.caed.uscourts.gov**.

Please acknowledge receipt on the extra copy of this letter and return to the Clerk's Office.

Very truly yours,

**April 4, 2008** /s/ **L. Mena-Sanchez**

Deputy Clerk

RECEIVED BY: ______________________

Please Print Name

DATE RECEIVED: ______________________

NEW CASE NUMBER: ______________________

I hereby certify that the annexed instrument is a true and correct copy of the original on file in my office.
ATTEST: VICTORIA C. MINOR
Clerk, U. S. District Court
Eastern District of California
By L. Mena-Sánchez
Deputy Clerk
Dated 4/4/08

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID LANCASTER,

Petitioner,

No. CIV S-07-2583 GEB KJM P

vs.

A.P. KANE, Warden, et al.,

Respondents.

ORDER

_______________________________/

Petitioner, a state prisoner proceeding pro se, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is presently incarcerated in Monterey County and he challenges the execution of his sentence. When a prisoner challenges the execution of his sentence, the preferable venue is the court with jurisdiction over the place where the prisoner is confined. See Dunne v. Henman, 875 F.2d 244, 249 (9th Cir. 1989). Accordingly, in the furtherance of justice, IT IS HEREBY ORDERED that this matter is transferred to the United States District Court for the Northern District of California.

DATED: April 4, 2008.

U.S. MAGISTRATE JUDGE

1/kc/lanc2583.108a

CLOSED, HABEAS

# U.S. District Court
## Eastern District of California - Live System (Sacramento)
## CIVIL DOCKET FOR CASE #: 2:07-cv-02583-GEB-KJM
## Internal Use Only

(HC) Lancaster v. Kane et al
Assigned to: Judge Garland E. Burrell, Jr
Referred to: Magistrate Judge Kimberly J. Mueller
Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

Date Filed: 12/03/2007
Date Terminated: 04/04/2008
Jury Demand: None
Nature of Suit: 530 Habeas Corpus (General)
Jurisdiction: Federal Question

**Petitioner**

**David Lancaster** represented by **David Lancaster**
E-96955
CORRECTIONAL TRAINING FACILITY (689)
P.O. BOX 689
CENTRAL
SOLEDAD, CA 93960-0689
PRO SE

I hereby certify that the annexed instrument is a true and correct copy of the original on file in my office.
ATTEST: VICTORIA C. MINOR
Clerk, U. S. District Court
Eastern District of California
By L. Mena-Sanchez Deputy Clerk
Dated 4/4/08

V.

**Respondent**

**A. P. Kane**
*Warden*

**Respondent**

**Attorney General for State of California**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/03/2007 | 1 | PETITION for WRIT of HABEAS CORPUS by David Lancaster. [MAINTAINED ON PAPER] (Attachments: # 1 Part 2 of 2)(Mena-Sanchez, L) Modified on 12/4/2007 (Mena-Sanchez, L). (Entered: 12/04/2007) |
| 12/04/2007 | 2 | PRISONER NEW CASE DOCUMENTS ISSUED; (Attachments: # 1 Consent to Magistrate) (Mena-Sanchez, L) (Entered: 12/04/2007) |
| 12/04/2007 | | SERVICE BY MAIL: 2 Prisoner New Case Documents for GEB served on David Lancaster. (Mena-Sanchez, L) (Entered: 12/04/2007) |
| 12/17/2007 | 3 | CONSENT to JURISDICTION by US MAGISTRATE JUDGE by David |

| | | |
|---|---|---|
| | | Lancaster. (Benson, A) (Entered: 12/18/2007) |
| 12/18/2007 | 4 | ORDER signed by Judge Kimberly J. Mueller on 12/17/2007 ORDERING Petitioner shall submit, within 30 days from the date of this order, an affidavit in support of his request to proceed in forma pauperis or the appropriate filing fee; the Clerk of the Court is directed to send petitioner a copy of the ifp form used by this district. (Attachments: # 1 ifp Application)(Reader, L) (Entered: 12/18/2007) |
| 12/18/2007 | | SERVICE BY MAIL: 4 Order, served on David Lancaster (Reader, L) (Entered: 12/18/2007) |
| 01/14/2008 | | RECEIPT number # CAE200004071 $5.00 fbo petitioner David Lancaster by State of CA on 1/14/2008. (Marciel, M) (Entered: 01/14/2008) |
| 04/04/2008 | 5 | ORDER signed by Magistrate Judge Kimberly J. Mueller on 4/4/08 ORDERING that this matter is TRANSFERRED to the U.S. District Court for the Northern District of California. Original file, certified copy of transfer order, and docket sheet sent. CASE CLOSED. (Mena-Sanchez, L) (Entered: 04/04/2008) |
| 04/04/2008 | | SERVICE BY MAIL: 5 Order, Case Transferred Out to Another District, served on David Lancaster. (Mena-Sanchez, L) (Entered: 04/04/2008) |
| 04/04/2008 | 6 | TRANSMITTAL of DOCUMENTS re 5 Order, Case Transferred Out to Another District, on *4/4/2008* to * U.S. District Court, Northern District of California* *450 Golden Gate Avenue* *Clerk's Office 14th Floor* *San Francisco, CA 94102*. * <br>Paper Documents: 5 to 5. * <br>*Electronic Documents: 1 to 5. *. (Mena-Sanchez, L) (Entered: 04/04/2008) |

E-filing

**David Lancaster**
P.O. Box 689
Soledad, CA. 93960-0689
CDC ID#: E-96955/CW-219-Up

530

FILED
08 APR -8 PM 3:23
FILED
DEC 3 2007
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

1880 MMC

C 08 1880 MMC (PR)

UNITED STATE DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

David LANCASTER,

Petitioner,

vs.

A. P. KANE, Warden, Soledad,

Respondent.

No. 2:07-CV-2583 GEB KJM (HC

PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY.

ORIGINAL

OBJECTION TO THE SUPERIOR COURT FINDINGS.

Petitioner, respectfully, **does not agree** with the findings. The court incorrectly stated that Petitioner has been serving time in the CDC since April 1998. However, that is an incorrect statement. Petitioner has been serving time in the CDC since April of 1995 after leaving CYA.

The lower court improperly considered unsuitability factors first rather than suitability factors which was not a correct application of the Board's regulations.

According to In re Scott, (2004) 119 Cal.App.4th at 886, (Cal. Code Regs., tit. 15, § 2402 subd. (a) "Then panel shall first determine whether the life prisoner is suitable for release on parole.") The lower court misapplication of the Board's own rules. (**See** Exhibit O, pp. 3-4, lines 7-28, 1-3.)

The Superior Court, which offered the last decision on Petitioner's claim, concluded that the BPT findingthe offense was more aggravated than the minimum necessary to sustain a conviction for second degree murder. The court **did not** detail what evidence is considered in reachingthat conclusion. This was Petitioner third time that the BPT denied parole based upon the unchanging facts of Petitioner's commitment offense.

In Biggs, the Ninth Circuit stated that although reliance on the nature of a prisoner's offense may satisfy the "some evidence" requirement, continued reliance on an unchanging factors such as the circumstances of the offense could result in a due process violation if the prisoner continually demonstrates exemplary behavior and evidence of rehabilitation. Biggs, 334 F.3d at 916.

Biggs, 334 F.3d at 916:

> "The Ninth Circuit added that '"[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative coals esposed by the prison system and could result in a due process violation." Id. at p. 917.

Petitioner circumstances of the crime will always be what they were, and Petitioner's motive for commiting them will always be trivial. Petitioner has no hope for ever obtaining parole except perhaps that a panel in the future will arbitrarily hold that the circumstances were not that serious or the motive was more than trivial. Given that no one seriously contends lacks of seriousness or lack of

triviality at the present time, the potential for parole in this case is remote to the point of **non-existence.** (**See** Rosenkrantz, (2006) WL 2327085 (C.D.Cal.).)

As the California court have concluded, an "inexplicable motive" is "one that is unexplained or unintelligible, as where the commitment offense does not appear to be related to the conduct of the victim and has no other discernable purpose." (**See** In re Scott, (2004) 119 Cal.App.4th at 892-93.) To call Petitioner's crime "inexplicable," as the court has (**See** Exhibit O, p. 3), contradicts all the evidences in the record. Petitioner motive clearly **does not fit** this difinition. Just like the court stated in lines 26-27 "when Petitioner arrived at the park he was confronted by the young man and several of his friends, one of whom was armed with a broken bottle and another with a knife.

Accordeing to California appellate court this provision contemplates that the victim was made to suffer in some exceptional way. (**See** In re Scott, (2004) 119 Cal.App.4th at 892 [holding that a detemination that the crime had been carried out with "exceptional disregard for human suffer" meant that it was perpetrated in an sepecially cruel manner with disregard for human suffering and required more than the simple cruelty and callousness necessary to find that a defendant killed with malice]; In re Smith, (2003) 114 Cal.App.4th 343, 366-67 (same).) There is no evidence in the record supporting such a conclusion.

In Petitioner Third Appellant District Court of Appeals opinion #C011356, state in part:

> "... he played a tape recording of his statement made to officers Montes and Williams, confirming the officers' test imony, including defedant lack of intent to shoot anybody..." Id. p. 4, ¶ 2.

According to In re Lee, (2006) Daily Appellate report (DAR) October 19, 2006 at p. 13963 is as follows:

> "... We concluded, however, that the Governor erred. The test **is not** whether some evidence support the reasons the Governor cities for denying parole, but whether some evidence indicates a parolee's release unreasonable endangers public safety ..." (Cal. Code Regs tit. 15, § 2402 subd. (a).)

A reminder of Petitioner's facts of his crime. In Petitioner third Appellate District Court opinion #C011356, states in part:



"... He believed one of the group had a bottle and another had a stick [low court already stated the group was armed with a broken bottle and another with a knif. See Exhibit O, p. 3, lines 26-27]. When he pulled out the gun the group scattered, except for Tupas whom he believed had the bottle.
"... thinking the safety was on and only intending to scare Tupas, aimed to the left and down at the ground and fired 2 to 3 shots..." Id. p. ¶ 4.

In stead of being atrocious, Petitioner conduct involved **no more** than was necessary to commit his crime. (See Rosenkrantz, supra, 29 Cal.4th at p. 683 [cannot deny parole based on nature of offense if defedant acts were the bare minimum needed to commit the offense.]

The Superior Court **did not** focus on how the Board **did not** fous their parole decision on whether Petitioner continued to pose an unreasnable risk to public safety. Petitioner was denied his due process rights to a fare decision marker. Superior Court just recitied the Board of Prison Hearing reason why Petitioner should be denied parole. That is not a fare decision marker. Superior Court **has not** ruled on Petitioner merits of his case, just recitied the BPT decision.

To avoid such an absurd result this court must apply the bare minimum test to how Petitioner actually commited his crime. Here Petitioner **did not** in fact intend to kill Mr. Tupas and thus **did not** act in a manner beyond the minimum necessary to commit his crime. To deny parole this court must relate to his continued unreasonable risk to public safety. (See In re Lee, (2006) DAR October 19 at p. 13693; Rosenkrantz v. Marshall, (2006) WL 2327085 (C.D.Cal.), p. 16; Johnson v. Finn, (2006 WL 195159 at p. 8, n. 3 (E.D.cal.); Shaputis, (2005) 135 Cal.App.4th at 231, 232.)

Superior Court **did not** rule on Petitioner Ground Four of his habeas corpus, therefore, that court has not rule on his merits of case.

Petitioner psychological report stated "there is no need for further participation in self-help group or therapy." (See Exhibit D, p. 4.)

It appears that the Board and the Superior Court would put Petitioner in an **impossible situation** by demanding proof of therapy which will never be given since there is no diagnored need. (See In re Deluna, (2005) 24 Cal.Rptr. 3d at 651-52; In re Cortinas, (2005) 16 Cal.Rptr.3d 271 [there is no need for therapy]; Lancaster v. BPT, (2005) CIV-S-03-2377-GEB-GGH (R&R) at p. 12, lines 24-26 [Dr. Marltte



did not find that Petitioner required mental health treatment. Nor Dr. Marlette recommend that Petitioner continued to attend AA meeting. (See Ground Four.) (See Sass v. California Board of Prison Term (2006) DAR September 5, 2006.)

The Board or Superior Court and/or government may not coerce anyone to participate in religion or religious faith or tends to do so. Under Turner v. Hickman, (E.D.Cal. 2004) 342 F.Supp.2d 887, the emphasis placed on God, spirituality and faith in a higher power' by twelve-step program such as AA clearly support a determination that the underlying basis of the program is religious. (See Cox v. Miller (2d Cir. 2002) 296 F.3d at 94; Lee v. Weisman, (1992) 505 U.S. 577; Allegheny County v. Greater Pittsburg ACLU, ( ) 492 U.S. at 591). **Therefore**, the Board **cannot** deny Petitioner parole because he **does not** participate in AA twelve-step program. The Board has violated Petitioner's first Amendment right. Therefore, there is **no "some evidence"** that Petitioner would pose a unreasonable endanger to public safety not participate in AA.

In In re Lee, (2006) at 13693 state in part:

> "The test **is** not whether "some evidence" support the reason the Governor cities for denying parole, but whether some evidence indicates a parolee's release unreasonable endanger public safety.

That is the question this court should focus on. Superior Court recitied the same denial that BPT citied to deny Petitioner no definite offer of employment. Also no family member no longer live in California. (See Exhibit O, p. 5, lines 10-11.)

However, the Superior Court violated Petitioner's due process, by not reviewing the entire record in this action. If that Court had reviewed the record it would have found support letter from family member along with friends. The court would have found the following: (1) Letter from Ward Downs; (2) Letter from my brother Walter Lancaster along with a letter from his grilfriend; (3) two letter from G.C.Rescue Mission Half-way-house. (See Exhibit E.)

The Courthas not given Petitioner a fare decision on his merits of his case. (See XIVth Amendment, U.S. Const.)

Bottom line, Petitioner's not having a job or a place to recide upon his release has no bearing upon his future threat to public safety. (See Exhibit H.)



**The** Board **cannot** interpret such a situation as a future threat to public safety. (**See** In re Lee, (2006) DAR at p. 13963.)

The record establishes that Petitioner **does not** pose an unreasonable risk to public safety. Therefore, this petition should be granted.

///

///

///

///

///

///

///

///

///

//

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

**United States District Court** — District: EASTERN DISTRICT

Name: David LANCASTER

Prisoner No.: E-96955

Case No.:

Place of Confinement: CORRECTIONAL TRAINING FACILITY (CTF) P.O. Box 689 Soledad, CA. 93960-0689

Name of Petitioner (include name under which convicted): David LANCASTER

v.

Name of Respondent (authorized person having custody of petitioner): A. P. KANE, Warden Soledad,

The Attorney General of the State of: C A L I F O R N I A

## PETITION

1. Name and location of court which entered the judgment of conviction under attack San Jaoquin Superior Court, 222 E. Weber, Ave. Stockton, CA. 95202.

2. Date of judgment of conviction June 10, 1991.

3. Length of sentence 15-years-to-life, plus three (3) years enchancement.

4. Nature of offense involved (all counts) Implied malice 2nd degree murder w/use of weapon.

///

///

5. What was your plea? (Check one)
   (a) Not guilty XX
   (b) Guilty ☐
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   Not Applicable.

   ///

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury [X]
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No XX

8. Did you appeal from the judgment of conviction?
   Yes X No ☐

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court Not Applicable.

(b) Result ///

(c) Date of result and citation, if known ///

(d) Grounds raised ///

///

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court ///

(2) Result ///

///

(3) Date of result and citation, if known ///

(4) Grounds raised ///

///

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court ///

(2) Result ////

///

(3) Date of result and citation, if known ///

(4) Grounds raised ///

///

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

Yes XX No _

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court San Jaoquin County Superior Court

(2) Nature of proceeding Petition for writ of habeas corpus.

///

(3) Grounds raised Violation of 8th & 14th Amend; violation of 5th & 14th Amend; violation of 14th Amend; violation of 14th Amend; violat-

14th Amend; violation of 14th Amend.

///

///

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No XX

(5) Result Denied. (See Exhibit O.)

(6) Date of result October 10, 2006.

(b) As to any second petition, application or motion give the same information:

(1) Name of court Court of Appeals, Thrid Appellate District.

(2) Nature of proceeding Petition for writ of habeas corpus.

///

(3) Grounds raised **SAME AS ABOVE.**

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No XX

(5) Result Denied. (See Exhibit O.)

(6) Date of result November 16, 2006.

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc. Yes XX No ☐

(2) Second petition, Yes XX No ☐ (See Exhibit O.)

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

Not Applicable.

///

///

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

A. Ground ONE: PERITIONER'S 16 CALENDER YEARS SENTENCE FOR 15-TO-LIFE IS IN VIOLATION OF STATE AND FEDERAL PROHIBITION AGINST CRUEL AND/ OR UNSUAL PUNISHMENT. (EIGHTH and Fourteenth Amendment, U.S. Const. Art. I, §§ 7 & 17; Solem v. Helm, (1983) 465 U.S. 463; In re Lynch, (1972) 8 Cal.3d 410, 414; In re Dannenberg, (2005) 23 Cal.Rptr.3d 417, 441.)

Supporting FACTS:

Petitioner was received into the Department of Correction on July 13, 1991, with a sentence of 18-years-to-life.

On April 4, 2006, Petitioner's third Parole Consideration hearing, the Board found Petitioner was a danger to scoiety and that he is unsuitable for release on parole. (See Exhibit A, p. 1, lines 17-20.)

Petitioner requested his **maximum term** under In re Robriguez, (1975) 14 Cal.3d 639. The Correctional Authorities answered with a CDC form 1897 Calculation sheet (See Exhibit B) which shows a Based date of October 27, 1992, minus preconfinement credits of 342 and set his **maximum Eligible Parole Date** at October 27, 2007.

The law of Rodriguez as explained in In re Dannenberg, (2005) 23 Cal.rptr.3d 417, 435-36, required the Adult Authority to set actual maximum terms for all inmates, proportionate to their individual culpability. Thus, the BPT could grant parole before the end of the maximum term, but authority **must release** him upon the expiration of that maximum terms. (See Rodriguez, supra, 14 Cal.3d 639, 646-53.) In Dannenberg, supra, the California Supreme Court found that once an actual maximum term is fixed under Rodriguez, supra, that the prisoner **must be released upon expiration of that maximum term.**

They also found that the BPT could have concluded that Petitioner could be granted parole before the end of his maximum term, as fixed by the Adult Authorities, but in any event **must** be released upon **expiration of the maximum eligible parole date.** (See Exhibit B). The California Department of Corrections, Operations Manual section 73030.17.2-ISL Primary Terms Fixing States: In re Rodriguez, (1975) 14 Cal.3d 639, held that the paroling authority must determine the

Continued on Page 5 (a)

time of incarceration based on the severity of the crime(s). Clearly the authorities fixed Petitioner's maximum eligible parole date based on the severity of his commitment offense, set his maximum term to **expire on** October 27, 2007, Petitioner is now fast approaching his maximum **term**. (See Exhibit B.)

In Dannenberg, supra, at 441 the court held, even if sentenced to a life-maximum term **no** prisoner can be held for a period grossly disproportionate **to** his or her individual culpability for the commitment offense. Such excessive confinement, we have held, violates the cruel or unusual punishment clause (art. I, § 17) of the California Constitution (Rodriguez, supra, 14 Cal.3d 639, 646-56; Wingo 14 Cal.3d 159, 175-183.) Thus, we acknowledge section 3041 (b) cannot authorize an inmate's retention, **even for reason of public safety,** beyond this constitutional **maximum** period of confinement. Clearly Petitioner is being held past his constitutional **maximum** period of confinement which has been set at October 27, 2007.

**PRAYER FOR RELIEF.**

1. Order the Board to uphold Petitioner's maximum parole date at October 27, 2007;
2. Order the Adult Authority to follow the mandated in Dannenberg, supra, release Petitioner upon the expiration of his mandatory release date of October 27, 2007.

B. Ground TWO: PETITIONER CONTENDS THAT THE BOARD OF PRISON HEARING (BPH) VIOLATED "SOME EVIDENCE" RULING IN DENYING PETITIONER'S PAROLE RELEASE DATE. (See Fifth & Fourteenth Amendment, U.S. Const.; In re Rosenkrantz, (2000) 80 Cal.App.4th 871; In re Minnis (1974) 7 Cal.3d 639; Wolff v. McDonnell (1974) 418 U.S. 539.)

Supporting FACTS:

On April 4, 2006, **DECISION** (See Exhibit A) parole consideration hearing, the Board denied him a parole release date, specifically using the commitment offense; especially violent and brutal manner, disregard for human like. (See Exhibit A, p. 1, lines 17-20.)

**Contiuned on Page 5 (b)**

The Supreme Court held in **In re Rosenkrantz** that:

> "[T]he judicial branch is authorized to review the factoual basis of a decision of the Board denying parole **in order** to insure that the Decision comports with the requirement of due process of law, but that in conducting such a review the court may inquire only whether **some evidence** in the record before the Board support the decision to deny parole based upon factors specified by the statute and regulation. If the decison's consideration of the specified factors is not supported by **some evidence** in the record and thus is deviod of a factorual basis, the court should grant the prisoner's petition for writ of habeas corpus and should order the Board to vacate its decision denying parole and thereafter to process in accordance with due process of law."

Pettioner's commit offense was not especially violent and brutal. Indeed the crime falls sqarely within the middle of the Board's matrix given the nature and behavior of both the victim and Petitioner. Because there was no "prior relationship which did not contributed to the motivation for the act" victim category III-B applies.

The Board has **failed to offer** anything more than the **stock assertion** that the crime was commited in an especially violent and brutal manner. These **assertion** are entirly without evidentiary support. There is **absolutely no** evidence of suffering and the **Board** has **failed** to point to **anything** showing this was a unique or aggravted example of murder. (**See** In re Smith, (2003) 114 Cal.App.4th 343, 367, citing In re Smith, (2003) 109 Cal.App.4th 489, 504, 506, [**no evidence that the crime was especially heinous, callous, etc.**])

The matrix is a codification of the more commonplace variations of murder and it rates the various circumstances and victim consideration on a scale which assigns increasing terms of punishment based on increasing severity. The very existence of the matrix demonstrates that different instances of murder can be meaningfully compared. The Board totally **ignore** the existance of the matrix when considering whether a crime is "especially violent and brutal manner." "Its is a well-established rule of statutory construction that when a word or phrase has been given a particular scope or meaning in a one part or portion of the law it shall be given the same scope and meaning in

**Contiuned on Page 5 (c)**

other parts or portions of the law.: (See People v. DeGuzman, (2003) 113 Cal.App4th 538, 547-48, citing People v. Mckay, (2002) 27 Cal.4th 601, 621.)

Since it is clear that within one part of the statutory scheme governing parole there is a mandated framework for quantifying the severity of any given instance of murder, it seems equally clear that the Board has to be **precluded** from adopting contrary standards for similar and related parts of the same scheme. It seems contrary to both common sense, and the apparent legislative intent, for the Board to examine a crime that fall preciely in the max-of the martix and characterizes it as being so exceptionally egragious as to invoke the rule that the Board "shall normall" set a parole date. (See Cal. Pen. Code, § 3041 (a).)

The Board's use of "factor" (B) in § 2402 (c)(1), "dispassion" reads such as an execution style murder. There was **never** any finding, or mention of Petitioner's offense being an "execution style murder. A reminder Petitoner was found guilty by a jury of second degree murder. (See Lancaster v. State of California, San Joaquin County Superior Court #48957.) The Board's use of "factor" (D) in § 2402 (c)(1), that the offense **was** carried out in a "exceptionally violent and brutal manner."

According to In re Richard Shaputis (2005) 135 Cal.App.4th 217 state:

> "[T]he court found **no evidence** to support the ground that the offense was especially cruel or callous, dispassionate or calculated or exhibit callous, disregard for human suffering, and **no evidence** that his former alcohol abuse redered him a currect threat to public safety. The court determined that bacause shaputis criminal conduct constituted the minimum necessary for his conviction for second degree murder, the Board could not continue to rely on his commitment offense to find him unsuitable for parole."

The Board's reliance on the unchangable circumstance of Petitioner commitment offense in order to make a determination of his unsuitability and reason to deny him a parole release date, violates the double jopardy, liberty interest, due process, and equel protection, under the United States Constitution.

**contiued on Page 5 (d)**

Under the Board's own regulation, CCR, tit. 15, § 2402 (c)(1)(A)-(E) commitment offense; the Board's finding that Petitioner's offense was "exceptionally violent and brutal manner." (**See** Exhibit A, p. 1, lines 17-20.)

In In re Scott's (2004) 119 Cal.App.4th 871 states:

> "All violent crime demonstrates the perpetrator's potential for posing a grave risk to public saftey, **yet parole is mandatory** for violent felons serving determinate sentences (see Pen Code, § 3000 (b)(1.)" id. p. 891

There is **not** even a modicum of evidence to support their finding which is devoid of any factual basis. The denied of parole, in this case, is no more than an **ispse dixit**, the hearing was a sham. The Board's finding using the commitment offense groundless and unsupported by evidence, and is in complete opposition to all the facts of the record.

The **"some evidence"** Standard has been completely **ignored** by the Board. The Board failed to present evidencePetitioner is unsuitable for a parole, and there was **not even** the "modicum" required by In re Rosenkrantz, (2000) 80 Cal.App.4th 871.

The Board decision is subject to judicial review pursuant to the "some evidence" standard set forth in Rosenkrantz, supra, 29 Cal. 4th 616. This is we "inquire only whether some evidence in the record before the Board support the decision to deny parole upon the factors specified by statute and regulation." Citing In re Powell, (188) 45 Cal.3d 894; Superintendent v. Hill, (1985) 472 U.S. 445; also see In re DeLuna, (2005) 126 Cal.App4th 585, 591, 24 Cal.Rptr. 3d 643; In re Smith, ( ) 114 Cal.App.4th 343, 366-73, 7 Cal.Rptr. 3d 655; In re Cortinas, (2004) 16 Cal.Rptr.3d 271, 286; In re Minnis (1972) 7 Cal.3d 689; IN re MORRALL, (2003) 102 Cal.App.4th 280, 292, 125 Cal.Rptr.2s 391; In re Caswell, (2001) 92 Cal.App.4th 1017, 1030 112 Cal.Rptr.2d 462; In re Spence, (1972) 36 Cal.App.3d 636, 639-40, 111 Cal. Rptr. 782; Powell, supra, 45 Cal.3d p. 904, 248 Cal. Rptr. 431; In re Scott, (2004) 119 Cal.App.4th 871, 15 Cal.Rptr.3d 32; In re Smith, (2003) 109 Cal.App.4th 489, 504, 506, 134 Cal.Rptr.2d 781; Saif'ullah v. Carey, (2005) U.S.E.D. # CIV-S-02-2664- MCE DAD-

**Continued on Page 5 (e)**

P; Cato v. Rushen, (9th Cir. 1987) 824 F.2d 703, 705; Toussaint v. McCarthy, (9th Cir.1986) 801 F.2d 1080, 1105; Powell v. Gomez, (9th Cir. 1994) 33 F.3d 39, 40.)

If the decision's consideration of the specified factors is not support by some evidence in the record and thus is devoid of a factual basis, the court should grant the prisoner's petition for writ of habeas corpus and should order the Board to vacate its decison denying parole and thereafter to proceed in accordance with due process of law. Petitioner is entitled to a parole release date, by the United States Constitutional and by the Board own Rules and Regulations. (See XIVth Amendment, U.S. Const., Bill of Rights.; Cal. Const., Art. I, § 7.)

the procedures that led to the deprivation were not constitutionally sufficient. Kentucky Dep't of Correction v. thompson, (1989) 490 U.S 454, 459-60; MCQuillion v. Duncan, (9th Cir. 2002) 306 F.3d 895, 900. In the parole context, a prisoner alleging a due process claim must demonstrate the existence of protected liberty interest in parole, and the denial of one or more of the procedural protections that must be afforded when a prisoner has a liberty interest in parole. The U. S. Supreme Court held in 1979 and reiterated in 1987,that "a state's scheme, if it uses mandatory languge, creates a presumption that parole release will be granted when or unless certain designated findings are made, and thereby gives rise to a constitutional libertyinterest." McQuillion, 306 F.3d at 901, (citing Geernholtz v. Inmates of Nebraska Penal, (1979) 442 U.S. 1, 7; Board of Pardons v. Allen, (1987) 842 U.S. 369, 373). The Ninth Circuit Court of Appeal has held that California parole scheme creates a cognizable liberty interest in release on parole because Penal Code, § 3041 uses mandatort language and is similar to the Nebraska and Montana statutes addressed in Geernholtz and Allen, McQuillion, 306 F.3d at 901-902. As the Ninth Circuit has explained, section 3041 of the California Penal Code creates in every inmates a cognizable liberty interest in a parole which is protected by the procedural safeguards of the Due Process Clause," and that interest arises "upon the incarcerat-

Contiuned on Page 5 (f)

ion of the inmates." (see Biggs v. Terhune, (9th Cir. 2003) 334 F.3d
910; 914-915.); In re Rosenkrantz, (2002) 95 Cal.App.4th 358, 372;
In re Prewitt (1972) 8 Cal.3d 470, 475-76; 105 Cal.Rptr. 318, 503 P.
2d 1326; In re Thomas (1984) 161 Cal.App.3d 721, 732, 206 Cal.Rptr.
719; sandors v. Conner, (1995) 515 U.S. 472, 115 S.Ct. 2293, 132 L.
Ed.2d 418; baumann v. Arizona Dep't of Correction, (9th Cir. 1985)
754 F.2d 844; In re DeLuna, (2005) 126 Cal.App.4th 585, 591, 24 Cal.
Rptr.3d 643, 648; In re Smith (Rosenkrantz), (2003) 109 Cal.App.4th
489, 503, 134 Cal.Rptr.2d 781, 791; Coleman v. BPT (2004) (E.D.cal.)
#CIV-S-96-0783 LKK PAN P; Powell v. Gomez (9th Cir. 1994) 33 F.3d 39
40; Iron v. Warden of California, Solano Prison, (2005) 358 F.Supp.
2d 936, 947-978; Ableman v. Booth (1858) 62 U.S. 506.)

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
/

C. Ground THREE: THE BOARD'S "UNREASONABLE RISK OF DANGER TO OTHER'S" AS A "PRESUMPTION OF UNSUITABILITY" IS NOT A VAILD REGULATION AND IS A MISAPPLICATION OF STATUTORY AUTHORITY. (See Fourteenth Amendment, U.S. Const., Wolff v. MCDonnell, (1974) 418 U.S. 539; IN re Minnis, (1972) 7 Cal.3d 639; Biggs v. Terhune, (9th Cir. 2003) 334 F.3d 910.)

Supporting FACTS:

On Petitioner's April 4, 2006, parole hearing, the Board found:

> "[T]he Panel has reviewed all the information received from the public and relied on the following circumstances in concluding that the prison in not suiable for parole and would pose an unreasonable risk of danger to scoiety os a* threat to public safety if released from prsison. The fact that lead us to this was the offense was carried out in an especially violent and brutal manner in which a 16-year old boy lost his life." (See Exhibit A, p. 1.)

This "presumption of unsuitability" by the Board is not a correct determination: (1) the Board failed to follow its own Rules for a determination of suiability versus unsuitability; (2) this finding was incorrect as it violated the jury verdict of second degree murder (3) Petitioner's "arrest history was imprperly considered as a factor of unsuitability bacause of Petitioner's previous arrest are not previous record of violence." (See Exhibit C, p. 4 [i.e. II Postconviction factors, A-E.)

As an example of this misapplication of the Board's own rules, the reulations relied on by petitioner are stated in the Determination of Suitability Factors.

**Suitability Factors (CCR, tit. 15, § 2402 (d));**

(1) No Juvenile Record: Petitioner has no juvenile record of assult behavior (Applicable);

(2) Stable Social History: As Petitioner has previously noted and evidence, he has strong community support and ties, he has a vocation, support system and plans on a family life, rather than irresponsible behavior. (Applicable);

Dr. Macomber States the following:

> "... He also has strong family support in the community, as well as promies of residence and job offer..."

(3) Signs Of Remorse: Petitioner has admitted his responsibility in this crime and has further admitted that, in hindsight, the offense could have been easily aviolded. (Applicable);

Continued on Page 6 (a)

Doctor M. Macomber stated in Petitioner's **most** recent Psychosocial Report under **XIII. Review of Life Crime:**

> "... Mr Lancaster does have feeling of sorrow and remorse at his irresponsible action in the commitment offense. There is a letter, dated 10/26/92, in the central file that Mr Lancaster wrote expressing his feelings of sorrow and remorse. He noted that this was a senseless killing. He acknowledge that the victims family lives were devastated by his actions. He realizes that he has caused enormous suffering and grief to many people. He feelings of remorse appear to be sincere and gennine..." (See Exhibit D, p. 3, ¶ 2.);

(4) **The Motivation For The Crime:** the crime was **not** motivated by personal gain or influence was not related to criminal enterprise and was a belief of self-defense **(Applicable);**

(5) **Lack Of criminal History:** Petitionerhas no significant criminal history. There is a "joy-ridding" offense, but Petitioner has **no** servious or violent arrests (**Applicanle);**

(6) **Age:** Petitioner has matured greatly **in** comparion to his age at the time of the commitment offense and this greatly **reduces** the probability of recidivism **(Applicable);**

(7) **Understanding Plans For The Future:** Petitioner has made realistic plans for the future. He has ongoing commitment by friends to provide housing and an offer of employment upon release **(Applicable) (See** Exhibit C, p. 5, [**IV. Future Planes** A-C], **also see** Exhibit E-F);

(8) **Institutional Behavior:** Petitioner has continuously demonstrated a positive asset and performed without affressive or anger behavior, and Petitioner has matured to accept responsbility for his behavior **(Applicable) (See** Exhibit F**).**

**Unsuitability Factors (CCR, tit. 15, § 2402 (c));**

(1) **Commitment Offense, including;**

(A) **No Multiple Victims,** there is **only** one (1) victim in this case **(Not Applicable);**

(B) **The** offense was not carried out in a dispassionate and calculated manner such as an execution-stly murder **(Not Applicable) also see** Cal. Code, § 190.2 (a)(14);

(C) The victim was not abuse or defiled **(Not Applicable);**

(D) The offense was **not** an exceptionallt callous disregard for human suffering. **(Not Applicable).**

**Continued on Page 6 (b)**

According to Scott, decision at 891 states:

> "[A]ll second degree murder by definition involve some callousness-**i.e.,** lack of emotion or smpathy, emotion insensitivity, indifference to the feeling and suffering of other. As noted however, parole is the **rule,** rather than the exception, and conviction for second degree murder **does not automatically render one unsuitable."** (Citing In re Smith, (2003) 114 Cal.App.4th 343, 366 [7 Cal.Rptr.3d 655].)

**(2) Previous Record of Violent:** Petitioner has **no** previous record of violent **(Not Applicable) (See** Exhibit D, pp. 3-4 [**XIV. Assessment of dangerousness].)**

**(3) Unstable Social History:** Petitioner has a very stable social history **(Not Applicable) (See** Exhibit D, p. 4 [**XV. Clinician Observation/Comments/Recommendation].), also see** Exhibit C, p. 5 [**C. Assessment];**

**(4) Sadistic Sexual Offense:** Petitioner has no sadistic sexual offense **(Not Applicable);**

**(5) Psychological Factors:** Petitioner **has no** mental disorder and he **has** shown only great improvement in his attitudes. **(Not Applicable)**

According to Petitioner recent Psychological report by Dr. M. Macomber states:

> "[T]here are **no** mental or emotional problems in this case that would interfere with parole plaining." "... [T]here is **no** need for further participation in self-help group or therapy..." **(See** Exhibit D, p. 4 [**XV. Clinician Observation Comment/Recommendations),**

The Board is puting Petitioner in an impossible situation by demanding proof of therapy which will never be given since there is no diagnosed need. Petitioner has consistently been rated in his doctor and counselors report as posing only average or even low risk to the public if release. The Board's decision to **ignore** the experts and announce a contrary finding, without any evidentiary support **is** a violation of due process. **(See** Exhibit C-D; **also see** In re DeLuna, (2005) 24 Cal.Rptr.3d 643, 651-52).

**(6) Institutional Behavior:** All of Petitioner's documented misconduct report has been minor in nature **(no violence)** reported of **misconduct** in 1996 for refusing a urinalysis test and the last reported misconduct was in 2003 for mutual combat **(Applicable) (See** Exhibit D, p. 3; **also** see Exhibit G.)

The Board asserts that although Petitioner has had two (2) 115 dis-

**Continued on Page 6 (c)**

ciplinaries, Petitioner's 128 "counseling crono" demonstrate unsuitable. Petitioner's 128's are for such minor indiscretion as writing a staff complaint, not standing for count. Since these 128 **do not** reflect "serious misconduct" (2402 (c)(6)) they are **not** factors tending to demonstrate unsuitability for parole, (In re (Mark Smith (2003) 109 Cal.App.4th 489, 505.) The California Supreme Court in In re Rosenkrantz, (2002) 29 Cal.4th 616 repeatedly stated that the parole suitability decision **must be made on the basis of "specified factors."** (**See** Rosenkrantz at 656, 658, 663, 667, 677.) The Board violated the law by relying on such minor factors. (**See** Exhibit M, pp. 56-61.)

The Board decision to deny parole under 2402 (d)(7) states:

> "... I think you need to firm up your parole plans. I think they are somewhat weak. The reason I say that, or the reason we say that, is that, one, your brother wrote us to say you can stay with him. (**See** Exhibit E) but you have no job. He has all your ASE certifications. All he has to do is take that someone that needs some mechanical work done and my brother will still (sis) be getting out of prison. Do you have a--would you hire him. We'er seen that on many occasions. You don't have that. All you have is say, okay he said you can stay with him. You don't have a--then you sais well, I'm going to go to the residential facility. Okay, that was not even strong. (**See** Exhibit A, p. lines 4-26.)

Commissioner Biggers goes on to state:

> "Okay. But again, I'm just giving you options, other than just saying well, I can't do it all from in here. We have a lot of inmates that come before the Board that have somone out there that's assisting them in finding jobs"... "... We don't want to put you out there and you have nothing..." (**See** Exhibit A, p. 4, lines 11-17.)

According to department of Corrections Parole and Community Services Division by Arnold Schwazenegger, Governor states:

> "The fact that you have **no** place to live or **work does not have a bearing on your release to parole."** (**See** Exhibit H.)

Here, the Board clearly denied Petitioner a parole date not just on the offense itself but because Petitioner had no job offer. (**See**

**Continued on Page 6 (d)**

In re Caswell, (2001) 92 Cal.App.4th 1017, 1030.) Petitioner has extensive experience in the automotive field. (see exhibit D.)

The Panel's conclusion Petitioner is not suitable for parole is not demonstrated by the facts of his case and, in fact, the oppsite true. Petitioner is more than suitable for parole release and the Board should set his date. (See Pen. Code, § 3041, (a).)

In In re DeLune, (2005) 24 Cal.rptr.3d 643, at 653 states:

> "It reviewing a decision denying parole, we first determine whether some evidence support each of the factors stated by the Board to justify the denial of parole." (Cf. Rosenkt trankz, supra, 29 Cal.4th 616, 677-83, 128 Cal.Rptr.2d 104 59 P.3d 174; In re Smith, supra, 114 Cal.App.4th 343, 366-73, 7 Cal.rptr.3d 655. also see In re Cortinas, (2004) 16 Cal.Rptr.3d 271, 286; In re Minnis, (1972) 7 Cal.3d 639; In re Morrall (2003) 102 Cal.App.4th 280, 292, 125 Cal.Rptr.2d 393.

It the decision's consideration of the specified factors is not support by **some evidence** in the record and thus is devoid of a factual basis, the court should grant the prisoner's petition for writ of habeas corpus and should order the Board to vacate its decision denying parole and thereafter to proceed in accordance with due process of law.

The record reflects Petitioner has met all of substandial requirement of suitability under the rules of the Board's and United States Constitution.

D. **Ground FOUR: PETITIONER CONTENDS THAT THE BOARD (COMMISSIONER BIGGERS & DEPUTY COMMISSIONER McBEAN VIOLATED PETITIONER'S DUE PROCESS TO A FAIR HEARING ON HIS PSYCHOLOGICAL REPORT. (Fouteenth Amendment U.S. Const.; Cal. Const. Art. I, § 7; In re Minnis (1974) 7 Cal.3d 639; Wolff v. McDonnell (1974) 418 U.S. 539.)**

**Supporting FACTS:**

On April 4, 2006, third parole consideration hearing, the Boards (Commissioners Biggers & Deputy Commissioner McBean) denied Petitioner a parole release date, using Petitioner Psychological Report stating:

> "The psychological report was very favorable however, the Board **disagrees** with the psychiatrist who-when said that there is no additional need for self-help." (**See** Exhibit D, p. 3).

**Continued on Page 6 (e)**

once an actual maximum term is fixed under Rodriguez, supra that the prisoner must be release upon expiration of that maximum terms. (See Exhibit B).

Thus, in the absence of other evidence sufficient to support the commissioners interpretation (and thus over-riding) of the psychiatric report, the Commissioners had no justification for denying parole based on this excuse. Petitioner has been cleared, by state certified experts, of "any" unreasonable threat to the public under P.C. § 3041.

Petitioner asserts that the Board members are not authorized, anywhere, in Penal Codes or Title 15 CCR, regulations to assume the role and credentials of a state licensed/trained expert and override that psychiatric report. (See Fourteenth Amendment, U.S. Const.)

Petitioner's parole hearing, no evidence was presented that he would pose "an unreasonable risk to society" if release. To the conrary, the experts' evaluations tells the Board that Petitioner does **not** pose a threat and conclude the **most** favorable rating for parole that CDC allows the experts to report.

The evidence **does not** support the Board's decision that Petitioner pose a threat to society upon parole. Petitioner is entitled to a new hearing wherein a release date, consistent with the matrix for the circumstance of his offense. According to In re Dannenberg, supra, the California Supreme Court found that once an actual maximum term is fixed under Rodriguez, supra, that the prisoner must be release upon expiration of that maximum term. **(See** Exhibit B.); **also see** David Simth v. A.P. Kane, Wardern, (May 23, 2006) #LA0123-32, Superior Court of Los Angeles. **Please Take Judicial Note,** state as:

> "Petitioner's maximum parole date be upheld and set at 2-13-2008.." (See Exhibit L).

///

///

///

**Continued on Page 6 (f)**

expert. The doctor must report the Petitioner's violent potential as either "less than average" "average", or greater than average" than average inmate.

The CDC has Conducted four (4) psychiatic evaluation of Petitioner for the Board consideration.

On April 21, 1998 Dr. Lynda Sussman, PH.D concluded:

> "Violent potential is now believed to be below average for the prison population." (See Exhibit I. p. 3).

On December 10, 2001 Dr. J. Marlette, PH.D concluded:

> "his violent potential is considered average for males his age in the community." (See Exhibit J. p. 5).

On January 16, 2004, Dr. G.I. Girtman, concluded:

> "violent potential for inmate Lancaster appears than average for the population, and probably lower than in free society.: (See Exhibit K. p. 2).

ON March 10, 2006, Dr. B. Zika, PH.D. concluded:

> "his potential for dangerous behavior in the community is no greater than the average citizen in the free community." (See Exhibit D. p. 4).

Petitioner's parole hearing, no evidence was presented that he would pose "an unreasonable risk to society" if released. To the contrary, the experts' evaluations tell the Board that Petitioner does not pose a threat and concluded the must favorable rating for parole that the CDC allows the experts to report.

The Board has been repaetedly chastised by our courts for reciting the "need more self-help & therapy grogramming" phrase at every hearing irrespective of the facts. (See In re Ramirez, ( ) 94 Cal.App.4th at p. 571; In re Scott (2004) 119 Cal.App.4th 871; In re DeLuna, (2005) 24 Cal.Rptr.3d 643; In re Cortinas, (2004) 16 Cal Rptr.3d 27; McQuillion v. Duncan, (9th Cir. 2002) 306 F.3d 395,902; In re Caswell, (2001) 92 Cal.App.4th 1017, 1027, 112 Cal.Rptr.2d 462.).

Stated above, Petitioner's psychological report is positive for release under the requirement of California Penal Code Section 3041 (a)(b) he is entitled to a parole release date.

In In re Dannenberg, supra, the California Supreme Court found that

**Continued on Page 6 (g)**

The Board stated that Petitioner need more self-help programming. This finding too is unsupported and even contadicted by the evidence In Petitioner's psychological evaluation, the doctor stated under **XV. Clinical Observations/Comments.Recommendations,** "there are no mental or emotional problems in this case that would interfere with parole planning." "... There is **no need** for further participation in self-help groups or therapy ..." (**See** Exhibit D, p. 4).

It is perhaps, ture that Petitioner could further from conseling or therapy. The **inquiry must be**, however, whether the inmate would be an unreasonable risk without that extra counsling/therapy. **No**, such evidence exists in this case.

In In re DeLuna, (2005) 24 Cal.Rptr.3d at 651-52 states:

> "It appears that the Board would put [defendant] in an **impossible situation** by demanding proof of therapy which will never be given since there is **no** diagnosed need." also see In re Cortinas, (2004) 16 Cal.Rptr.3d 271 [there is no need for therapy]; Lancaster v. Board of Prison Terms, (2005) #CIV-S-03-2377 GEB GGH-P (findings $ Commendations) at p. 12 lines 24-26 states: "Dr Marlette did not find that Petitioner required mental health treatment. Nor Dr. Martlette recommend that Petitioner continue to attend AA meeting."

The Board's decision to ignore the experts and **announce** a contrary finding, without any evidence support, is **arbitrary and capricious.** The Correctional Counselor's report, signed by four CDC representatives, smilarly rated Petitioner as presenting a moderate to low degree of threat to the public if release from prison. The experience of these individuals should not have been **disregarded** by the Board. The Board's contrary "finding" is clearly not supported by the evidence presented. (**See** In re Rosenkratz, suprs 29 Cal.4th 616 677-83, 128 Cal.Rptr.2d 104, 59 P.2d 174.)

Approximately 45 days prior to Petitioners' Board hearing, the Board has the CDC conduct psychiatric evaluations. The Boards wants the experts to **specifically** address the question of Petitioner's **"violent potential"** if released. The CDC Department Operation Manual (DOM) delineates the conclusion to be reported by the psychiatric

**Continued on Page 6 (h)**

E. Ground SIX -: PETITIONER OBJECTS TO THE CURRENT DISCRIMINATORY PRACTICE OF THE APPOINTING COMMISSIONERS TO THE BOARD OF PRISON TERMS (BOARD) WHO ARE REPRESENTATIVE OF THE STATE OF CALIFORNIA. (Fourteenth Amendment, U.S. Const.; Board of Pardons v. Allen (1987) 482 U.S. 369, 376-378; Wolff v. McDonnell (1974) 418 U.S. 539; In re Minnis (1972) 7 Cal.3d 639; Penal Code, § 5057).

Supporting FACTS:

At Petitioner's April 4, 2006, Decision (see Exhibit A), the composition of the Board members was not in compliance with California Penal Code § 5057, which requires a Board composed of representative member of the population of the State of California.

Of the 35 commissionership appointment by the governors and Senate 32 are former cops and/or Legislators and/or crime victim advocates with antiparole dedication. None are from the loer or lower-middle economic sectors, none are from the State's chief industries (labor farming), and none have any qualifications whatsoever to determine paroles. They are all strictly political appointment for the purpose of precluding parole. Unlike other States whose parole boards and commissions consist of qualified individuals -- formerjudges, lawyer clergy, psychologists and psychiatrists, BPH has nobody from those sectors. The Board's constituency violaties that Statute.

Petitioner's objections is to the entire makeup of the Board as being predominately "ex-law enforcement" officials which is not compliance with California Penal Code, § 5057.

///

///

///

///

///

///

///

Continued on Page 6 (i)

This Section reads in relevant part:

> "[T] he Governor **shall** fill every vacancy for the balance of the unexpired term. The selection of the person and their appointment by the Governor and comfirmation by the senate **shall** reflect as nearly as possible a cross-section of the racialy sexual, economic and geographic features of the population the state ..." (Id.)

The members appointed certainly do not comply with this Legislative mandate. From the Board's own website, (www.cdcr.ca.gov.);

> **Chairwoman Susan L. Fisher (1999)-(2004):** served as executive director of the Doris Tate crime victims Bureau and, before that, served on the Bureau's board of directors for seven years.
>
> **Commissioner Archie Joe Biggers (1992)-(1994):** served as operations director for the San Diego Police Athletic League. Also served as a member of the Diego Crime Commission.
>
> **Commissioner Sandra Bryson:** served as a support services and reserve deputy of Alpine County Sheriff's Department. Since 1986 Bryson has served as director of Bryson and Associates a law enforcement and canine consulting company. Bryson, also an instructor for California Peace Officer Standards and Training. Bryson is a member of the California Narcotice officers.
>
> **Commissioner Terry R. Farmer (1983)-(2003):** served as a Humbolbt County deputy district attorney.
>
> **Commissioner Jack Garner (1990):** is currently the bureau chief for the Commission of Peace Officer Standards and Training. Garner, begines his tenure as senior law enforcement consultant. Garner, was previously the city manager and chief of police for the city of Martinez. Garner, is a member of the CaliforniaPolice Chief Association and the California Peace Officer Association.
>
> **Commissioner Margarite E. Perez (1996)-(2001):**served as a parole agent at the Department of Corrections. Her career in law enforcement as a Correctional Officer. First at Avenal State Prison, and later as Correctional Sergeant of the Transportation Unit Based at Folsom State Prison.
>
> **Commissioner George Saldamando (1972)-(1991):** served as San Diego Police Department and as assistant Chief of Police.

From just the above **over half (60%)** of the Board member, one way or another, have considerable ties to the law enforcement Police--Backgrounds, predominatly from the Southern California communities without an examination of all the members, its obvious that the statutory mandate requiring a fair cross--section of the community has be-

**Continued on Page 6 (j)**

has not been correctly complied with the Governor, and the State Legislature in affirming these appointments, by allowing these members to be appointed. Even though these members are well-educated and may have a well-- founded background in law enforcement techniques and investigation, the purpose the California Penal Code, § 5057 **mandated** serves is defeated by the appointment of these people. To have truly representative of the community **at most**, one Board member could conceivably be from law enforcement background, **if at all allowed.**

**For the first part**, one member of the Board is 11% of the Panel member and may be representative of **any one group** (or several at one time), representing that part of the community of California. **To the second part** of the above, having "policeman" sit on the Board evokes a violation of the separation of governmental powers due to the nature of the Board (a Quasi-Judicial function opreated by the police). **The Police** are considered to be "executive government function" and a Board member (in theory) is to act as an arm of the Judicial Branch of the government. Other Board members have had the same backgrounds as the newest member (i.e., law enforcement background), a trend in government which is mildly know as an **oligarchy** (long forbidden in our Cournty), **and worse yet, a star chamber** sitting in judgment upon an individual. The current cross-section of the Board is strictly forbidden by California Penal Code, § 5057. **Ironically**, the police (of all people) should be setting the example by explicitly following the letter of the law and the sprirt of the law. The current policy is vague and indefinite in violation of the fourteenth Amendment, United States Constitution.

**Furthermore**, according to Cal. Penal Code, § 3042 states:

> "[A]t least 30 days before the Board of Prison Terms meets to review or consider the parole suitability or the setting of a parole date for any prisoner sentence to a life sentence, the Board shall send written notice thereof to each of the following person:
> the judge of the superior court before whom the prisoner was tried and convicted, the attorney who repersented the defendent at trial, the district attorney of the county in which the offense was committed, the law enforcement agency that investigated the case..."

**Continued on Page 6 (k)**

At Petitioner April 4, 2006, Parole **Decision** the Board states:

> "[T]he panel has reviewed all information received from the public..." (**See** Exhibit A, pp. 1, 4, lines 10-12 & p. 4 line 23.)

There was **no** information received from the public, according to penal Code, § 3042. (**See** Exhibit A, p. 4, line 23.) There was **no** information received from the judge of the superior court, attorney who reperesented the defendant **and/or** district attorney of the county of San Jaoquin. The district attorney dod not oppose Petitioner's parole date at his April 4, 2006, parole hearing.

The Panel has relayed on evidence that **was not peresented at Petitioner Parole hearing on April 4, 2006.** (See Exhibit A, p. line 23.) Therefore the panel has denied Petitioner a fair hearing by **relying** on **non-evidence in the record.** The Panel has violated Petitioner's Fourteenth AMENDMENT to fair hearing by a bise panel.

According to Rosenkrantz, supra, 29 Cal. 4th 616, Board decision must be supported by some evidence in the record that Petitioner is a threat to the public. There is no evidence under Calfornia Penal Code section 3042.

The Board Panel decision is subject to judicial review pursuant to the "some evidence" standard set forth in Rosenkrantz, supra, 29 Cal.4th 616. This is, we "inquire only whether some evidence in the record before the Board supports the decision to deny parole, based upon the factors specified by statute and regulation." "Some evidence test has its roots in In re Powell (1988) 45 Cal.3d 894; Superintendent v. Hill, (1985) 472 U.S. 445.."

If the decision's consideration of the specified factors is not soppurt by some evidence in the record and thus is devoid of a factual basis, the court should grant the prisoner's petition for writ of habeas corpus and should order the Board to vacte its decision denying parole and thereafter to proceed in accordance with due process of law. (See In re DeLua, (2005) 126 Cal.App.4th 585, 591, 24 Cal.Rptr.3d 643; In re Rosenkrantz (2002) 29 Cal.4th 616, 677-83, 128 Cal.Rptr.2d 104, 52 P.3d 174; In re Smith (     ) 114 Cal.App.4th 343, 366-73, & Cal.Rptr.3d 655;

**Continued on Page 6 (l)**

In re Cortinas, (2004) 16 Cal.Rptr.3d 286; In re Minnis, (1972) 7 Cal. 3d 639; In re Morrall, (2003) 102 Cal.App.4th 280, 125 Cal.Rptr.2d 391; In re Caswell, (2001) 92 Cal.App.4th 1017, 1034, 112 Cal.Rptr.2d 462; In re Spence, (1974) 36 Cal.App.3d 636, 639-40, 111 Cal.Rptr. 782; Powell, supra, ( ) 45 Cal.3d at p. 904, 248 Cal.Rptr. 431: In re Scott, (2004) 119 Cal.App.4th 871, 15 Cal.Rptr.3d 32; In re Smith (2003) 109 Cal.App.4th 489, 504, 506, 134 Cal.Rptr. 2d 781;

Saif'ullah v. Carey, **(2005)** Cal. E.D. #CIV-S-02-2664- MCE DAD P (finding & Recommandations; Cato v. Rushen, (9th Cir, 1987) 824 F.2d 703, 705; Toussaint v. McCarthy, (9th Cir. 1986) 801 F.2d 1080, 1105; Powell v. Gomez, (9th Cir. 1994) 33 F.3d 39, 40; Biggs v. Terhune, (9th Cir. 2003) 334 F.3d at p. 915.)

**PRAYER FOR RELIEF.**

1. Order the Board to hold an another hearing using the evidence in the record;
2. Order the Board to uphold Petitioner's maximum parole date at October 27, 2007;
3. Order the Adult Authority to follow the mandated in Dannenberg, supra release Petitioner upon the expirarion of his mandatory release date of October 27, 2007.

///

///

///

///

///

///

///

///

///

///

///

**PRAYER FOR RELIEF.**

Petitioner is without remedy save for habeas corpus. According,
Petitioner requestes that the Court;

1. Issue a writ of habeas corpus;

2. Issue an order to show cause;

3. Order the Board to uphold Petitioner's maximum parole date at
   October 27, 2007;

4. Order the Aduly Authority to follow the mandated in Dannenberg,
   supra, release Petitioner upon the expirration of his mandatory
   release date of October 27, 2007;

5. Delare the rights of the parties;

6. Order new hearing for Petitioner prompty;

7. Appoint counsel for Petitioner; and

8. Grant any and all other relief found necessary an appropriate.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

AO 241 (Rev. 5/85)

C. Ground three: ______

Supporting FACTS (state *briefly* without citing cases or law): ______

D. Ground four: ______

Supporting FACTS (state *briefly* without citing cases or law): ______

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

Not Applicable.

///

///

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes __ No XX

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing Not Applicable.

///

(b) At arraignment and plea Not Applicable.

///

AO 241 (Rev. 5/85)

(c) At trial Not Applicable

///

(d) At sentencing Not Applicable

///

(e) On appeal Not Applicable.

///

(f) In any post-conviction proceeding Not Applicable.

///

(g) On appeal from any adverse ruling in a post-conviction proceeding Not Applicable.

///

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes _ No XX

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes _ No XX

(a) If so, give name and location of court which imposed sentence to be served in the future:

Not Applicable.

(b) Give date and length of the above sentence: Not Applicable.

///

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes _ No XX

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

Not Applicable.
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed

Nov. 29, 2007
(date)

[signature]
Signature of Petitioner

EXHIBIT A

EXHIBIT A

**CALIFORNIA BOARD OF PAROLE HEARINGS**

**D E C I S I O N**

**DEPUTY COMMISSIONER McBEAN:** Okay, we're on record.

**PRESIDING COMMISSIONER BIGGERS:** Okay. The time is now 12:16 in the matter of David Lancaster, E-96955. The Panel has reviewed all information -- excuse me. Let me go back and say that all persons that were in the room when we recessed are now back in the room. The Panel has reviewed all the information received from the public and relied on the following circumstances in concluding that the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. The factors that led us to this was the offense was carried out in an especially violent and brutal manner in which a 16-year old boy lost his life. This was a terrible crime, Mr. Lancaster. This crime was done primarily because of your willingness to engage in an altercation after you had made a derogatory remark as they passed your friend's house. You could have easily defused that by not even going down there to do that and then you took a gun

with you to commit that crime.

You did have some priors, we took that into consideration. And also your institutional behavior. You've done quite a lot, however, you still can benefit from some more self-help because I didn't see anything in the way of AA for you. I think that was something that you probably need to work on as well.

What was very troublesome to the Board though was the -- your two 115s, your most recent one was '03, and the second one was for that syringe. But again, what really troubled the Board was the fact of your 128B that you received for that false allegation. It's very troublesome to us. Despite you not getting a 115 for it, your willingness to significantly jeopardize the welfare of a staff member to the point that you had to be transferred out of the institution is something that I think you need to take into consideration. To falsely accuse somebody. There was nothing in the chrono that substantiated that. And when you make an allegation, you should make sure that you have all the facts before you just agree to do something with somebody, especially when it comes to a staff member.

The psychological report was ver However, the Board disagrees wit psychiatrist who -- when he saic no additional need for self-helг all need self-help. We can neve point where we don't need any he There's always something that we better ourselves.

In addition, I think you need to firm up your parole plans. I think they are somewhat weak. The reason I say that, or the reason we say that, is that, one, your brother wrote us to say you can stay with him but you have no job. He has all your ASE certifications. All he has to do is take that someone that needs some mechanical work done and say my brother will still (sic) be getting out of prison. Do you have a -- would you hire him. We've seen that on many occasions. You don't have that. All you have is say, okay, he said you can stay with him. You don't have a -- then you said well, I'm going to go to the residential facility. Okay, that was not even very strong. They said you can come there for two weeks, and then they will examine you to see if you're going to be able to stay there for the rest of the time.

So, I think you need to -- well, you also wrote some letters. You wrote some letters. You didn't get any response and that's understandable to a point. But that doesn't mean you got to stop writing letters. You got to keep going. Your poetry was very good. Have you ever sent that out to someone that may want to publish something.

**INMATE LANCASTER:** No, I have not.

**PRESIDING COMMISSIONER BIGGERS:** Okay. But again, I'm just giving you options, other than just saying well, I can't do it all from in here. We have a lot of inmates that come before the Board that have someone out there that's assisting them in finding jobs. So, you don't have to wait till you get out there. We don't want to put you out there and you have nothing. You have to rely on your brother, you don't have a job. Yeah, they (sic) can stay with you (sic) but they not going to support you for the whole time. So, I think you need to firm up your parole plans.

We have no 3042 responses, and I want to commend you for your -- for the vocational training that you got in here. You are a certified auto mechanic, and you did an apprenticeship, and

that's great. And, again, with your brother having those certifications, all he's got to do is just take them out there, especially in this area where there's a lot of machinery that you can repair. Your high school diploma, your paralegal work. Your psych report was very supportive. It indicated that you appear to be remorseful, and all that is good. However, these positive aspects of -- do not outweigh the factors of unsuitability. And therefore, this is going to be a one-year denial, and I think if you work on those, you'll be okay.

That concludes the Hearing. Do you have anything, I'm sorry?

**DEPUTY COMMISSIONER McBEAN:** Let me just say one thing.

**PRESIDING COMMISSIONER BIGGERS:** I'm sorry.

**DEPUTY COMMISSIONER McBEAN:** That's okay. Mr. Lancaster, I want you to know we did certainly the positive as well as the negative things in this Hearing today. We certainly gave appropriate weight to all the good things that you've done. And we want to encourage you to keep your eye on the ball, and to keep doing the positive things that you have been engaged in.

We feel like you really could benefit from more self-help. I know Commissioner Biggers indicated some problems with AA. I note you did Bottle Stoppers in '98, that was a ways back, and the little bit in '04, and that's not a lot considering the fact that alcohol was involved in your instant offense. You need a lot more substance abuse self-help in the eyes of the Board. Plus, you, of course, have the 115 in '96 for the syringe, and we can't ever get around that. That's going to always be there. But the way you, you know, try to recover from that is by doing a huge amount of substance abuse self-help, is you can, you know. And you've already found out that substance abuse in -- can be hidden inside of other programs as you participate in this recidivism program, PRP, and that was great, but there are other programs and we'd like for you to participate in those.

So, we, you know, think that you're on the right track. You're moving in the right direction. Commissioner Biggers has already talked about our concerns, but I just want to encourage you to keep your eye on the ball and get very much involved in substance abuse, and especially AA or other forms of self-help, as much as is

available to you. Okay, and that's the only comments I have for you, wish you good luck, sir.

PRESIDING COMMISSIONER BIGGERS: Thank you. I wish you the best of luck as well. Good luck to you.

--oOo--

AUG 2 2006

PAROLE DENIED ONE YEAR

THIS DECISION WILL BE FINAL ON:________________

YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT DATE, THE DECISION IS MODIFIED.

CERTIFICATE AND
DECLARATION OF TRANSCRIBER

I, P. M. LaCHAPELLE, a duly designated transcriber, PETERS SHORTHAND REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 - 72, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY, SOLEDAD, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING OF DAVID LANCASTER, CDC NO. E-96955, ON APRIL 4, 2006, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape to the best of my ability.

I hereby certify that I am a disinterested party in the above-mentioned matter and have no interest in the outcome of the hearing.

Dated April 13, 1006, at Sacramento, California.

P. M. LaChapelle
P. M. LaCHAPELLE
TRANSCRIBER
PETERS SHORTHAND REPORTING

E X H I B I T B

E X H I B I T B

STATE OF CALIFORNIA
CALCULATION WORKSHEET
OBIS CREDIT CODE 32
CDC 1897M (04/00)

DEPARTMENT OF CORRECTIONS

## CALCULATION WORKSHEET FOR INDETERMINATE PC SECTION 2931

This form is used to calculate the Minimum Eligible Parole Date (MEPD) for inmates serving indeterminate (ISL) terms eligible for credit per Penal Code (PC) Section 2931. (Note: Inmates convicted of murder committed on/after June 3, 1998 are ineligible for credit, per PC Section 2933.2.) ISL PC Section 2931 terms are entered into the Offender Based Information System (OBIS) as a Credit Code 32.

### Section A - Original MEPD Calculation

| | | |
|---|---|---|
| 1. Start Date | | 10-27-1992 |
| 2. Plus Time Imposed | + | 15 |
| | = | 10-27-2007 |
| 3. Minus Pre/Postsentence Credit | - | |
| | = | |
| 4. Minus Vested Credit (1/2 postsentence credit) | - | |
| | = | |
| 5. Plus Dead Time | + | |
| 6. Equals Maximum Eligible Parole Date | = | 10-27-2007 |
| 7. Minus Start Date (Line A-1) | - | 10-27-1992 |
| 8. Equals days to serve | = | 5478 |
| 9. Minus Dead Time | - | 0 |
| 10. Equals Days Where Credit May Be Applied | = | 5478 |
| 11. Equals CDC Conduct Credit (divide Line A-10 by 3, round up) | = | 1826 |
| 12. Maximum Eligible Parole Date (Line A-6) | | 10-27-2007 |
| 13. Minus CDC Conduct Credit (Line A-11) | - | 1826 |
| **14. Equals Original MEPD** | = | 10-27-2002 |

### Section B - Participation Credit (PC)

1. CDC Conduct Credit (Section A, Line 11) ________

2. Divide Line B-1 by 4, equals Participation Credit * ________

Any fractions over 0.5 are rounded up and fractions under 0.5 are rounded down. When the fraction is exactly 0.5, the PC is rounded down and the BC is rounded up per DOM Section 73030.8.10.

Participation Credit Losses/Restorations

| Date of CDC 115 | Loss | Restored | Net Loss |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**3. Net PC Losses (cannot exceed Line B-2):** ________

### Section C - Behavior Credit (BC)

1. Participation Credit (Section B, Line 2) ________

2. Multiply Line C-1 by 3, equals Behavior Credit * ________

Behavior Credit Losses/Restorations

| Date of CDC 115 | Loss | Restored | Net Loss |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**3. Net BC Losses (cannot exceed Line C-2):** ________

### Section D: Calculating Adjusted MEPD

Original MEPD (from Section A, Line 14) ________

Plus Net PC and BC Losses (Line B-3 plus Line C-3) + ________

Equals Adjusted MEPD (cannot exceed Maximum Eligible Parole Date) = ________

Maximum Eligible Parole Date (from Section A, Line 6) ________

CALCULATED BY (Name and Title) R. Sandoval

DATE 4-6-2006

INMATE'S NAME Tomcaster

CDC NUMBER E-96955

LOCATION CTF

*Line B-2 plus Line C-2 must equal Line A-11/B-1

EXHIBIT C

EXHIBIT C

# LIFE PRISONER EVALUATION REPORT
# SUBSEQUENT PAROLE CONSIDERATION HEARING
# SEPTEMBER 2005 CALENDAR

LANCASTER, DAVIL E-96955

## I. COMMITMENT FACTORS:

### A. Life Crime:

Murder 2nd, Penal Code (PC) 187, with Use of Firearm, (PC) 12022.5(A). San Joaquin County Case Number: #48957. Sentence: 18 years to Life. Received California Department of Corrections (CDC) on July 30, 1991. Minimum Eligible Parole Date (MEPD). October 27, 2002. Victim: Danny Tupas, age 16-years old.

#### 1. Offense Summary:

On October 25, 1990, at approximately 6:20 p.m., juveniles Alisha B. and Rachel S. were walking Westbound on Park Street to Weber Park with Keith Roland. The defendant, who was visiting his friend, Larry Stricklin, Jr. was sitting on the porch at the residence located at 330 West Park Street in Stockton. As the girls and Roland walked past the residence, the defendant commented on Alisha's buttocks. A brief, unfriendly conversation ensued at which time Roland commented to the defendant to leave the girls alone.

The defendant, feeling this was a challenge to him, grabbed his jean jacket and followed the girls and Roland into Weber Park with Larry Stricklin. Roland and several of Roland's friends confronted the defendant. The defendant pulled his .25 caliber semi-automatic pistol from his jacket. Everyone scattered in several directions, except for 16 year old Danny Tupas, Jr. and Carlos Martinez. Tupas and Martinez challenged the defendant to shoot them. The defendant then shot approximately five (5) rounds at Tupas and Martinez. Tupas was hit in the chin, and upper left chest area. Tupas was transported to Dameron Hospital where he was pronounced dead at 7:43 p.m. from a gunshot wound to his chest.

Investigation revealed that the defendant's gun and clothing were hidden in the attic of Larry Stricklin, Jr.'s, residence. A magazine to the gun was found inside of the defendant's jacket. Five (5) expended .25 caliber shell casings were also recovered at the scene of the shooting, in front of the park. Three (3) of the casings were positively identified as having been

fired from the gun. Two (2) other casings may also have been fired from the gun.

2. Prisoner's Version:

At the time of the Pre-Board interview, Lancaster stated that the only thing found hidden in Stricklin's attic was the .25 caliber revolver. He stated that clothing taken out of the Stricklin house was his jean jacket, which was found in the living room on a chair. He stated that Keith Roland did challenge him to a fight at the local park and when he arrived there, Roland called friends to his assistance. He stated that Carlos Martinez did have a short bladed knife and was coming at him prior to his shooting the gun. Additionally, a female witness observed a bottle being broken and a person holding it in his hand. He states that this was testified to during the trial. He also states that there was no verification of a gunshot wound to the victim's leg. Lancaster states that on the date of the offense, he began drinking alcohol at a friend's house. While sitting on the porch with his friend, waiting for Larry to return from the store, two (2) girls and a young man walked by. He commented on one of the girl's buttocks and she responded, "I know I have a cute butt, and I am going to get my brother who is going to beat your butt." He answered, "Well go and get your brother to beat my butt." At that point, the young man suggested that they settle their differences at a local park and he agreed. He admits to being under the influence of alcohol. He went to the park with the expectation of confronting the young man and merely having a fistfight. When he arrived at the park, the young man was there with several friends, three (3) of whom had weapons. They ran towards him and when they were about 25 feet in front of him, he fired three (3) shots toward the ground to scare them. He saw the victim run away with the others. He was not aware that anyone had been shot and it was never his intention to shoot anyone.

On June 17, 2005, after allowing Inmate Lancaster to review his Board Report, he indicated that his prior reports under commitment factors had been inaccurate. Specifically, I/M Lancaster indicated that his Post Board reports indicated that he shot his victim three times, once in the chest, once in the chin, and once in the lower leg. I/M Lancaster indicated that the victim was shot twice, once in the chin and once in the chest. A review of the court transcripts, page 4, indicates that during an autopsy it was determined that the victim was shot twice once in the chin and once in the chest. Therefore, his commitment factors have been corrected.

3. Aggravating & Mitigating Circumstances:

a. Aggravating Factors:

1. Inmate has an opportunity to cease, but continued with the crime.
2. Circumstances of the crime created potential for serious injury to others.
3. Inmate was on probation at the time of the offense.

b. Mitigating Circumstances:

1. Prisoner has minimal criminal history.
2. Victim was also an aggressor during the incident.

B. MULTIPLE CRIMES:

N/A

II. PRECONVICTION FACTORS:

1. Juvenile Record:

Arrested by Stockton Police Department on July 12, 1989 for Vehicle Theft, found guilty and sentenced to 36 months and 60 days in jail.

2. Adult Convictions and Arrests:

Instant Offense only.

3. Personal Factors:

Lancaster was born in Stockton, California and is the youngest of three children born to Gene and Deloris Lancaster. They were divorced when he was two years old. They both, subsequently, remarried other people. He was supported by and lived with his mother. However, immediately prior to the present offense, he was living with his father in Stockton. His brother, Walter, has served a prior sentence in state prison. Due to his hearing impairment, deaf in his right ear, he attended special classes as a child. He attended Franklin High School and completed the eleventh grade before dropping out.

Prior to the present offense, he was attending the Right Track Program in an effort to obtain his GED. In 1991, he was employed at Tri-Valley Growers

Company, working as a Cement/Pourer Inspector. He has other work experience as a Forklift Driver and other labor related work. Lancaster is single and has never been married. He has not served in the armed forces. In regards to his health, he states he is in good physical condition. He takes medication for allergies and suffers form deafness in his right ear. He began drinking alcohol at the age of ten and related that his father would supply him with alcohol at that time. He states he abstained from all other illegal drugs.

## III. POSTCONVICTION FACTORS:

### A. Special Programming/Accommodations:

Inmate Lancaster is deaf in his right ear. A review of his CDC 1845 indicates that his disability does not impact his placement. Inmate Lancaster indicated that effective communication can be accomplished by speaking loudly. The use of amplifying equipment is not necessary. Refer to CDC 128B, dated June 2, 2005, and Board of Prison Terms (BPT) 1073 dated, June 2, 2005.

### B. Custody History:

Since Inmate Lancaster's last appearance before the Board of Prison Terms (BPT) he remained housed at California State Prison – Solano, Level II, in the General Population (GP). His custody level remained Medium A, with a classification score of 19, due to the Mandatory Minimum Score Factor of "F", Violence.

### C. Therapy and Self-Help Activities:

Inmate Lancaster participated in the Alcoholics Anonymous Program. Refer to CDC 128B. dated third quarter 2004 authored by Mr. Brunly, Sponsor.

### D. Disciplinary History:

Inmate Lancaster remained disciplinary-free since his last appearance before to Board of Prison Terms (BPT).

### E. Other:

On September 15, 2004, Inmate Lancaster appeared before the Board of Prison Terms (BPT) for his Subsequent Parole Consideration Hearing #1. The BPT denied him parole consideration for one (1) year. The BPT recommended that Inmate Lancaster remain disciplinary-free, earn positive chronos, participate in self-help programs and firm up his parole plans.

## IV. FUTURE PLANS:

### A. Residence:

If granted Parole, Inmate Lancaster's primary plan is to seek residential assistance through the G.C. Rescue Mission Inc, in Stockton, California 95203-3537, telephone #(209) 466-2138. Inmate Lancaster indicated that the reason he plans on seeking a residence via a mission is that he no longer has family in San Joaquin County and per the BPT he was instructed to seek residence plans in his last county of legal residence. His alternate plans are to reside with his sister Lindale R. Ball at 8607 Valley View Road, Custer, Washington 98240, telephone # (360) 366-7250. Refer to support letter dated January 12, 2004, authored by Ms. Lindale R. Ball, located in the BPT section under miscellaneous. Additionally he can reside with his other sister Tina Beavers at 409 W. Cline Street, Aurora, Missouri 65605, telephone #(417) 678-6138. Refer to support letter dated 2003 authored by Ms. Tina Beavers, located in the BPT section under miscellaneous. Furthermore, Inmate Lancaster received a support letter from Mr. Ward Downs offering him assistance upon his release from prison. Refer to support letters dated September 5, 2004, authored by Mr. W. Downs, located in the BPT section under miscellaneous.

### B. Employment:

Inmate Lancaster has authored several letters to various agencies in the San Joaquin County area to seek employment in his last county of legal residence per the Board of Prison Terms (BPT). However, to date he has not received any response for verifiable employment plans. However, Inmate Lancaster indicated that his sister Ms. Tina Beavers has offered him a position as a Janitor. This position is located in Aurora, Missouri. Refer to support letter authored by Ms. Tina Beavers, dated July 11, 2000, located in the BPT section under miscellaneous. Inmate Lancaster indicated that he is currently waiting for a up-dated support letter.

### C. Assessment:

It appears that Inmate Lancaster has a strong family support system and will have several options where he can reside upon his release from prison. He has followed the BPT's instruction and appears to have viable parole plans at this time.

V. USINS STATUS:

N/A.

VI. SUMMARY:

A. Prior to Inmate Lancaster's release, he could benefit from remaining disciplinary-free, participate in self-help programs and receive positive chronos.

B. This Board Report is based on an interview with Inmate Lancaster on June 2, 2005, on Facility III, Building 18 counselor's office lasting about one hour and a complete review of his central file lasting four (4) hours.

C. Inmates Lancaster was afforded an opportunity to examine his central file (Olson Review) on June 2, 2005, and he did so. Refer to CDC-128B dated June 2, 2005.

D. Inmate Lancaster is deaf in his right ear. Therefore, for the purpose of effective communication was required per the Armstrong Remedial Plan (ARP), you must speak loudly when communicating with Inmate Lancaster. Refer to CDC 128B dated June 2, 2005 and BPT-1073 dated June 2, 2005.

Prepared by:

R. BLACKWELL
CCI

Reviewed by:

R. LONG
CCII

Reviewed by:

S. Miller for V. DOBSON-DAVIS
C&PR

EXHIBIT D

EXHIBIT D

**MENTAL HEALTH EVALUATION UPDATE FOR THE BOARD OF PRISON TERMS**
**March, 2006**

**CORRECTIONAL TRAINING FACILITY SOLEDAD**
**MARCH, 2006**

| | |
|---|---|
| **NAME:** | **LANCASTER, DAVID** |
| **CDC#:** | **E-96955** |
| **DOB:** | **6/26/70** |
| **OFFENSE:** | **PC 187 MURDER, SECOND DEGREE** |
| **DATE OF OFFENSE:** | **10/25/90** |
| **SENTENCE:** | **18 YEARS TO LIFE** |
| **EVALUATION DATE:** | **3/10/06** |
| **MEPD:** | **10/27/02** |

## I. IDENTIFYING INFORMATION:

Mr. David Lancaster is a 35 year old, first term, Caucasian, single male from San Joaquin County. He has 15 years in on his sentence. He is an active Christian.

## SOURCES OF INFORMATION:

This evaluation is based upon a single 90 minute interview, plus review of the central and medical files.

The psychological evaluation completed on 12/10/01 at DVI by John Marlett, Ph.D., has a psychosocial assessment. This information was reviewed with the inmate, and it is still current and valid. Therefore, it will not be repeated at this time.

## CLINICAL ASSESSMENT

### XII. CURRENT MENTAL STATUS/TREATMENT NEEDS

Mr. David Lancaster's mental status is entirely within normal limits. Hygiene and grooming were good. He was alert and well oriented. His thinking was rational, logical and coherent. His speech was normal, fluent and goal oriented. Eye contact was good. Affect was appropriate. There is no evidence of depression or of anxiety. Intellectually he is functioning in the average ranges. His insight and self-awareness are very good. His memory was intact. His judgment was good.

During his 15 years of incarceration, he has been making good use of his time. He has participated in several anger management classes. He has attended Alcoholics Anonymous in the past, and he is on the waiting list now at this prison for that program. He has completed vocational certificates in the AS program for air conditioning in cars; he has 5,000 hour in Auto Shop; he has a certificate in Warehousing and a certificate in Fork Lift Operation. It is evident that he is employable as an automobile mechanic. He has completed 3 Federal Emergency Management Agency Courses, learning how to handle national disasters. He is interested in obtaining more of these courses.

Mr. Lancaster does have a hearing impairment. He has no hearing in his right ear. However, he was able to hear and communicate adequately throughout the interview. The file indicates a history of learning disability. There is no evidence of learning disability at this time in his life. He is functioning in a normal way with no evidence of learning impairment.

The first psychological evaluation noted alcohol abuse by history now in remission. The second psychological evaluation, dated 1/16/04, did not list this as a diagnosis. A review of the records shows that although he was given alcohol at the age of 10 by his father, he was not alcohol dependent. He would drink alcohol on occasion. He was drinking alcohol—a 6-pack of beer just prior to the commitment offense. Therefore, his use of alcohol was related to the commitment offense. Therefore, this fact could be noted as a problem by history. There is no evidence that this is a current problem in his life, and therefore it will not be listed as a current diagnosis.

**CURRENT DIAGNOSTIC IMPRESSION**

| | |
|---|---|
| Axis I: | No mental disorder |
| Axis II: | No personality disorder |
| Axis III: | Deafness in his right ear |
| Axis IV: | Life term incarceration |
| Axis V: | Current GAF: 90 |

## XIII. REVIEW OF LIFE CRIME

The details of the commitment offense were reviewed. Mr. Lancaster takes full responsibility for the victim's death. He was 20 years of age at that time, and the victim was a youngster of 16 years of age. The details of this commitment offense are thoroughly documented in the record.

Mr. Lancaster does have feelings of sorrow and remorse at his irresponsible actions in the commitment offense. There is a letter, dated 10/26/92, in the central file that Mr. Lancaster wrote expressing his feelings of sorrow and remorse. He noted that this was a senseless killing. He acknowledged that the victim's family's lives were devastated by his actions. He realizes that he has caused enormous suffering and grief to many people. His feelings of remorse appear to be sincere and genuine.

## XIV. ASSESSMENT OF DANGEROUSNESS

A. In considering potential for dangerous behavior in the institution, over the last 15 years there has been no involvement in riots, possession of weapons, threats towards others, or unprovoked assaults. He did receive a disciplinary on 8/24/03 for mutual combat. He now views this behavior as foolish, and he is determined to avoid any confrontations or altercations in the future. He is not a violent individual by nature. In comparison to other inmates, his potential for violence is below average.

B. In considering potential for dangerous behavior in the community, Mr. Lancaster is a very spiritual individual, who reads the Bible daily. He adheres to Biblical values of loving others, self-control, and turning the other cheek when he is attacked. He is not at all anti-social in his thinking or values. He has normal feelings of empathy and concern for others. The Level of Service Inventory-Revised was administered. This is an actuarial measure that assesses criminal history, substance abuse problems,

vocational and educational achievement and other factors to determine level of risk on parole. His level of risk is 6.6 cumulative frequency for prison inmates. This means that if 100 men were released on parole, he would do better than 93 of them. As a result, his potential for dangerous behavior in the community is no greater than the average citizen in the free community.

C. Alcohol use was related to the commitment offense. After 15 years of alcohol abuse programming, and his biblical commitments not to use alcohol ever again in the future, this is no longer a risk factor.

## XV. CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS

There are no mental or emotional problems in this case that would interfere with parole planning. This inmate has achieved vocational trades. He will have absolutely no trouble securing and maintaining employment in the community. He also has strong family support in the community, as well as promises of residence and job offers. There is no need for further participation in self-help groups or therapy. There is no need for further psychological evaluations. The prognosis for successful adjustment in the community in this case is excellent.

M. Macomber, PhD

M. Macomber, Ph.D.
Correctional Psychologist
Correctional Training Facility, Soledad

B. Zika, Ph.D.

B. ZIKA, Ph.D.
Senior Psychologist
Correctional Training Facility, Soledad

**D:** **3/10/06**
**T:** **3/11/06**

EXHIBIT E

EXHIBIT E

WARD DOWNS
7342 Park Woods Drive
Stockton, CA 95207-1412
(209) 477-8405, *info@downs.cc*

September 5, 2004

C and PR
California State Prison, Solano
P. O. Box 4000
Vacaville, CA 95696-4000

To whom it may concern:

I am writing in support of David Lancaster (CDC#E96955). It is my understanding that he will have a hearing to determine suitability for parole on September 15, 2004.

I have known David since he was a third grade student in my class at El Dorado School in Stockton, California. As he was a special education student with learning and hearing disabilities, I taught him for four years.

Since that time I have been in frequent touch with him. I had the unfortunate experience of attending his trial in 1990, and I wrote a letter of support at that time.

During David's years in prison I have regularly received letters and phone calls from him. I have visited him, as well.

Currently I teach government and U.S. History at Stagg High School in Stockton, California. I have reared five children with my youngest son currently a senior in high school. My older children (2 boys, 2 girls) are grown, one with two children.

I say all of this, because I feel, though in a very different way, that I have also had a bit of a hand in watching and supporting David in his growth to manhood. This has been especially true after he became a prisoner. I have been able through phone calls, visits and letters to see him endure and mature. I have heard him describe his remorse for taking the life of another human being. I have heard him talk about his dream of helping to keep young persons from making the same mistakes that he made. I have heard the fear in his voice when he told me that his mother was very ill. I have heard the sadness in his voice when he told me that she died.



Most of all I have been impressed with his patience and maturity about his condition. Rather than speaking in anger, anger at a system or an authority, he talks about making the best of each day, He talks mostly about trying to make something of himself, and about, hopefully, one day becoming a productive citizen. (As a student David was as willing a worker as any that I have taught.)

I have known David to be very honest. I am aware of the fairly recent altercation that is on his record. I have the transcript of his trial, and I am fully knowledgeable of what occurred.

For the purpose of assisting you with your consideration of David's suitability I would like you to know that my wife and I are willing supporters. We are willing to provide assistance that would help David to succeed outside of prison. As a reputable 31 year member of the San Joaquin County community, I would stake my reputation on his chance for successful reentry into the general population. I am willing to make a substantial effort to see that happen.

If you are in need of further information, please feel free to contact me at any time.

Yours respectfully,

Ward Downs

Ward Downs

Cc: Ben Davey, Attorney at Law
David Lancaster, Inmate

July 28, 2005

From: Walter Lancaster
211 Watson St.
Lodi, Ca. 95240-
Phone: (209)570-1384

To: David Lancaster E-96955
CSP Solano
P. O. Box 4000
13-B-1-L
Vacaville, Ca. 95696-4000

Regarding: Mr. David Lancaster E-96955

Dear Sir or Madam:

This is a support letter in favor of David Lancaster E-96955 for his parole hearing this September I am his brother, and I am willing to assist him in any way I can. I am able to provide a place to live as well as transportation upon release. I can give emotional support, and also help him in finding work upon his release.

He is not the same man you sent to prison. He is very remorseful for his actions in the past He wants to become an active member of society and wants a chance to prove that he can be a law abiding citizen. He has received his High School Equivalency Diploma, as well as numerous ASE Certifications for Mechanics. I have all of his certificates in my possession , if they need to be presented

Since I have been writing and over phone communications he has made exceptional improvements for the good, I believe he is ready to be a part of civilization again.

Thank you for your time and concern in this matter.

Sincerely,

Walter Lancaster

July 28, 2005

From: Correen Shields
1902-A S Hutchins St.
Lodi, Ca 95240

To David Lancaster E-96955
CSP Solano
P. O Box 4000
13-B-1-L
Vacaville, Ca. 95696-4000

Regarding: Mr. David Lancaster E-96955

Dear Sir or Madam:

I am writing this letter in support of David Lancaster E-96955, whom has a parole hearing coming up this September. I am his brothers girlfriend of 6 years In that time I have kept in written contact with David, as well as visiting him. I am willing to provide any emotional support, social support, that he needs.

I know he has learned a great deal during his time in prison, he has also educated himself , with certifications that can assist in getting his new career started upon release.

I truly believe that David is ready to be out of prison and back in the world again. He just needs a chance to prove that he can be an active part of society, and a member of a community.

Thank you for your time and concern in this matter.

Sincerely,

Correen Shields

NEW LIFE MEN'S DRUG TREATMENT PROGRAM
445 S. San Joaquin Street
Stockton, CA 95203
(209) 320-2317

Date: 3/10/06

To the Prospective Candidate:

This is in regard to your interest in the drug treatment program at Gospel Center Rescue Mission. After you read the enclosed information, please verify your consent to complete the six-month residency here, by signing this agreement. We need the name of your counselor or member of the releasing board, AND your Probation Officer's name and phone number. By signing on the candidate line, you are verifying your commitment as follows:

- You will keep the $25 gate money for personal items.
- Report drug-free within 48 hours unless pre-arranged with GCRM Men's Program Director.
- Drug test will be given prior to admittance.
- Must arrive drug-free from jail or prison.
- They will allow you to come to the program as 2 weeks pending, then go before the Screening Team ~~which de~~termines admittance into the program.

Candidates Name: David Lancaster Date: 3-16-06

Release Counselor: K. Heinly, CCI (831) 678-3951 x4448 Date: 3-16-06

Parole Oficer:__________ Date:__________

Please return this form as soon as possible to hold a place in the program for you.

Thank you for your cooperation.

Yours Truly,

Ada Brown
Chief Operations Officer

(See enclosed brochure)

4

# G. C. Rescue Mission, Inc.

445 S. San Joaquin Street * Stockton, CA 95203-3537 * 209-466-2138 * Fax 209-320-2322
www.gcrms.org * info@gcrms.org
Emergency Lodge Guest * New Hope Family Services * Hope Housing * Hope Learning Center
Representative Payee
New Life Treatment & Plus Programs * Manna Meal/Lockers * Homeless Thrift Store * Supportive Housing

10/25/05

Mr. Lancaster:

Regarding your request for help finding housing upon your release from prison all I can promise you is a place to stay while you are looking. We have an Emergency Lodging Program, which your Parole Officer will recognize as a legitimate address, to put a roof over your head and provide breakfast and dinner daily. From 8:00am to 5:30pm you will be able to look for permanent housing and a job.

Contact me upon your release for further information or if I can be of any other assistance.

Thank You

Michael Gotschall
Mission Chaplain

David Lancaster
P.O. Box 689
Soledad, CA. 93960
CDC ID#: E-96955/C-334

TO: R.K. Kemp Sr.
Case Manager
445 S. San Joaquin Street
Stockton, CA. 95203-3537

---

Dear Mr. Kemp Sr.,

I received your correspondence regarding your willingness to assist me. I apologize for the delay informing you I received your letter.

First and for most I thank you for the willingness to assist me obtaining housing upon my release from prison. I cannot thank you enough for your help.

I informed you in me last letter that my Board of Prison Terms hearing was September of 2005. However, I was transferred from Solano State Prison to Soledad State Prison on September 21, 2005. Therefore that postponed my BPT hearing till December of 2005.

In your letter you stated to contact you prior to my next parole hearing. As I stated my next parole hearing is December of 2005. I would like your help and assist in obtaining housing upon my release from prison.

I'm very greatfull for your willingness to help me obtaining housing.

I thank you for your help in this matter.

RESPECTFULLY SUBMITTED.

Dated: 10-20-05

[signature]

David Lancaster
P.O. Box 689
Soledad, CA. 93960
CDC ID#: E-96955/C-334

David Lancaster
P.O. Box 705
Soledad, CA. 93960-0705
CDC ID#: E-96955/C-303

Michael Gotschall
Mission Chaplain
445 S. San Joaquin, St.
Stockton, CA. 95203-3537

April 23, 2006

Mr. Michael Gotschall;

I cannot thank you enought for the assistance in helping me [illegible] for the board [illegible]. I [illegible] thank you for the support letter that you sent me stating that I have a place to parole.

I [illegible] my [illegible] board hearing. The board [illegible] me a one (1) year denial. The reason is as follows: (1) no job offers, (2) the [illegible] crime, (3) your letter did not state a job or [illegible] (4) [illegible] (5) how I was going to pay for the [illegible].

I [illegible] hearing for any justification to deny [illegible].

I hope [illegible] will not [illegible] you have shown me.

Could I contact you prior to my next parole hearing, and would you [illegible] willing to assist me obtaining housing upon my release from prison?

Thank you for all the help you have shown me.

RESPECTFULLY SUBMITTED.

[signature]
David Lancaster
CDC ID#: E-96955/C-303

From: David Lancaster
CDC ID#: E-96955
13-B1-L

To: Friends Outside
C. Muhammad Coordinator

RE: HELP IN FINDING PAROLE PLANS IN STOCKTON:

To: C. Muhammad;

I am doing a life sentence for a crime I committed in Stockton fourteen (14) years ago. I received a board hearing on September 16, [illegible]. I was denied a parole date for one (1) year. The main reason was no parole plans in Stockton. The panel told me to write to friends outside to help find a place to parole to in Stockton. So, I am asking you to help me to meet this goal the board has placed on me.

Thank you for your attention in this matter.

RESPECTFULLY SUBMITTED.

Dated: September [illegible], 200[illegible].

David Lancaster
CDC ID#: E-96955
13-B1-L

///

///

///

///

///

///

///

///

///

///

///

///

cc: copy retained.

FROM: David Lancaster
      P.O. Box 4000
      Vacaville, CA. 95696-4000
      CDC ID#: E-96955/13-B-1-L

TO: Last Chance Men's Half-Way House
    345 W. Fremont
    Stockton, CA. 95203

RE: HOUSING ASSISTANCE:

    Dear Sir/Madam;

    This letter is to introduce myself and request your
office for assistance in helping me find housing in the
Stockton area.

    I have been incarcerated now 16 years, for a offense
that I commited in my community. For that offense I was
sentence to 15-years-to-life.

    On September 15, 2004, I received a Board of Prison
Terms (BPT) hearing for a parole suitability. The (BPT)
panel denied me for one (1) year for not having parole
plans in the Stockton area.

    I informed the panel that my mother has pass way, and
the rest of my family is living out of state. The panel
stated I need a places to parole in the Stockton area.

    I am coming to you for help and assistance to meet the
panel goals.

    I asking your office for any kind of assistance in
this matter. Thank you.

RESPECTFULLY SUBMITTED.

Dated: 1-8-05

                                         David Lancaster
                                         P.O. Box 4000
                                       Vacaville, Ca.
                                       95696-4000
                                       CDC ID#: E-96955

///

///

///

///
cc: copy retained

FROM: David Lancaster
P.O. Box 4000
Vacaville, CA. 95696-4000
CDC ID#: E-96955/13-B-1-L

TO: Stockton Shelter for the Homeless
[illegible] W. Church St.
Stockton, CA. 95202

RE: <u>HOUSING ASSISTANCE:</u>

Dear Sir/Madam;

This letter is to introduce myself and request your office for assistance in helping me find housing in the Stockton area.

I have been incarcerated now 16 years, for a offense that I commited in my community. For that offense I was sentence to 15-years-to-life.

On September 15, 2004, I received a Board of Prison Terms (BPT) hearing for a parole suitability. The (BPT) panel denied me for one (1) year for not having parole plans in the Stockton area.

I informed the panel that my mother has pass way, and the rest of my family is living out of state. The panel stated I need a places to parole in the Stockton area.

I am coming to you for help and assistance to meet the panel goals.

I asking your office for any kind of assistance in this matter. Thank you.

RESPECTFULLY SUBMITTED.

Dated: 1-8-05

David Lancaster
P.O. Box 4000
Vacaville, Ca.
95696-4000
CDC ID#: E-96955

///

///

///

///

cc: copy retained

FROM: David Lancaster
P.O. Box 4000
Vacaville, CA. 95696-4000
CDC ID#: E-96955/13-B-1-L

TO: [illegible]
[illegible]
[illegible]

RE: HOUSING ASSISTANCE:

Dear Sir/Madam;

This letter is to introduce myself and request your office for assistance in helping me find housing in the Stockton area.

I have been incarcerated now 16 years, for a offense that I commited in my community. For that offense I was sentence to 15-years-to-life.

On September 15, 2004, I received a Board of Prison Terms (BPT) hearing for a parole suitability. The (BPT) panel denied me for one (1) year for not having parole plans in the Stockton area.

I informed the panel that my mother has pass way, and the rest of my family is living out of state. The panel stated I need a places to parole in the Stockton area.

I am coming to you for help and assistance to meet the panel goals.

I asking your office for any kind of assistance in this matter. Thank you.

RESPECTFULLY SUBMITTED.

Dated: 1-8-05

David Lancaster
P.O. Box 4000
Vacaville, Ca.
95696-4000
CDC ID#: E-96955

///

///

///

///
cc: copy retained

FROM: David Lancaster
P.O. Box 4000
Vacaville, CA. 95696-4000
CDC ID#: E-96955/13-B-1-L

TO: Salvation Army
525 N. Lockeford
Lodi, CA. 95240

RE: HOUSING ASSISTANCE:

Dear Sir/Madam;

This letter is to introduce myself and request your office for assistance in helping me find housing in the Stockton area.

I have been incarcerated now 16 years, for a offense that I commited in my community. For that offense I was sentence to 15-years-to-life.

On September 15, 2004, I received a Board of Prison Terms (BPT) hearing for a parole suitability. The (BPT) panel denied me for one (1) year for not having parole plans in the Stockton area.

I informed the panel that my mother has pass way, and the rest of my family is living out of state. The panel stated I need a places to parole in the Stockton area.

I am coming to you for help and assistance to meet the panel goals.

I asking your office for any kind of assistance in this matter. Thank you.

RESPECTFULLY SUBMITTED.

Dated: 1-8-05

David Lancaster
P.O. Box 4000
Vacaville, Ca.
95696-4000
CDC ID#: E-96955

///

///

///

///

cc: copy retained

FROM: David Lancaster
P.O. Box 4000
Vacaville, CA. 95696-4000
CDC ID#: E-96955/13-B-1-L

TO: Last Chance Men's Half-Way House
[illegible] W. Fremont
Stockton, CA. 952[illegible]

RE: HOUSING ASSISTANCE:

Dear Sir/Madam;

This letter is to introduce myself and request your office for assistance in helping me find housing in the Stockton area.

I have been incarcerated now 16 years, for a offense that I commited in my community. For that offense I was sentence to 15-years-to-life.

On September 15, 2004, I received a Board of Prison Terms (BPT) hearing for a parole suitability. The (BPT) panel denied me for one (1) year for not having parole plans in the Stockton area.

I informed the panel that my mother has pass way, and the rest of my family is living out of state. The panel stated I need a places to parole in the Stockton area.

I am coming to you for help and assistance to meet the panel goals.

I asking your office for any kind of assistance in this matter. Thank you.

RESPECTFULLY SUBMITTED.

Dated: 1-8-05

David Lancaster
P.O. Box 4000
Vacaville, Ca.
95696-4000
CDC ID#: E-96955

///

///

///

///

cc: copy retained

FROM: David Lancaster
      P.O. Box 4000
      Vacaville, CA. 95696-4000
      CDC ID#: E-96955/13-B-1-L


TO: Jesus Saves Ministries
    7 N. Sacramento St.
    Lodi CA. 95240


RE: HOUSING ASSISTANCE:

        Dear Sir/Madam;

        This letter is to introduce myself and request your
office for assistance in helping me find housing in the
Stockton area.

        I have been incarcerated now 16 years, for a offense
that I commited in my community. For that offense I was
sentence to 15-years-to-life.

        On September 15, 2004, I received a Board of Prison
Terms (BPT) hearing for a parole suitability. The (BPT)
panel denied me for one (1) year for not having parole
plans in the Stockton area.

        I informed the panel that my mother has pass way, and
the rest of my family is living out of state. The panel
stated I need a places to parole in the Stockton area.

        I am coming to you for help and assistance to meet the
panel goals.

        I asking your office for any kind of assistance in
this matter. Thank you.

        RESPECTFULLY SUBMITTED.

        Dated: 1-8-05

                                            David Lancaster
                                            P.O. Box 4000
                                            Vacaville, Ca.
                                            95696-4000
                                            CDC ID#: E-96955

        ///

        ///

        ///

        ///
        cc: copy retained

FROM: David Lancaster
P.O. Box 4000
Vacaville, CA. 95696-4000
CDC ID#: E-96955/13-B-1-L

TO: [illegible]
[illegible] S. San Joaquin St.
Stockton, Ca. [illegible]

RE: <u>HOUSING ASSISTANCE:</u>

Dear Sir/Madam;

This letter is to introduce myself and request your office for assistance in helping me find housing in the Stockton area.

I have been incarcerated now 16 years, for a offense that I commited in my community. For that offense I was sentence to 15-years-to-life.

On September 15, 2004, I received a Board of Prison Terms (BPT) hearing for a parole suitability. The (BPT) panel denied me for one (1) year for not having parole plans in the Stockton area.

I informed the panel that my mother has pass way, and the rest of my family is living out of state. The panel stated I need a places to parole in the Stockton area.

I am coming to you for help and assistance to meet the panel goals.

I asking your office for any kind of assistance in this matter. Thank you.

RESPECTFULLY SUBMITTED.

Dated: [illegible]

David Lancaster
P.O. Box 4000
Vacaville, Ca.
95696-4000
CDC ID#: E-96955

///

///

///

///

cc: copy retained

FROM: David Lancaster
P.O. Box 4000
Vacaville, CA. 95696-4000
CDC ID#: E-96955/13-B-1-L

TO: [illegible] Point
[illegible] Park St.
Stockton, CA. [illegible]

RE: **HOUSING ASSISTANCE:**

Dear Sir/Madam;

This letter is to introduce myself and request your office for assistance in helping me find housing in the Stockton area.

I have been incarcerated now 16 years, for a offense that I commited in my community. For that offense I was sentence to 15-years-to-life.

On September 15, 2004, I received a Board of Prison Terms (BPT) hearing for a parole suitability. The (BPT) panel denied me for one (1) year for not having parole plans in the Stockton area.

I informed the panel that my mother has pass way, and the rest of my family is living out of state. The panel stated I need a places to parole in the Stockton area.

I am coming to you for help and assistance to meet the panel goals.

I asking your office for any kind of assistance in this matter. Thank you.

RESPECTFULLY SUBMITTED.

Dated:

David Lancaster
P.O. Box 4000
Vacaville, Ca.
95696-4000
CDC ID#: E-96955

///

///

///

///

cc: copy retained

To Whom It May Concern,

I am writing on behalf of one of your current inmates, Mr. David Lancast #E96955. I feel during his time of incarcerat and losing his beloved mother and other close family members that he has become a stronger pe mentally and emtionally. And for this purpose I feel that he could become a responisible and member of society with proper guiduance. He, h a Uncle which lives in Steubenville, Ohio and is willing to let him come and live with him and s a new way of life. After, fourteen years I feel h has realized what he has done was wrong and have remorse for the victim and his family.
I want to thank you for your time, and asked that you take this letter inconsideration on behaf of Mr. Lancaster and his Uncle Robert Mason.

Sincerly,
Ms. Stephan Mason

January 12, 2004

Lindalee R Ball
8607 Valleyview Rd
Custer, Wa. 98240

INMATE COPY

To Whom it May Concern:

My name is Lindalee R. Ball and I am the step-sister of David Lancaster ( E-96955). He has been in your institution for 13 years. I believe he has been a good person and tries to do what he is asked to do.

David has been a part of my family since 1979. He was a very sweet youngster. I believe that David has learned his lesson and has served a good length of time for his crime. I have faith that David has learned that crime does not pay. In my heart I believe he will stay on the right side of the law.

Since David has been in jail he has lost his mother to cancer. I know that it is not a crime, but he has faced a loss of great significance and I feel he now can sympathize with the family and their loss. In other words I think he knows what they're going through.

I think he has improved as a person as he has aged. He will never find himself in the same circumstances as he did that night at the age of 17. His maturity will guide him in a better way. I believe he has learned a way to support himself in the future and will be able to keep himself in a good way.

I am 55 years old and am disabled and would not be afraid to have David live with me. It will depend on where David is paroled as to wether I can provide David with any assistance. We haven't gone over wether he will be living with us. If paroled David would not live in the same house as me, but would have his own travel trailer. He would use the training he has been provided with to gain employment, as soon as possible. I thank you for letting me send this letter in David's defense and hope to hear soon the decision.

Sincerely,

[signature]

Lindalee R. Ball

Noted
[signature] CTPR
2-5-04



State of California
Department of Corrections

# Memorandum

california
prison industry authori

Date: October 10, 2003

To: Whom it May Concern

From: M. W. Brown
Prison Industry Authority • Deuel Vocational Institution, Tracy, CA 95376

Subject: Job Commendation/Future Refferal

Inamte Lancaster, E-96955, has worked under my direct supervision for two years in the Prison Industry Assembly Shop (P.I.A.) Tracy, Ca. In the two years I have observed him I have found him to be a very diligent worker, and he rose rapidly in this shop to become the floor leadman. He set a good example for the men during his tenure in this position. Inmate Lancaster was responsible for inventory stocking, job assignments for the the other inmate workers in the shop. Mr. Lancaster provided help at every level of this shop and he has been greatly missed since the Z-Dorm riot that say so many PIA workers removed from their jobs. I have tried to get Mr. Lancaster back in his job, as he was worth any other two workers. It has been decided by the Security Admninistration to reassign and transfer all the removed PIA workers.

I recommend that wherever Mr. Lancaster is placed in the future that he would be placed in a PIA job position. I cannot commend this particular worker enough, and he directed the best group of workers I have ever supervised in my 18 years as a PIA Supervisor.

William M. Brown

W.M. Brown
PIA Assembly Shop, Tracy
(209) 835-4141 (Ext. 5843)

PIA-DVI-201 (10/93) 1635

From: Tina Beavers
409 W. Cline, St.
Aurara, Mo. 65605
(417) 678-6138

TO: Mr. David Lancaster
E-96955
P.O. Box 0600
Tracy, CA. 95378-0600

RE: Mr. David Lancaster CDC ID#: E-96955
P.O. Box 0600
Tracy, CA. 95378-0600
Prison Terms Hearing/2003, Letter of Support:

---

Dear Sir or Madam,

This is a letter of support for my brother David Lancaster California Board of Prison Terms Hearing for the year of 2004. Nothing has changed about my willingness to assist my brother to make a positive retune back into society upon parole release. I will assist my brother, David Lancaster with living arrangements, financial, and emotional support while he is reintegrating back into his home. I will assist my brother with whatever is necessary for him to be returned to society upon your finding of his suitability and his excellent programming while incarcerated.

I also know that David Lancaster will be a law abiding citizen, and will contribute to our community upon his release. He is a good person at heart and this mistake in his life does not make him a bad person. I know this from my personal experiences with him.

The improvements he has shown me while he has been incarcerated have made me so proud. Every one of them. He has shown me his High School Diploma, and his achievements while working in Vocational Training, and I brim with pride at his successes. I also can see with my eyes that he gained confidence in accepting responsibilities. He has gone forward by progressing into the Vocational Apprenticeship Program in mechanics. He has finished the Apprenticeship with a Diploma. My brother has progress into the P.I.A. Assembly shop has a floor leadman in less than a year. I also know that having his will to increase his success upon his release. This Board should consider his successes in a positive light. I know That I am very proud of his accomplishment.

David writes, calls me, and we continued to enjoy being together. We plain on being together, and I will be there for my brother David.

I know he is a good person and deserve a chance. He has shown improvement in attitude and education. I look forward to a positive outcome of your consider opinion on his release. Thank you for your time.

RESPECTFULLY SUBMITTED:

Tina Beavers

**From:** Ms. Deloris Lancaster
3120 Redwood, Ave.
Stockton, CA. 95205
Phone No. (209) 943-0721

To: Mr. David Lancaster
E-96955/D-337
P.O. Box 0600
Tracy, CA. 95378-0600

**Re:** Mr. David Lancaster CDC ID#: E-96955/D-337
P.O. Box 0600
Tracy, CA. 95378-0600
**Prison Terms Hearing/2001, Letter of Support:** April 18,2001

Dear Sir or Madam

This is a letter of support for my son's California Board of Prisc Terms Hearing for the year of 2001. Nothing has changed about n willingness to assist my son to make a postive retune back into societ upon parole release. I will assist my son, David Lancaster with livir arrangments, financial, and emotional support while he is reintegratir back into his home. I will assist my son with whatever is necessary fc him to be returned to society upon your finding of his suitability and hi excellent programing while incarcerated.

I also know that David Lancaster will be a law abiding citizen, ar will contribute to our community upon his release. He is a good person ε heart and this mistake in his life does not make him a bad person. I knc this from my personal experiences with him.

The improvements he has shown me while he has been incarcerated hav made me so proud. Every one of them. He has shown me his High Schoc Diploma, and his acheivments while working in Vocational Training, and brim with pride at his successes. I also can see with my own eyes that h gained confidence in accepting responsibilites. He has gone forward t progressing into the Vocational ApperntICeship Program in mechanics. also know that having his will to increase his success upon his release This Board should consider his successes in a postive light. I know that am very proud of his accomplishment.

David writes, calls me, and we continue to enjoy being togethe during visitation. We plan on being together, and I will be there for n son David. He also has expressed his will to be there for me.

I do not know how long I have left on in the world. I've bee diagnosed with **Termmiral pancreatic cancer** in 2000. The doctor informed n that I have no more than six (6) month to one (1) year to live. My healt and my weight is deterioating rapidly from this disease. I will loc forward to having my son David beside me when I leave this world. I knc in my heart that you should find my son David suitable for release.

I know he is a good person and deserve a chance. He has sho improvement in attitude and education. I look forward to a positi outcome of your considered opinion on his release. Thank you for yo time.

Sinerely your,

Deloris Lancaster.

March 22, 2000

From: Ms. Deloris Lancaster
3120 Redwood Avenue
Stockton, Ca. 95205-2628
PhoneNo.(943-0721)

To: State of California
Board of Prison Terms "Chairman"
428 J Street, 6th Floor
Sacramento, Ca. 95814

00-04/2000

RECEIVED
BOARD OF PRISON TERMS

Re: **Mr. David Lancaster CDC ID#: E-96955/D-337**
**P.O.box 0600**
**Tracy, Ca 95378-0600**
**Prison Terms Hearing/2000,:Letter of Support**

**Dear Sir or Madam**

This a letter of support for my son's California Board of Prison Terms Hearing for the year 2000.Nothing has change about my willingess to assist my son to make a positive back into society upon parole releasa.I will assist my son, David Lancaster with living arrangments, financial,and emotional support while he is reintegrating back into his home.I will assist my son with whatever ot tales for him to be returned to society upon your finding of his suitability and his excellent programming while incarcerated.

I also know that David Lancaster will be a law abiding citizen,and will contribute to our community upon his release. He is a good person at heart,and this mistake in his life does not make him a bad person.I know this from my personal experiences with him.

The improvements he has shown me while he has been incarcerated, have made so proud.Every one of them.He showned me his High School Diploma,and his acheivments while working in Vocational Training,and I would brim with pride at his successes.I also can see with my own eyes that he gained confidence in accepting responsibilites,and he has gone foward by progressing into the Vocational Appernticeship Program in mechanics. I also know that having the will increase his success upon his release,and this Board should consider his successes in a positive light.Iknow that I am very proud of accomplishments.

David writes me,calls me and we continue to enjoy being together during vistation.We plan on being together,and I will be there for David.He also has expressed his to be there for me.

I will assist David.I know he is a good person,and he desrves a chance. He ha shown great improvment in attitude and educational.I look forward to a positive outcome of your considered opinion on his suitability for release thank you for your time.

Sincerely,

Deloris Lancaster

Deloris Lancaster

Rcvd 6-20-00

From: Thomas N. Brown
3120 Redwood Avenue
Stockton, Ca 95205-2628
Phone No. 943-0721

To: Ms. MarQuez
Deuel Vocational Instituion
P.O.Box 400
Tracy, Ca 95378-0400

**Re: Mr. David Lancaster CDC ID#: E-96955/D-337**
P.O.BOX 0600
Tracy, Ca. 95378_0600
Prison Terms Hearing/2000: Letter of suppourt

Dear Sir or **Madam**

This is a letter for my step-son's California Board of Prison Terms Hearing for the year 2000. Nothing has change from my previous two-letters. I have know David for 19 years and I am married to his mother. David grew up under our care.

I am willing to assist David in any way upon his parole release. I will help him financially, emotionally and assisting him with getting ajob. I will Help him with transportation, clothing and get set up as a productive member of our society.

My wife and I vist David every two-weeks and during this time I have noticed a great improvement in David over the past 10-years,his attitude has become more responsidle, and positive.

He has also learned that hard work and productivity are necessary IN society, and he has expressed his willingenss to perform as a contributing member of our society upon release from prison.

I am dedicated to assisting David,finding his place into society. We will be togher as a family. I also know David will be productive with the experience he has gained. This Board should consider his improvements, and successes in a positive life when considering his parole siutability for his release from prison.

YOU will not regret it. thank you for your time.

Sincerely

Thomas N. Brown

Thomas N. Brown

'eb 22,2000

Tina's Janitorial
308 E. Hadley st.
Aurora,Mo.65605.
Phone: (417) 6786696

FEB 29 2000 - fr CRC

J Rowe CAPR Noted 3-12-2000

To: Mr. L. Kuykensall, Counselor
Deuel Vocational Instituion
P.O.Box 400
Tracy,Ca 95378-0400

D-337

Regarding: Mr. David Lancaster E-96955

Dear Sir or Madam;

This letter is in addition to my previous letters like I said before I am willing to give my bother a job and, help him in any way i can .

Ihave seen Him a few times in the past few years and,he has change a lot he has told me that he is very sorry about wath he has done.

Yours truly,

[signature]

Mrs. Tina ·eavers

July 30, 1999

BOARD OF PRISON TERMS

From: Mrs. Tina Beavers
Tina's Janitorial Service
301 Pleasant Apt. 39
Monett, MO 65708
Phone: (417) 235-6912

To: State of California
Board of Prison Terms Chairman
428 J. St. 6th Floor
Sacramento, CA 95814

Regarding: Mr. David Lancaster E-96955

Dear Sir or Madam:

This letter in addition to my first letter. I visited my brother, David Lancaster, in May of this year and found him a different person from the teenager I knew. His attitude is a positive one. He has a new out look on life. I am still willing to help him in any way that I can.

I am very proud of his achievements since he has been in prison. He continues to use the resources available to him, to improve his chances of making a success upon his release. He has been working in the auto shop and is now a Certified Smog Technician. He would be able to support himself and he has lots family to help him over the rough spots. We all love him very much. Thank you.

Yours truly,

Mrs. Tina Beavers

July 17, 1999

From: Mrs. Deloris Lancaster
3120 Redwood Ave.
Stockton, CA 95205-2628
Phone: (209) 943-0721

To: Mr. L. Kuykendall Counselor
Deuel Vocational Institution
P. O. Box 400
Tracy, CA. 95378-0400

Regarding: Mr. David Lancaster E-96955

Dear Sir or Madam:

This is my second letter to inform you of my ability to assist my son, David Lancaster with living arrangement financial and emotional support. I am willing to help my son in any way I can.

He is not the teenager you originally sent to prison. He has very deep understanding of what he did was wrong and he has learned to live with results of his actions. During the time he has been in prison I have watched a rebellious teenager, turn into a responsible human being. Even though my son is in prison I am very proud of his continuing accomplishments.

He wants a chance to prove it to himself and everyone that he can be law-abiding citizen and also a productive person in any community.

Yours truly,

Deloris Lancaster

Mrs. Deloris Lancaster

Contact was made with Mrs. Lancaster on 8·16·99 regarding this letter. Based on her statement that this was her second letter sent, I made a follow-up call for clarification. She stated she sent a letter of support on her son's last BPT appearance and just wants the BPT to know she is continuing to support him. L. Kuykendall, CCI

July 17, 1999

From: Thomas N. Brown
3120 Redwood Ave.
Stockton, CA 95205-2628
Phone: (209) 943-0721

To: Mr. L. Kuykendall Counselor
Deuel Vocational Institution
P. O. Box 400
Tracy, CA 95378-0600

Regarding: Mr. David Lancaster E-96955

Dear Sir or Madam:

My relationship to David is as follows. This is my second letter to about my stepson, David Lancaster. As I stated I am willing to assist David with financial and emotional help.

I married David's mother when he was 9 years old. David grew-up in his mother's and my care. He was a normal young teenager, always trying his wings. He managed to join the wrong group of friends. We tried to guide him in the right direction but their influence over him was too strong. David has told me he now understands what we were trying to teach him. We visit him bi-monthly and I have seen him change. David is not the teenager he was then. David has turned into a young man that I could call friend

Yours truly,

Thomas N. Brown

Thomas N. Brown

Contact was made with the Brown residence on 8-10-99 and I spoke with the wife of Mr. Brown concerning this letter. I wanted to ensure that we were receiving all the letters he was sending. The letter states this is his second letter. His wife explained that they sent a letter for her son's last BPT hearing and wanted the BPT to know that they continue to support him.

*Lawnmower & Small Engine*
*Ask For Darrell*
*Open Monday - Saturday*
*8 am to 5 pm*
*Ask For Darrell*
*Pick-up & Delivery Available*
*Shell Knob Area*
***Phone: (417) 858-3579***

May 30, 1998

From: Mrs. Tina Beavers
Rt. 1 Box 1886
Shell Knob, MO 65747
Phone: (417) 858-3579

To: Mr. L. Kuykendall Counselor
Deuel Vocational Institution
P. O. Box 400
Tracy, CA 95378-0400

Regarding: Mr. David Lancaster E-96955

Dear Sir or Madam:

This letter is to introduce myself and to let you know what kind of support I am willing to provide for my brother, David. I would be willing to help my brother in any way I can. I have known him for 28 years.

I know that David will be a law biding citizen in any community. He is basically a good person and he has a lot of people who care and love him. He has gained respect for himself and from family and friends. He made an error in judgement and he has paid dearly for it.

I am very proud of his achievements since he has been in prison. He got his High School Diploma, and he is looking for a way of furthering his education. I think he would have a better chance if he were to be paroled. He has been working in the auto shop. He has been working very hard to improve his chances for success when he is released from prison.

Yours truly,

Mrs. Tina Beavers

May 17, 1998

From: Thomas N. Brown
3120 Redwood Ave.
Stockton, CA 95205-2628
Phone: (209) 943-0721

To: Mr. L. Kuykendall Counselor
Deuel Vocational Institution
P. O. Box 400
Tracy, CA 95378-0600

Regarding: Mr. David Lancaster E-96955

Dear Sir or Madam:

My relationship to David is as follows. I am married to his mother and have known David for 18 years. I am willing to help David in any way, financially, emotionally, etc. My wife and I visit David every two weeks, and I have noticed the changes in David in the past nine years. He has improved his out look by educating himself and he understands that it takes hard work to live in society.

I am willing help him with transportation, clothing, and in finding a job. He will be able to live with his mother and I until he can support himself. He would like to be able to further his education and if you release him there are schools of all kinds here.

I feel that David has learned his lesson and I know he has an understanding about what it takes to be a law biding person. I would like you to consider releasing him from prison. Thank you.

Yours truly,

Thomas N. Brown

Thomas N Brown

May 17, 1998

From: Mrs. Deloris Lancaster
3120 Redwood Ave.
Stockton, CA 95205-2628
Phone: (209) 943-0721

To: Mr. L. Kuykendall Counselor
Deuel Vocational Institution
P. O. Box 400
Tracy, CA. 95378-0400

Regarding: Mr. David Lancaster E-96955

Dear Sir or Madam:

This letter is to introduce myself and to let you know what kind of support I am willing to provide for my son, David. I have known him for 28 years.

I know that David will be a law biding citizen in our community. He is really a good person and cares about people. His mistake he made does not make him a bad person.

The improvements he has made in prison have made me very proud. He got his High School Diploma, and he is looking for a college that will send courses while he is in prison. He has been working in the auto shop. He has been working very hard to improve his chances for success when he is released from prison.

I am willing to support my son in any way, financially, emotionally, etc. He will have housing, transportation, clothing, etc. I love my son very much and I will be here for him as long as he needs me. I visit my son every two weeks, I have seen the change in his attitude toward what happened and he is very sorry. There are no words to explain the change other than he was a boy and now he is a young man. He wants to prove it to himself and everyone that he can be productive person in any community. If you release him he will have that chance.

Yours truly,

Mrs. Deloris Lancaster

Mrs. Deloris Lancaster

# DMLee's Enterprises

*3120 Redwood Ave.*
*Stockton, CA 95205-2628*
*Phone: (209) 943-0721*

May 17, 1998

From: Mrs. Diane M. Lee
3120 Redwood Ave.
Stockton, CA 95205-2628
Phone: (209) 943-0721

To: Mr. L. Kuykendall Counselor
Deuel Vocational Institution
P. O. Box 400
Tracy, CA 95378-0400

Regarding: Mr. David Lancaster E-96955

Dear Sir or Madam:

I am David's step-sister. My father is married to his mother. I would be willing to provide housing, financial , emotional support for David. I have known him for 18 years. I have kept in contact with David and he is a changed person. He grew up in prison and now it is time for him to be productive part of society. I think he is ready.

I have a home based business. I am a computer graphics designer. I would be willing to help him learn how to do the work. There are lots of educational facilities in the area.

The improvements he has made in prison have made me very proud. He got his High School Diploma. He has been working in the auto shop. He has been working very hard to improve his chances for success when he is released from prison.

There is a change in his attitude toward what happened and he is very sorry. There are no words to explain the change other than he was a boy and now he is a young man. He wants to prove it to himself and everyone, that he can be a productive person in any community. If you release him he will have that chance.

Yours truly,

Diane M. Lee

Mrs. Diane M. Lee

EXHIBIT F

**TO:** **Residential Multi-Service Centers**
1981 Cherokee, Rd.
Stockton. Ca. 95205

**FROM:** **David Lancaster**
P.O. Box 689
Soledad, CA. 93960-0689
**CDC ID#: E-96955/C-303**

**RE:** **EMPLOYMENT & TRAINING:**

Dear Sir/Madam;

This letter is to introduce myself and request our office for assistance for employment and job training.

I have been incarcerated now for 16 years, for a offense thatt I commited in my community. For that offense I was sentence to 15-years-to-like.

On September 15, 2004, I RECIEVED A Board of Prison Term (BPT) hearing for a suitability. The (BPT) panel denied me for a one (1) year for the following reason: (1) No parole plans in the Stockton area, (2) no emplo~~yment~~ offers.

My Next Board of Prison Terms hearing is April 4, 2006. I am asking our office for any kind of assistance in this matter.

**RESPECTFULLY SUBMITTED.**

Dated: 1-18-06

David Lancaster

**TO:** **Department of Rehabilitation**
**Branch**
4555 Precissi, Lane #1
Stockton, CA. 95007

**FROM:** **David Lancaster**
P.O. Box 689
Soledad, CA. 93960-0689
**CDC ID#: E-95955/C-303**

**RE:** **EMPLOYMENT & TRAINING:**

Dear Sir/Madem;

This letter is to introduce myself and request our office for assistance for employment and job training.

I have been incarcerated now for 16 years, for a o offense that I commited in my community. For that offense I was sentence to 15-years-to-life.

ON September 15, 2005, I recieved a Board of Prison Terms (BPT) hearing for a parole suitability. The (BPT) panel denied me for a one (1) year for the following reason: (1) No employment offers, (2) no parole plans in the Stockton area.

My next Board of Prison Terms hearing in April 4, 2006. I am asking our office for any kind of assistance in this matter.

RESPECTFULLY SUBMITTED.

Dated: 1-30-06

David Lancaster

TO: **Community Connection**
**Resource Center**
1108 E. Waterloo, Rd. Ste. 4
Stockton, CA. 95205

FROM: **David Lancaster**
P.O. Box 689
Soledad, CA. 93960-0689
**CDC ID#: E-96955**

**RE: EMPLOYMENT & TRAINING:**

Dear Sir/Madam:

This letter is to introduce myself and request our office for assistance for employment and job trainingh

I have been incarcerated now for 16 years, for a offenee that I commited in my community. For that pffenee I was sentence to 15-years-to-life.

On September 15, 2005, I recieved a Board of Prison Terms hearing for a parole suitability. The (BPT) panel denied me for a one (1) year for the following reason: (1) No parole plans in Stockton area, (2) no employment offers.My next (BPT) hearing is April 4, 2006. I am asking our office for any kind of assistance in this matter.

**RESPECTFULLY SUBMITTED.**

**Dated:** 2-2-06

David Lancaster

TO: Manpower Stockton
Worknet Center
850 N. Hunter, St.
Stockton, CA. 95202

FROM: David Lancaster
P.O. Box 689
Soledad, CA. 93960-0689
CDC ID#: E-96955/C-303

RE: EMPLOYMENT & TRAINING:

Dear Sir/Madam;

This letter is to introduce myself and request our offece for assistance for emploment and job tramaing.

I have been incarcerated now for 16 years, for a offense that I commited in my community. The (BPT) panel denied sentence to 15-years-to-life.

On September 15, 2005, I recieved a Board of Prison Terms (BPT) hearing for a parole suitability. The (BPT) panel denied me for a one (1) year for the following reason: (1) No parole plans in Stockton area, (2) no employment offers.

My next Board of Prison Terms hearing is April 4, 2006. I am asking our office for any kind of assistance in this matter.

RESPECTFULLY SUBMITTED.

Dated: 3-1-06

[signature]
David Lancaster

FROM: David Lancaster
P.O. Box 4000
Vacaville, CA. 95696-4000
CDC ID#: E-96955/13-B-1-L

TO: Employment Development Department (EDD)
155 [illegible]
P.O. Box 201013
Stockton, CA. [illegible]

RE: EMPLOYMENT & TRAINING:

Dear Sir/Madam;

This letter is to introduce myself and request your office for assistance for employment and job training.

I have been incarcerated now for 16 years, for a offense that I commited in my community. For that offense I was sentence to 15-years-to-life.

On September 15, 2004, I recieved a Board of Prison Terms (BPT) hearing for a parole suitability . The (BPT) panel denied me for a one (1) year for the following reason: (1) No parole plans in the Stockton area, (2) no employment offers.

My next Board of Prison Terms hearing is September of this year. I am asking your office for any kind of assistance in this matter.

RESPECTFULLY SUBMITTED.

Dated: 1-8-05

David Lancaster

FROM: David Lancaster
P.O. Box 4000
Vacaville, CA. 95696-4000
CDC ID#: E-96955/13-B-1-L

TO: Private Industry Council (PIC)
[illegible] E. Hunter St.
Stockton, CA. 95[illegible]

RE: <u>EMPLOYMENT & TRAINING:</u>

Dear Sir/Madam;

This letter is to introduce myself and request your office for assistance for employment and job training.

I have been incarcerated now for 16 years, for a offense that I commited in my community. For that offense I was sentence to 15-years-to-life.

On September 15, 2004, I recieved a Board of Prison Terms (BPT) hearing for a parole suitability . The (BPT) panel denied me for a one (1) year for the following reason: (1) No parole plans in the Stockton area, (2) no employment offers.

My next Board of Prison Terms hearing is September of this year. I am asking your office for any kind of assistance in this matter.

RESPECTFULLY SUBMITTED.

Dated: 1-8-05

[signature]
David Lancaster

FROM: David Lancaster
P.O. Box 4000
Vacaville, CA. 95696-4000
CDC ID#: E-96955/13-B-1-L

TO: [illegible]
[illegible]
[illegible]

RE: EMPLOYMENT & TRAINING:

Dear Sir/Madam;

This letter is to introduce myself and request your office for assistance for employment and job training.

I have been incarcerated now for 16 years, for a offense that I commited in my community. For that offense I was sentence to 15-years-to-life.

On September 15, 2004, I recieved a Board of Prison Terms (BPT) hearing for a parole suitability . The (BPT) panel denied me for a one (1) year for the following reason: (1) No parole plans in the Stockton area, (2) no employment offers.

My next Board of Prison Terms hearing is September of this year. I am asking your office for any kind of assistance in this matter.

RESPECTFULLY SUBMITTED.

Dated: 1-3-05

David Lancaster

FROM: David Lancaster
P.O. Box 4000
Vacaville, CA. 95696-4000
CDC ID#: E-96955/13-B-1-L

TO: [illegible]
[illegible]
[illegible]

RE: EMPLOYMENT & TRAINING:

Dear Sir/Madam:

This letter is to introduce myself and request your office for assistance for employment and job training.

I have been incarcerated now for 16 years, for a offense that I commited in my community. For that offense I was sentence to 15-years-to-life.

On September 15, 2004, I recieved a Board of Prison Terms (BPT) hearing for a parole suitability . The (BPT) panel denied me for a one (1) year for the following reason: (1) No parole plans in the Stockton area, (2) no employment offers.

My next Board of Prison Terms hearing is September of this year. I am asking your office for any kind of assistance in this matter.

RESPECTFULLY SUBMITTED.

Dated: 1-8-05

David Lancaster

FROM: David Lancaster
P.O. Box 4000
Vacaville, CA. 95696-4000
CDC ID#: E-96955/13-B-1-L

TO: Employment Development Department (EDD)
[illegible] N. [illegible] St.
Stockton, CA. 95202

RE: EMPLOYMENT & TRAINING:

Dear Sir/Madam;

This letter is to introduce myself and request your office for assistance for employment and job training.

I have been incarcerated now for 16 years, for a offense that I commited in my community. For that offense I was sentence to 15-years-to-life.

On September 15, 2004, I recieved a Board of Prison Terms (BPT) hearing for a parole suitability . The (BPT) panel denied me for a one (1) year for the following reason: (1) No parole plans in the Stockton area, (2) no employment offers.

My next Board of Prison Terms hearing is September of this year. I am asking your office for any kind of assistance in this matter.

RESPECTFULLY SUBMITTED.

Dated: 1-8-05

David Lancaster

FROM: David Lancaster
P.O. Box 4000
Vacaville, CA. 95696-4000
CDC ID#: E-96955/13-B-1-L

TO: Mental Health SVCS.
1212 N. California St.
Stockton, CA. 95202

RE: EMPLOYMENT & TRAINING:

Dear Sir/Madam;

This letter is to introduce myself and request your office for assistance for employment and job training.

I have been incarcerated now for 16 years, for a offense that I commited in my community. For that offense I was sentence to 15-years-to-life.

On September 15, 2004, I recieved a Board of Prison Terms (BPT) hearing for a parole suitability . The (BPT) panel denied me for a one (1) year for the following reason: (1) No parole plans in the Stockton area, (2) no employment offers.

My next Board of Prison Terms hearing is September of this year. I am asking your office for any kind of assistance in this matter.

RESPECTFULLY SUBMITTED.

Dated: 1-8-05

David Lancaster

FROM: David Lancaster
P.O. Box 4000
Vacaville, CA. 95696-4000
CDC ID#: E-96955/13-B-1-L

TO: Employment Development Department (EDD)
528 N. Madison St.
Stockton, CA. 95202

RE: EMPLOYMENT & TRAINING:

Dear Sir/Madam;

This letter is to introduce myself and request your office for assistance for employment and job training.

I have been incarcerated now for 16 years, for a offense that I commited in my community. For that offense I was sentence to 15-years-to-life.

On September 15, 2004, I recieved a Board of Prison Terms (BPT) hearing for a parole suitability . The (BPT) panel denied me for a one (1) year for the following reason: (1) No parole plans in the Stockton area, (2) no employment offers.

My next Board of Prison Terms hearing is September of this year. I am asking your office for any kind of assistance in this matter.

RESPECTFULLY SUBMITTED.

Dated: 1-8-05

David Lancaster

ACCOMPLISHENTES MADE DURING INCARCERATION:

POSITIVE GROUP INVOLVEMENT:

1. Conflict Resolution Completed on November 12, 1997.
2. Time and Money Management Completed on July 29, 1997.
3. Ethics and Values Completed on July 29, 1997
4. Personal Devotion Discipline Completed on April 27, 1998.
5. Career Development Completed on August 10, 1998.
6. Biblical Approaches to Recidivism Completed on May 24, 1999.
7. Certificate in Parenting Class.
8. Certificate in Anger Management.
9. Certificate in Victims Awareness.
10. Certificate in Alcoholic Anonymous.
11. Certificate in Family Ties 1 & 2 Completed on October 6, 2002.
12. Certificate of Completion of PRPP Classes 1 through 6 of the POSITIVE GROUP on December 6, 2002.

EDUCATION:

1. Certificate of Achievement August 10, 1992.
2. Certificate of Student of the Month June 1, 1992.
3. Certificate of Achievement June 3, 1993.
4. Certificate of Achievement October 28, 1993.
5. Certificate of Mitigation for Homeowners January 6, 2004.
6. Certificate of Excellence January 3, 1992.
7. Certificate of Completion July 8, 1992.
8. Certificate of Student of the Month November 5, 1992.
9. Certificate of Student of the Month May 1, 1993.
10. Certificate of Completion May 10, 1993.
11. Certificate of High School Diploma Completed on March 26, 1996.
12. Universal Life Church (Minister) Completed on May, 1996.
13. Certificate of Emergency Program Manager Completed on March 2003.
14. Certificate of Hazardous Materials for Medical Personal Completed on April 2003.

* * * CONTINUED on ATTACHMENT SHEET * * *

(Continued from EDUCATION):

15. Certificate of Leadership & Influence Completed on May 1, 2003.

VOCATION TRAINING:

1. Certificate of Recognition February 15, 1993.
2. Certificate of Auto Mechanics September 30, 1999.
3. Certificate of Auto Mechanics September 3, 2001.
4. Certificate in (P.I.A.) Furniture Assembler/Q.C. Inspector # 709.684-014 August 8. 2003.
5. Certificate in Advanced Warehouse Completed on August 11,
6. Certificate in Computer Literacy Completed on August 11, 1993.
7. Certificate in Fork life Operation Completed on August 11, 1993.
8. Certificate in Industrial Safety Completed on August 11, 1993.
9. Certificate in Basic Warehouse Completed on August 11, 1993.
10. Certificate in Basic Stockkeeping Completed on August 11, 1003.
11. Certificate in Automotive Technology Completed on April 14, 1995.
12. Certificate in Heating & Air Conditioning Completed on March 27, 1997.
13. Certificate in Automotive Technology Apprenticeship Completed on 2002.

///

///

///

///

///

///

///

///

///

///

///

///

# Certificate of Completion

Awarded to

**David Landcaster**

*FOR*

*COMPLETION OF 5,805 HOURS IN THE VOCATIONAL Auto Mechanics APPRENTICESHIP*
PROGRAM

**Presented by**
KASSON ADULT SCHOOL

September 3, 2001

*No* 0002

*SUPERVISOR OF VOCATIONAL NSTRUCTION*

*SUPERVISOR OF CORRECTIONAL EDUCATION PROGRAMS*

*VOCATIONAL INSTRUCTOR*

*APPRENTICESHIP COORDINATOR*





THIS CERTIFICATE HEREBY CONFIRMS

DAVID G. LANCASTER

has successfully completed
the ASE Refrigerant Recovery & Recycling
Review and Certification Program
This day of MARCH 27, 1997

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 MVAC

Certification Number

Ronald H. Weiner
President, ASE

This card certifies that

DAVID G. LANCASTER

has successfully completed the
ASE Refrigerant Recovery &
Recycling Review
Certification Program

03/27/1997 MVAC 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

DAVID G. LANCASTER
3120 REDWOOD AVE
STOCKTON, CA 95205

STATE OF CALIFORNIA
CDC 153-A (11/92)

DEPARTMENT OF CORRECTIONS

# Vocational Education

## CERTIFICATE OF ACHIEVEMENT

THIS IS TO CERTIFY THAT

**David Lancaster**

HAS DEMONSTRATED ACHIEVEMENT IN

**Automotive Mechanics**

**V12.01./V12.04./V12.06.**

**Engine Operation; Engine Operation Support Systems; Engine Types; Engine Classifications; Piston Engine Construction; Tires, Tubes, And Wheels; The Automotive Battery.**

SUPERVISOR OF VOCATIONAL INSTRUCTION

VOCATIONAL INSTRUCTOR

LOG # ______________

September 30,1999

DATE

STATE OF CALIFORNIA
CDC 153-A (11/92)

DEPARTMENT OF CORRECTIONS

# *Vocational Education*

## CERTIFICATE OF ACHIEVEMENT

THIS IS TO CERTIFY THAT

**David Lancaster**

HAS DEMONSTRATED ACHIEVEMENT IN

**Automotive Mechanics**

**V12.01**

**Orientation; Shop And/Or Site Safety; Tools And Equipment; Fundamentals of Engine Operation; Engine Measurements And Performance; Piston Engine Basics.**

SUPERVISOR OF VOCATIONAL INSTRUCTION

VOCATIONAL INSTRUCTOR

LOG # ____________

September 30,1999

DATE



*State of California*

# *Vocational Education*

Completion of Certification Unit

for

*Advanced Warehousing*

It is with great pleasure that we sign and present this completion certificate to you. Congratulations for achieving this commendable goal.

Issued to

*David Lancaster*

*08-11-93*

Date

Supervisor Vocational Instruction

Vocational Instructor

Log # 00931810



# Certificate of Achievement

## N.A Chaderjian School

This award of distinction is presented to

David Lancaster

for Superior Achievement
& Excellence of Performance in

Computer Literacy

This 11th day of August, 1993

Log# 00931810

Signed

MITSUBISHI
FORKLIFT TRUCKS

# Safety/Training Cours

This certifies that David Lancaster

has attended the Mitsubishi Forklift Safety/Training Course and has satisfactorily completed the requirements for the safe operation of our Forklift Trucks.

INSTRUCTOR

MANAGER

August 11, 1993
DATE

Log# 00931810

# 00931810

Safety/Training Course

...is certifies that David Lancaster
...s attended the Mitsubishi Forklift Safety/Training Course
...d has satisfactorily completed the requirements for the safe
...eration of our Forklift Trucks.

...NSTRUCTOR:
...ATE: 08-11-93

MANAGER



# Competency Certificate

This is to certify that

David Lancaster

Achieved the performance levels acknowledged
On the reverse side for the program of

Warehousing/Stockkeeping

And is therefore recognized

This 11th Day of August , 19 93

Instructor

Supervisor, Career Vocational Program

Log# 00931810



EMERGENCY MANAGEMENT INSTITUTE
Certificate of Achievement

*This Certificate of Achievement is to acknowledge that*

**DAVID G. LANCASTER**

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-394**
**Mitigation for Homeowners**

*Issued this 06th Day of January, 2004*
1.0 CEU

**Stephen G. Sharro**
*Director, Training Division*

UNITED STATES FIRE ADMINISTRATION

DETACH THIS STUB

Student Record: LANCASTER, DAVID ***-**-74

Successful Completion(s)

| | |
|---|---|
| IS-001 | Emergency Program Manager |
| IS-002 | Emergency Preparedness, USA |
| IS-240 | Leadership & Influence |
| IS-346 | Hazardous Materials for Medical Personnel |
| IS-394 | Mitigation for Homeowners |

****************************************Other Available Courses****************************************

| | |
|---|---|
| IS-003 | Radiological Emergency Management |
| IS-005 | Hazardous Materials - A Citizen's Orientation |
| IS-007 | A Citizen's Guide to Disaster Assistance |
| IS-008 | Building for the Earthquakes of Tomorrow |
| IS-010 | Animals in Disaster, Awareness and Preparedness |
| IS-011 | Animals in Disaster, Community Planning |
| IS-015 | Special Events Contingency Planning |
| IS-055 | Household Hazardous Materials |
| IS-100 | Introduction to the Incident Command System, |
| IS-111 | Livestock in Disaster . |
| IS-120 | An Orientation to Community Disaster Exercises |
| IS-139 | Exercise Design |
| IS-195 | Basic Incident Command System |
| IS-208 | State Disaster Management |
| IS-230 | Principles of Emergency Management |
| IS-235 | Emergency Planning |
| IS-241 | Decision Making & Problem Solving |
| IS-242 | Effective Communication |
| IS-244 | Developing and Managing Volunteers |
| IS-253 | Coordinating Environmental & Historic |
| IS-271 | Anticipating Hazardous Weather & Community Risk |
| IS-275 | Role of the Emergency Operations Center |
| IS-279 | Retrofitting Flood Prone Residential Structures |
| IS-288 | Role of Voluntary Agencies in Emergency Mgmt |
| IS-292 | Disaster Basics |
| IS-301 | Radiological Emergency Response |
| IS-317 | Introduction to Community Emergency Response Team |
| IS-324 | Community Hurricane Preparedness |
| IS-331 | Introduction to Radiological Emergency |
| IS-340 | Hazardous Materials Prevention |
| IS-362 | Multi-Hazard Emergency Planning for Schools |
| IS-386 | Introduction to Residential Coastal Construction |
| IS-393 | Introduction to Mitigation |
| IS-513 | The Professional in Emergency Management |
| IS-600 | Special Considerations for FEMA PA Projects |
| IS-630 | Introduction to the Public Assistance Process |
| IS-631 | Public Assistance Operation I |
| IS-632 | Intro to Debris Opers in FEMA's Public Assis. Prg |
| IS-650 | Building Partnerships in Tribal Communities |
| IS-700 | National Incident Management System |

# EMERGENCY MANAGEMENT INSTITUTE

## *Certificate of Achievement*

*This Certificate of Achievement is to acknowledge that*

**DAVID G. LANCASTER**

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-002**

**Emergency Preparedness, USA**

*Issued this 30th Day of August, 2004*

1.0 CEU

Stephen G. Sharro

*Director, Training Division*

UNITED STATES FIRE ADMINISTRATION

DETACH THIS STUB

Student Record: LANCASTER, DAVID ***-**-7463

Successful Completion(s)

| | |
|---|---|
| IS-001 | Emergency Program Manager |
| IS-002 | Emergency Preparedness, USA |
| IS-139 | Exercise Design |
| IS-240 | Leadership & Influence |
| IS-346 | Hazardous Materials for Medical Personnel |
| IS-394 | Mitigation for Homeowners |

*********************************************Other Available Courses*********************************************

| | | | |
|---|---|---|---|
| IS-003 | Radiological Emergency Management | IS-279 | Retrofitting Flood Prone Residential Structures |
| IS-005 | Hazardous Materials - A Citizen's Orientation | IS-288 | Role of Voluntary Agencies in Emergency Mgmt |
| IS-007 | A Citizen's Guide to Disaster Assistance | IS-292 | Disaster Basics |
| IS-008 | Building for the Earthquakes of Tomorrow | IS-301 | Radiological Emergency Response |
| IS-010 | Animals in Disaster, Awareness and Preparedness | IS-317 | Introduction to Community Emergency Response Team |
| IS-011 | Animals in Disaster, Community Planning | IS-324 | Community Hurricane Preparedness |
| IS-015 | Special Events Contingency Planning | IS-331 | Introduction to Radiological Emergency |
| IS-022 | Are You Ready? | IS-340 | Hazardous Materials Prevention |
| IS-055 | Household Hazardous Materials | IS-362 | Multi-Hazard Emergency Planning for Schools |
| IS-100 | Introduction to the Incident Command System | IS-386 | Introduction to Residential Coastal Construction |
| IS-111 | Livestock in Disaster | IS-393 | Introduction to Mitigation |
| IS-120 | An Orientation to Community Disaster Exercises | IS-513 | The Professional in Emergency Management |
| IS-195 | Basic Incident Command System | IS-600 | Special Considerations for FEMA PA Projects |
| IS-200 | Incident Command System, Basic | IS-630 | Introduction to the Public Assistance Process |
| IS-208 | State Disaster Management | IS-631 | Public Assistance Operation I |
| IS-230 | Principles of Emergency Management | IS-632 | Intro to Debris Opers in FEMA's Public Assis. Prg |
| IS-235 | Emergency Planning | IS-650 | Building Partnerships in Tribal Communities |
| IS-241 | Decision Making & Problem Solving | IS-700 | National Incident Management System |
| IS-242 | Effective Communication | | |
| IS-244 | Developing and Managing Volunteers | | |
| IS-253 | Coordinating Environmental & Historic | | |
| IS-271 | Anticipating Hazardous Weather & Community Risk | | |
| IS-275 | Role of the Emergency Operations Center | | |

EMERGENCY MANAGEMENT INSTITUTE

*Certificate of Achievement*

*This Certificate of Achievement is to acknowledge that*

**DAVID G. LANCASTER**

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-139**

**Exercise Design**

*Issued this 13th Day of September, 2004*

1.5 CEUs

Stephen G. [illegible]

*Director, Trai[illegible] on*



# EMERGENCY MANAGEMENT INSTITUTE

## *Certificate of Achievement*

*This Certificate of Achievement is to acknowledge that*

**DAVID G. LANCASTER**

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-001**

Emergency Program Manager
An Orientation to the Position

*Issued this 03rd Day of March, 2003*

1.0 CEU

Stephen G. Sharro
*Director, Training Division*

# EMERGENCY MANAGEMENT INSTITUTE

## *Certificate of Achievement*

*This Certificate of Achievement is to acknowledge that*

**DAVID G. LANCASTER**

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-346**
**Hazardous Materials for Medical Personnel**

*Issued this 04th Day of April, 2003*
1.0 CEU

Stephen G. Sharro
*Director, Training Division*

# EMERGENCY MANAGEMENT INSTITUTE

## *Certificate of Achievement*

*This Certificate of Achievement is to acknowledge that*

**DAVID G. LANCASTER**

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-240**
**Leadership & Influence**

*Issued this 01st Day of May, 2003*

0.9 CEU

Stephen G. Sharro
*Director, Training Division*

State of California
State Board of Education

# Diploma of Graduation

Be It Known That

David Gene Lancaster

*has satisfactorily completed a High School course of study established by the State Board of Education under the authority of the Education Code of California, and is hereby awarded this Diploma.*

GIVEN AT SACRAMENTO, CALIFORNIA, THIS 26th day of March

Nineteen hundred Ninety-Six

Delaine Eastin

Secretary and Executive Officer, State Board of Education



Universal Life Church

MINISTER

This is to certify that the bearer hereof

REV. DAVID G. LANCASTER

has been ordained this day MAY, 30 1996

Bishop KIRBY J. HENSLEY, President



Certificate of Achievement
N.A. Chaderjian School
This award of distinction is presented to
David Gene Lancaster
for Superior Achievement
& Excellence of Performance in
TYPING
This 29 Day of November, 1994
Instructor



# Academic Student of the Month

N.A. Chaderjian School

This award of distinction is presented to

David Lancaster

for Superior Achievement

& Excellence of Performance in

Life Science

This 1st Day of June, 19 93

Supervisor Academics Instructor

Instructor

**N. A. CHADERJIAN SCHOOL**

# CERTIFICATE OF HONORABLE MENTION

*PRESENTED TO*

## DAVID LANDCASTER

*FOR YOUR PARTICIPATION IN OUR NATIONAL VICTIM'S WEEK POEM CONTEST*

*Presented this 30th day of **April** 1993*

*SUPERINTENDENT*

# Certificate of Achievement

This is to certify that:

David Lancaster

Achieved the performance levels required to meet the goals described for the program of

## Parenting Class

and is therefore recognized

This: 15th Day of [illegible] 1994

[signature]
Instructor

[signature]
Administrator



# CERTIFICATE OF APPRECIATION

*is presented to*

# DAVID LANCASTER

**For your participation and dedication in the A. A. "Bottle Stoppers" program at Deuel Vocational Institution**
**"Keep coming back it works"**

*Presented on this 18th day of February 1998*

*By*

*The Bottle Stoppers at D.V.I.*

Angel Alcantara
A.A. Staff Sponsor

Bill Muller
Co-Sponsor

Jay Martin
Group Chairman

Kelly Craff
Co-Chairman

Nelson Reyes
Secretary

Kerry McArthur
Co-Secretary

Jose Ruvalcaba
Treasurer

Jose Agredano
Sergeant-at-Arms

Jose [illegible]
Spanish Sergeant-at-Arms

# *Certificate of Completion*

*Awarded to*

## *David Lancaster*

*For completing the Parolee Recividism Prevention Program which includes theses classes: Anger Management, Self Confrontation Career Development, Conflict Resolution, Ethics and Values, Biblical Approaches to Recidivism, and Time and Money Management,*

December 2002

Rev. Ruff
Protestant Chaplain



# Certificate of Proficiency

*This is to certify that*

## *David Lancaster*

*Has achieved proficiency in the following occupational category:*

Industry: **General Fabrication**

Institution: **Deuel Vocation Institution**
CDC #: E-96955

| Job Title/Specialty | D.O.T. No.* | No. of Hours |
|---|---|---|
| Furniture Assembler/Q.C. Inspector | 709.684-014 | 2,550 + |

* US Department of Labor, Dictionary of Occupational Titles

Supervisor 8/21/03 Date

General Manager, Prison Industry Authority



# Certificate of Achievement

## N.A Chaderjian School

This award of distinction is presented to

David Lancaster

for Superior Achievement
& Excellence of Performance in

Economics - 5 units "B"

This 28th day of October, 1993

Signed



# Certificate of Achievement

## N.A Chaderjian School

This award of distinction is presented to

David Landcaster

for Superior Achievement

& Excellence of Performance in

Completion of English Credits

This 3rd day of June, 1993

Christine Hanson

Signed

# N. A. Chaderjian School

## Certificate of Completion

Presented to

David Lancaster

for

Life Science (15 Credits)

Presented this 10th day of May, 1993

Supervisor of Education

Jim Brennan
Teacher

# STUDENT OF THE MONTH

Lancaster, David

is the STUDENT OF THE MONTH in Classroom #8, 4th Period

[signature] Supervisor Academic Instruction

Jim Brennan Instructor

May 1, 1993



VOCATIONAL EDUCATION
Skills
For a Lifetime

# Certificate of Recognition

*This certificate is awarded to*

DAVID LANCASTER

*in recognition of*

*Outstanding Service to Vocational Education*

*Given this* 15th *day of* FEBRUARY *19* 93

CAROL BONE
Presented by

Signature



# N. A. Chaderjian School

## Student of the Month

David Lancaster

Was the best student in the areas of Behavior and Academics in 3rd Period, for the month of October, 1992

Presented this 5th day of November, 1992

English

Supervisor of Academics

Rm 4



# Certificate of Achievement

N.A Chaderjian School

This award of distinction is presented to

______________________________

for Superior Achievement

& Excellence of Performance in

______________________________

This ________ day of ____________, 199___

____________________

Signed



This certifies that

DAVID LANCASTER

has successfully completed

AMERICAN GOVERNMENT (5 units)

and is awarded this certificate in recognition thereof.

Presented this 8 day of JULY 19 92

Thomas Stamsr

INSTRUCTOR

IF410 © COPYRIGHT 1987, INSTRUCTIONAL FAIR, INC., GRAND RAPIDS, MI

# Certificate of Excellence

THIS HONOR IS BESTOWED UPON

David Lancaster

for Excellence in

Math Concepts - Meaning of Fractions

Awarded at N. A. Chaderjian School

this 3rd day of January 1992

Camille Lagorla

Academic Teacher

VA221 ©COPYRIGHT, 1988, HAYES SCHOOL PUBLISHING CO., INC., WILKINSBURG, PA

# Certificate of Completion

for

## Family Ties 1 and 2

This document certifies that

**David Lancaster**

has satisfactorily completed two classes - (16 weeks) - Marriage Enrichment and Personal Growth and Parenting.

October 2002

Instructor

Instructor

Protestant Chapel
Deuel Vocational Institution

ate of California
epartment of Corrections

# Memorandum

california prison industry authority

ate: October 10, 2003

o: Whom it May Concern

M. W. Brown

om: Prison Industry Authority • Deuel Vocational Institution, Tracy, CA 95376

ubject: Job Commendation/Future Refferal

Inamte Lancaster, E-96955, has worked under my direct supervision for two years in the Prison Industry Assembly Shop (P.I.A.) Tracy, Ca. In the two years I have observed him I have found him to be a very diligent worker, and he rose rapidly in this shop to become the floor leadman. He set a good example for the men during his tenure in this position. Inmate Lancaster was responsible for inventory stocking, job assignments for the the other inmate workers in the shop. Mr. Lancaster provided help at every level of this shop and he has been greatly missed since the Z-Dorm riot that say so many PIA workers removed from their jobs. I have tried to get Mr. Lancaster back in his job, as he was worth any other two workers. It has been decided by the Security Admninistration to reassign and transfer all the removed PIA workers.

I recommend that wherever Mr. Lancaster is placed in the future that he would be placed in a PIA job position. I cannot commend this particular worker enough, and he directed the best group of workers I have ever supervised in my 18 years as a PIA Supervisor.

William M. Brown

W.M. Brown
PIA Assembly Shop, Tracy
(209) 835-4141 (Ext. 5843)

PVI-201 (10/93) 1635

EXHIBIT G

01-240

STATE OF CALIFORNIA

# RULES VIOLATION REPORT

DEPARTMENT OF CORRECTI

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO | LOG NO |
|---|---|---|---|---|---|
| E-96955 | LANCASTER | | DVI | L-337 | 03-08-1 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3005 (c) FORCE & VIOLENCE | MUTUAL COMBAT | MAIN YARD | 8-24-03 | 1110 |

CIRCUMSTANCES

On Sunday, August 24, 2003, at approximately 1110 hours, Inmates SILVA, E-17874, Y-466, and LANCASTER, E-96955, L- were involved in a mutual combat on the mainline yard. While providing yard coverage, during the 1100 hours mainline yard relea observed Inmates SILVA and LANCASTER attempting to strike each other in the head and facial areas with closed fists. I noti Tower #13 via institutional radio to put the yard down and responded to the combating Inmates. As I approached the altercation Inm LANCASTER'S back was against the Tower #13 south fence, in what appeared to me as a defensive posture. SILVA was attemp to punch LANCASTER several times; LANCASTER was attempting to counter punch. As I arrived at the scene I ordered combatants to cease their actions and get down on the ground. LANCASTER immediately complied by moving approximately five feet from SILVA and lay down. SILVA ceased his actions, but didn't immediately lay down. I again ordered SILVA to lay down then complied. I then placed SILVA in handcuffs. Responding staff arrived, and at the direction of supervisory staff, escorted combatants off the yard for medical evaluation and treatment. The yard was then returned to normal program. Inmate LANCASTE not a patient/participant in the Mental Health Services Delivery System.

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| T. S. HARPER, CORRECTIONAL OFFICER | | Rec #1, 2nd Watch | |

REVIEWING SUPERVISOR'S SIGNATURE: [signature] DATE: 9-4-03
☐ INMATE SEGREGATED PENDING HEARING DATE ____ LOC. ____

CLASSIFIED: ☐ ADMINISTRATIVE ☑ SERIOUS — OFFENSE DIVISION: — DATE: 9/11/03 — CLASSIFIED BY (Typed Name and Signature): Lt. L. Olivas [signature] — HEARING REFERRED TO: ☐ HO ☑ SHO ☐ SC ☐

COPIES GIVEN INMATE BEFORE HEARING

| | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|
| ☑ CDC 115 | [signature] | 9/11/03 | 1100 | |

| | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|---|---|---|
| ☐ INCIDENT REPORT LOG NUMBER | | | | | | |

HEARING

This hearing commenced on 10-12-03 at approximately 1310 hours. Inmate LANCASTER, E-96955, was present stated he is in good health. He acknowledges receipt of all non-confidential reports relied upon in this hearing, at least 24 hours to this hearing. Inmate LANCASTER indicated he is ready and wishes to proceed with the hearing. The CCCMS list was revi and Inmate LANCASTER'S name was not inscribed on the list. Inmate LANCASTER was asked if he was taking psychotr medication and he stated he was not. The behavior resulting in this Rules Violation Report was not bizarre, unusua uncharacteristic, therefore did not warrant the completion of a CDC-115MH. This Senior Hearing Officer notes that DVI was und State of Emergency outlined in Memorandum signed by Claud Finn, Warden, which had an effective date of 9-13-03, suspending t constraints pursuant to CCR #3320 (a)(b). A copy of this memorandum was provided to Inmate LANCASTER, on 10-05 therefore, time constraints have been met in this matter. Inmate LANCASTER was not assigned a Staff Assistant per Director's 3315 (d)(2), as he speaks English, he is not illiterate, the issues are not complex, nor does the Inmate require a confidential relation to prepare a defense. Inmate LANCASTER waived the assignment of an Investigative Employee. Inmate LANCASTER did req witnesses present. The charge was read to Inmate LANCASTER, he pled *NOT GUILTY*. (Continued on Part C)

***DISPOSITION:*** *FOUND GUILTY*. Assessed 61 days Forfeiture of Credit, consistent with DR #3323 ( f ) ( 9 ). Inm LANCASTER was Counseled and Reprimanded about future program expectations. Inmate LANCASTER was advised that he receive a copy of the completed CDC-115 upon final audit by the Chief Disciplinary Officer. He was also advised of his right to the procedure for appeal of this action. Inmate LANCASTER was advised of the requirements for credit restoration.

REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA

| ACTION BY (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| C. Flaccres Correctional Lieutenant | [signature] | 10-12-03 | 13 |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| [signature] | 10/ /03 | | |

| | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|
| ☑ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | [signature] | | |

CDC 115 (7/88)

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

PAGE 2 OF 2

## RULES VIOLATION REPORT - PART C

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| E-96955 | LANCASTER | 03-08-102-P | D.V.I. | 10-12-03 |

☐ SUPPLEMENTAL ☐ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☒ HEARING ☐ IE REPORT ☐ OTHER

[CONTINUATION OF AIV., PAGE 1]

Inmate LANCASTER stated. "We were both walking and SILVA put his arms up. the next thing I know, he had me against the fence. I was just defending myself."

Inmate LANCASTER requested Correctional Officer T. Harper, Reporting Employee, as a witness.
The Senior Hearing\Officer asked Officer Harper the following questions:

(1) Q. What did you observe during the incident?

A. I observed Inmate SILVA attempting to strike Inmate LANCASTER over towards Tower #13. I responded to the area and it appeared that LANCASTER had his hands up, attempting to block SILVA'S punches, although I did observe LANCASTER attempt to strike SILVA.

Reporting Employee was not requested and was not present for the hearing.

FINDINGS: Inmate LANCASTER is found GUILTY of violating DR #3005 (c), by the specific act of, "Mutual Combat." The preponderance of evidence substantiates the charge. The evidence and documents relied upon were:

(1.) Contents of the CDC-115, Log# 03-08-102-P, authored by Correctional Officer T. Harper, that indicates Inmate LANCASTER was involved in a mutual combat with Inmate SILVA, E-17874.

(2.) Correctional Officer T. Harper's testimony at the hearing that he observed Inmate LANCASTER striking Inmate SILVA; resulting in mutual combat.

C. Flaceres, Correctional Lieutenant

| | SIGNATURE OF WRITER | | DATE SIGNED |
|---|---|---|---|
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED 10-18-03 | TIME SIGNED 0735 |

CDC 115-C (5/95)

OSP 99

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# INMATE/PAROLEE APPEAL FORM

CDC 602 (12/87)

Location: Institution/Parole Region 1. DVI 2.

Log No. 1. 03-02587 2.

Category 1

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| Lancaster, DAVID | E96955 | PIA D-120 | D-120 (crossed out) |

A. Describe Problem: This is an Informal ByPass per. CCR, tit. 15, § 3084.5 (b)(2)(4). I am dissatisfied with the finding of my 115 hearing, on 10/12/03. (Attachment) Lt. Placeres informed me he had already made the finding to be guilty. Regardless of the witness I had called That is a violation of Law [Fair hearing] (XIVth Amend., U.S. Const., Cal. Pen. Code, §§ 2651, 5058; also see Wolff v. McDonnell, (1974) 418 U.S. 539.) Lt. Placeres did not into account I have a Const. Right to defend myself. (Cal. Pen. Code, § 192). I have a right not to have a inmate have control over me. (CCR, tit. 15, § 3022, XIVth Amend.; U.S. Const. With that in mind Lt Placeres should have found me guilty of administrative 115.

If you need more space, attach one additional sheet.

B. Action Requested: To have the 115 droped to administrative 115; To have the 61 days credit be droped to match the administrative 115; To have the Serious 115 be taking out of my C-File.

Copy retained.

Inmate/Parolee Signature: [signature] Date Submitted: 10/23/03

C. INFORMAL LEVEL (Date Received: ____________)

Staff Response:

BYPASS

Staff Signature: ____________ Date Returned to Inmate: ____________

D. FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

APPEALS BRANCH

Signature: ____________ Date Submitted: ____________

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim.

CDC Appeal Number:

RECEIVED

OCT 28 2003

STATE OF CALIFORNIA

DEPARTMENT OF CORRECT

# SERIOUS RULES VIOLATION R[illegible]

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| E-96955 | LANCASTER | 3005 (c) | 3-24-03 | DVI | 03-03-102-P |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☒ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ I DO NOT REQUEST my hearing be postponed pending outcome of referral for prosecution. | N/A | |
| ☐ I REQUEST my hearing be postponed pending outcome of referral for prosecution. | | |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|
| | |

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ I REVOKE my request for postponement. | | |

## STAFF ASSISTANT

| STAFF ASSISTANT | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| ☐ REQUESTED | ☐ WAIVED BY INMATE | | |
| ☐ ASSIGNED | DATE | NAME OF STAFF | |
| ☒ NOT ASSIGNED | REASON | [illegible] 3315 (d)(2) | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | | INMATE'S SIGNATURE | DATE |
|---|---|---|---|
| ☐ REQUESTED | ☒ WAIVED BY INMATE | [signature] | 9/4/[illegible] |
| ☐ ASSIGNED | DATE | NAME OF STAFF | |
| ☒ NOT ASSIGNED | REASON | | |

EVIDENCE/INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☒ REPORTING EMPLOYEE ☐ STAFF ASSISTANT ☐ INVESTIGATIVE EMPLOYEE ☐ OTHER ____ ☐ NON

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRA |
|---|---|---|---|---|---|
| N/A | ☐ | ☐ | N/A | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant informa documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

130
3D

| INVESTIGATOR'S SIGNATURE | DATE |
|---|---|
| | |

| | BY: (STAFF'S SIGNATURE) | TIME | DATE |
|---|---|---|---|
| ☒ COPY OF CDC 115-A GIVEN INMATE | [signature] | 1800 | 9/4/[illegible] |

CDC 115-A (7/88)

OSP

— If additional space is required use supplemental pages —

*Attachment SHEET "H" *

(Continued from Section H):

I have a constitutional Right to defend myself from other I/m's. (XIVth Amend, U.S. Const., Bill of Rights; Cal. Pen. Code, §§ 192 & 2600; Wolf v. McDonnell, (1974) 418 U.S. 539.) The SHO did not take that into account when he heard the CDC 115 in violation of Law. (XIVth Amend., U.S. Const., Bill of Rights.)

DEUEL VOCATIONAL INSTITUTION
Tracy, California

SUPPLEMENTAL PAGE

**TO:** Inmate Lancaster
E-96955

**RE:** Appeal Log No.: DVI-X-03-02587
Second Level Response

**APPEAL DECISION:** Denied.

**INMATE INTERVIEWED:** Interviewed by Correctional Counselor II R. Russell.

**APPEAL ISSUE: Disciplinary**

**DESCRIPTION OF PROBLEM:** You were charged with and found guilty of violating California Code of Regulations (CCR) section 3005(c) for the specific act of Mutual Combat. You allege the Senior Hearing Officer (SHO) did not take into account your constitutional right to prevent another inmate from having control over you. You believe the SHO should have found you guilty of an administrative rules violation.

**APPEAL RESPONSE:** Correctional Counselor II R. Russell has reviewed the issues in your appeal, which included examination of your submitted documents. Through your submission of this appeal you are requesting:

1) "To have the 115 droped to administrative 115; to have the 61 days credit be droped to match the administrative 115; to have the serious 115 be taking out of my c-file."

Your request is denied. A review of the Rules Violation Report (RVR) log #03-08-102-P reveals that all procedural and due process requirements were met. The preponderance of evidence relied upon by the SHO substantiates the charge. Per California Code of Regulations (CCR) section 3323, a physical altercation between two inmates is considered mutual combat when there is no serious injury and an aggressor cannot be identified. The Reporting Employee (RE) observed you and the other inmate striking each other mutually. Therefore, you were appropriately charged, found guilty, and assessed 61 days forfeiture of credit.

Your appeal is Denied at the second level. If you are dissatisfied with this decision, you may appeal to the Director's Level, using Section "H" of your CDC Form 602.

[signature] 11/6/03

MARY LOU DUNLAP
Chief Deputy Warden

Date

To: Department of Corrections
Inmate Appeal Branch
P.O. Box 942883
Sacramento, CA, 94283-0001

From: David Lancaster
P.O. Box 20
Tracy, CA. 95378
CDC ID#: E-96955/D-120

1-11-04

RE: Institution Appeal Log# DVI-03-2587 Disciplinary

Dear Appeal Branch,

I am unable to obtain a copy of the State of Emergency declaration form.

Would you please answer my 602 without the State of Emergency declaration form, plus gr[illegible] this 602.

[signature]
David Lancaster
E-96955/D-120

State of California

Department of Corrections

# Memorandum

Date : September 17, 2003

To : ALL DVI STAFF AND INMATES

From : **Deuel Vocational Institution, Tracy, CA 95378**

Subject : **NOTIFICATION CONCERNING STATE OF EMERGENCY**

On September 12, 2003, Deuel Vocational Institution (DVI) experienced a large scale disturbance involving numerous inmates. This incident has had an adverse effect on the normal operation of the institution.

Based on the above-mentioned information, effective September 13, 2003, I have declared a state of emergency at DVI. I am, therefore, authorizing the suspension of all time constraints relative to the CDC 115 disciplinary process and the CDC 602 appeal process. This suspension will remain in effect for all DVI units until further notice.

CLAUDE E. FINN
Warden

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: MAY 0 3 2004

In re: Lancaster, E-96955
California State Prison, Solano
P.O. Box 4000
Vacaville, CA 95696-4000

IAB Case No.: 0308124 Local Log No.: DVI 03-02587

This matter was reviewed on behalf of the Director of the California Department of Corrections (CDC) by Appeals Examiner Rick Manuel, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

I APPELLANT'S ARGUMENT: The appellant is submitting this appeal relative to CDC Form 115, Rules Violation Report (RVR), Log #03-08-102-P, dated August 24, 2003, for Mutual Combat. It is the appellant's position that he was unjustly found guilty of the RVR charge. The appellant contends that the Senior Hearing Officer (SHO) failed to take into consideration his constitutional right to prevent another inmate from having control over him. The appellant contends that the SHO should have reduced the RVR to an administrative offense. The appellant requests on appeal that the RVR be reduced to an administrative offense.

II SECOND LEVEL'S DECISION: The reviewer found that the appellant was appropriately found guilty of the RVR charge. The reviewer notes that the Reporting Employee (RE) clearly documents that both the appellant and Inmate Silva, E-17874, were involved in mutual combat by striking one another in the head and facial areas with closed fists. Even though the RE documents that it appears the appellant was standing in a defensive position and was counter punching Inmate Silva's punches, there is no evidence that clearly establishes the aggressor of this incident. Based upon the aforementioned information, the reviewer concludes the appellant was appropriately charged and found guilty. The appellant's request was denied at the Second Level of Review (SLR).

III DIRECTOR'S LEVEL DECISION: Appeal is denied.

A. FINDINGS: The documentation and arguments presented are persuasive that the appellant has failed to support his appeal issue with sufficient evidence or facts to warrant a modification of the SLR. There is no information that supports the appellant's contention that he was the victim in this incident. The RE clearly documents that he observed both the appellant and Inmate Silva striking one another in the head and facial areas with their fists. The appeals examiner affirms the appellant was afforded all procedural due process and concurs with the SLR decision. Relief at the Director's Level of Review is not warranted.

B. BASIS FOR THE DECISION:
California Code of Regulations, Title 15, Section: 3001, 3005, 3286, 3315, 3320, 3323

C. ORDER: No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDC.

T. Surges

N. GRANNIS, Chief
Inmate Appeals Branch

cc: Warden, SOL
Appeals Coordinator, SOL
Appeals Coordinator, DVI

EXHIBIT H

STATE OF CALIFORNIA—YOUTH AND ADULT CORRECTIONAL AGENCY

ARNOLD SCHWARZENEGGER, Gover

DEPARTMENT OF CORRECTIONS
Parole and Community Services Division
P.O. Box 942883
Sacramento, CA 94283-0001

This is in response to your recent letter requesting information concerning parole programs that are available to you upon your release. I commend you for taking the initiative to obtain this information.

The fact that you have no place to live or work does not have a bearing on your release to parole. To assist parolees with their rehabilitation while on parole, the Parole and Community Services Division (P&CSD) has developed and implemented numerous community-based programs. These include employment assistance services, computerized learning centers, residential facilities that provide multiple services to homeless parolees, and substance abuse treatment programs.

Currently, The P&CSD administers three employment programs, which are located throughout the State. One of these provides employment assistance services through State Employment Development Department job specialists, who are located within selected parole offices. Another program, the Offender Employment Continuum, helps parolees become self-sustaining by providing them with referrals to educational programs, vocational training and prospective employers. Additionally, the OEC works closely with the Prison Industry Authority (PIA) to assist parolees who have participated in PIA programs to find meaningful employment. The Parole Employment Program provides employment services such as workshops and job placement assistance to parolees through community providers.

In addition to the employment programs, there are the Computerized Literacy Learning Centers (CLLC) where a parolee can advance from early education through 12th grade and/or obtain a General Education Development Certificate. CLLCs are located within selected parole units throughout the State.

P&CSD also provides services to homeless parolees through Residential Multi-Service Centers (RMSC) which are located in Bakersfield, Fresno, Los Angeles, and Stockton. This community-based program provides lodging, meals, individual and group counseling, substance abuse counseling, parenting skills training, money management, life skills training and medical referrals. Assistance is also provided in obtaining Social Security cards and Department of Motor Vehicles identification. Other

services include job search and job retention training, and assistance in finding and obtaining employment. During transition planning, staff provides program participants with assistance in locating permanent housing in the community.

For parolees who have a history of substance abuse, the P&CSD operates several substance abuse treatment programs. These are located throughout the State and include the Substance Abuse Treatment and Recovery Program and the Parolee Services Network.

Programs and services are free of charge to all parolees. However, to access them, parolees must coordinate their enrollment through their assigned parole agent. After you have been assigned a parole agent, I encourage you to contact him or her for assistance in locating specific resources that may be available to you in your community.

I am enclosing a copy of the Parolee Information Handbook. The handbook identifies, to a limited degree, local service agencies and qualifying factors. It also outlines typical benefits such as clothing, housing, financial assistance and bonding for employment, which some parolees may or may not be eligible for.

When completing your pre-parole plans, Release Program Study (CDC Form 611), with your assigned correctional counselor, you should discuss any parole issues you may have including changes in your county and out-of-state parole. I also recommend that you request, through your correctional counselor, participation in the institution's Pre-release Program.

I hope you find this information helpful.

Sincerely,

DL LaMotta

D. L. LAMOTTA
Chief, Program Support Unit
Parole and Community Services Division

Enclosure

cc: Correctional Counselor

EXHIBIT I

PSYCHOLOGICAL REPORT TO THE BOARD OF PRISON TERMS
JULY, 1998, LIFER CALENDAR
DEUEL VOCATIONAL INSTITUTION

This is the first report to the Board of Prison Terms on 28-year-old, first-termer, David Lancaster, who is serving an 18-years-to-life term for second degree murder. He shot another young man in the park after being challenged to settle a disagreement. On 07/30/91, he was housed in the California Youth Authority, pending his 25th birthday. He entered CDC on 04/28/95. This psychological evaluation is based upon a review of the central file and medical record and a clinical interview on 03/30/98.

BACKGROUND INFORMATION: Mr. Lancaster's parents divorced when he was two, at which time he lived with his mother. He, his older brother and sister visited their father on weekends. His mother remarried twice and his father remarried once.

Subject, who is deaf in his right ear, went to several different schools because "each school didn't know how to adapt to my special needs." He said that he didn't have behavior problems in school, but the teachers didn't like because he was partially deaf. He was in special education for math, reading and science. He dropped out of school in the 11th grade because he wanted to work. He reported that he was attending the "Right Track" program and working toward his GED before being incarcerated.

Lancaster's first job out of school was driving a forklift in a lumber yard for six months. After that, he worked for another six months as a forklift driver at Toys' R Us. He then worked at Pacific Railroad for three to five months loading box cars by hand. When he was arrested, he was working at Tri Valley Growers which is where his parents were also employed.

Subject denies all drug use and describes himself as a social drinker. It must be mentioned that his instant offense involved the abuse of alcohol. Subject's juvenile history includes convictions for Vehicle Code violations. The instant offense is his first adult felony conviction.

Lancaster says that on the day of the crime, he began drinking beer at a friend's house. While he was sitting on the porch with the friend, two girls and a young man walked by. Subject said that he "commented on one of the girl's butts" and she responded, "I know I have a cute butt and I'm going to get my brother whose going to beat your ass." Subject then answered, "Well, go get your brother and come back and beat my ass." At that point, the young man said to the Subject, "I'll beat your ass right now" to which the Subject retorted, "Don't talk about it. Do it." When the young man suggested that they settle their differences in the local park, the Subject agreed. Lancaster stated to this Evaluator, "That sounded like an invitation to a fight." He admitted that by that time, he was under the influence of alcohol and "my mouth overran my brain."

Subject stated he went to the park with the expectation of confronting the young man and merely having a fist fight. However, when he arrived at the park, the young man was there with several "home boys," three of whom had weapons. When they ran toward him, the Subject said that he

COPY SENT TO INMATE 6/2/98 [handwritten initials]

pulled out a gun from his pocket which he had bought the day before and had forgotten about. When everyone was about 25-feet in front of him, he said he fired three shots toward the ground and the crowd scattered. He stated that as he walked back toward his friend's house, he saw the victim run away with the others. He said at the time of the incident, he was not aware that anyone had been hit and that it was never his intention to shoot anyone.

Lancaster described the instant offense as a tragic event which took the life of a 16-year-old victim, and he feels very badly about what happened. He said, "You can't change the past but you can change the future. Anger doesn't solve nothing."

**PROGRESS IN PRISON:** Inmate Lancaster has been working in the automotive shop since 07/03/96, learning engine repair, rear-end work, front alignment, minor and major tuneups and transmission overhaul of vehicles. He signed apprenticeship papers at the beginning of 1998.

Subject has been attending Alcoholic Anonymous for about a year. He participates in Parole Recidivism Prevention Program classes and has finished four of them. He received his high school diploma on 03/26/96. He says that he reads the Bible one-hour per day.

**MENTAL STATUS EXAMINATION:** Lancaster was well-groomed, made good eye contact and spoke clearly. He was fully oriented, alert and cooperative. His thought processes were clear and there were no signs of an underlying psychiatric disorder. His judgment and insight are fair to good.

**DIAGNOSTIC IMPRESSIONS:** As per DSM IV, the following diagnostic impressions seem appropriate for this Inmate:

| | | |
|---|---|---|
| AXIS I | 305.00 | Alcohol Abuse, by history and in institutional remission. |
| | 371.01 | Adult Antisocial Behavior (not a mental disorder but a focus of clinical attention at the time of the instant offense). |
| AXIS II | | No diagnosis or condition. |
| AXIS III | | Asthma and food allergies. |
| AXIS IV | | Major Stressor: incarceration. |
| AXIS V | | Global Assessment of Functioning (GAF = 81, indicating that Subject is functioning well in all areas). |

**CONCLUSION:** Inmate Lancaster is programming well and benefiting from the resources that are available to him at DVI. Both educationally and vocationally, he has shown that he is a motivated and capable individual. He appears to be genuinely remorseful about his crime.

Although Subject admits that alcohol contributed to his crime and he now attends AA, it is unclear whether he realizes that he was more than just a social drinker. Also, his contention that he didn't know the gun was in his pocket. When he went to the park to confront the victim, is not at all convincing. There appears to be some denial on his part regarding this.

Lancaster's diagnoses are considered to be directly related to the committing offense. Violence potential is now believed to be below average for the prison population.

**RECOMMENDATION:** Mr. Lancaster should continue his present positive programming. In order to continue working on his personal growth, it is recommended that he use self-exploration to go beyond the denial regarding his crime and to examine the poor choices and impulsive behavior that contributed to it. In this way, he will have the necessary tools to maintain the strives he has gained so far and will have the emotional resources to continue in his development.

Lynda Sussman, PhD
Lynda Sussman, Ph. D.
Staff Psychologist

R. Kotila, Ph. D
Noted:
Roger Kotila, Ph. D.
Staff Psychologist

EXHIBIT J

DEUEL VOCATIONAL INSTITUTION
Life-Term Inmate Evaluation for the Board of Prison Terms
Mental Health Evaluation
(Revised 1998)
February 2002, Lifer Calendar

Psychosocial Assessment

COPY SENT TO INMATE 12/24/01

I. IDENTIFYING INFORMATION:

| | |
|---|---|
| Name: | Lancaster, David |
| CDC: | E-96955 |
| DOB: | 06/26/70 |
| Marital Status: | Single |
| Ethnicity: | Caucasian |
| Gender: | Male |
| Religious Preference: | Not specified other than Christian. |
| Nicknames or Aliases: | None |
| Tattoos: | A Christian cross on his left arm. |

This report is based on a review of the inmate's Central File, Medical/ Psychiatric Record and an assessment interview on 12/03/01. Inmate Lancaster was informed that the interview was not confidential and would serve as the basis for a report to the Board of Prison Terms. Richard J. Obrochta, Ph.D., Supervising Psychologist observed and also participated in some parts of the psychological evaluation.

II. DEVELOPMENTAL HISTORY: Subject indicates he was born deaf in his right ear due to nerve development problems. He says a hearing aid cannot help this hearing deficiency. He has received speech therapy.

III. EDUCATION: The Subject is proud of the fact that he is the first member of his family to complete high school, getting his GED. His education level since he has been in prison, has gone from 3.3 Grade Point Level (GPL) to 10.6 GPL. This occurred in the year 2001.

The Subject attended several different schools because "each school did not know how to adapt to my special hearing needs." He said that he didn't have behavioral problems in school. The teacher didn't like him because he was partially deaf. He was in special education for mathematics, reading and science. He dropped out of school in the eleventh grade because he wanted to work.

He remembers playing in some sports, like soccer. He had some friends, but there didn't seem to be any close ties or relationships with these friends.

IV. FAMILY HISTORY: The Subject is the youngest of three children, having an older sister, Tina who is 41-years-old and a brother, Walter, who is 39. He is not in contact with either of his siblings, but learns about them through his mother. His brother Walter, has been incarcerated for burglary and has done time in a state prison.

From: David Lancaster
P.O. Box 0600
Tracy, CA. 95378-0600
CDC ID#: E-96955

To: John Marlett, PH.D., LCSW
Psychiatric Social Worker

January 6, 2002

**RE: Incorrect fact and comments was made on Life-Term Inmate Evaluation for the Board of Prison Terms Mental Health Evaluation:**

---

Dear John Marlett, Ph.D.:

The mental health evaluation is will formed. However, some of the fact and comments made in this Mental Health Evaluation are incorrect. The fact and comments are mark in yellow high light. I would like to have this mistakes corrected.

I would like to have this mistakes corrected before I go in front of the Board of Prison Terms hearing in February 6, 2002. The mistakes are as follows:

On page 1, I did not state or said I didn't have any close ties or relationship with my friends. I stated I didn't have one particular best friends. Also, I did not state or said I wasn't in contact with either of my siblings. I stated I writ to both of my siblings, and commented I call them both once a month or ever two (2) months.

On page 2, I did not claim I only had sex with one female who years later died. I stated I had sex with the female who years later died. Also, I did not stated who's or who it was the hypodemic needle is. I stated did not know who's it was. Furthermore, the CDC-115 is 1996 is one one CDC-115. Failure to take a urine test and possession of a hypodemic needle is one CDC-115 not two (2).

On page 3, The only thing was hidden in the attic was the gun. My clothing was not hidden in the attic.

On page 4, Larry Strickland and David Strickland are not my cousin's. So, I wasn't at my cousin's house. Larry Strickland and David Strickland was my friends and they are cousin's.

On page 5, The fact of the total 115's are not four. They are three (3). Two (2) 115's were that YA; one (1) that DVI in 1996.

Thank you for your attention in this matter.

Date: January 6, 2002

[signature]
David Lancaster
CDC ID#: E-96955/D-337

cc. one copy retained.

Mr. Lancaster's parents divorced when he was two, at which time he lived with his mother. He, his older brother and sister visited their father on weekends. At the time of the offense, the Subject was living between the homes of his mother and stepfather and father and stepmother. He has an extended family that lives in Ohio. These are his grandparents, aunts and uncles.

He states that his mother married a second time, when he was eight years old and the second husband died. She then married a third time when he was fifteen years old. The father married a second time when the Subject was about 20 years old.

The Subject has fond memories of fishing and enjoying the outdoors with his father. He stated he spent a lot of time with his father. He also said it was his father who introduced him to drinking beer.

V. **PSYCHOSEXUAL DEVELOPMENT/SEXUAL ORIENTATION:** The Subject reached puberty early, at about age 11-12. Sexual relationships were non-existent until he was about age 18. He claims he only had sex with one female who years later, died. He doesn't recall the cause. He defines his sexual orientation as heterosexual. There are no apparent sexual disorders or dysfunctions. He has no history of high-risk behavior or sexual aggression or fantasies.

VI. **MARITAL HISTORY:** The Subject states he has never been married. He states that he has never fathered any children.

VII. **MILITARY HISTORY:** None.

VIII. **EMPLOYMENT/INCOME HISTORY:** The Subject says he always had a job and usually spent his money on candy and video games. He talks about working as a forklift driver in a warehouse. Other employment included gardening, landscaping, roofing and cement work. Later he got a job through a "temp" employment agency, working for an overhead door company that manufactured garage and other related doors. He claims they wanted to hire him, but he didn't have a drivers license, because he had it revoked for driving a stolen car, joyriding. In the summer of 1990, he worked at Tri Valley Growers with his father as a pool bumper, which handles auto maintenance. He also worked as a truck loader and was considered a good hard worker. He was working there when he was arrested for the instant offense.

IX. **SUBSTANCE ABUSE HISTORY:** The Subject denies any drug abuse. He does say he began drinking alcohol at age 10, but it never became a habit. He became a social drinker and usually drank beer. His prior offenses give no indication that these were related to drugs or alcohol. First offense date was 02/01/89, reckless driving, three years probation. On 07/12/89, vehicle theft, driving with suspended or revoked license, convicted, three years probation, 60 days jail, restitution, imposed sentence suspended. After that he had no other convictions or incidents regarding the law. The Subject's instant offense involved alcohol abuse.

He has received two CDC-115's since he has been incarcerated. In 1996, he received a CDC-115 for failure to take a urine test and he received a second CDC-115 for possession of a hypodermic needle, which he claims, was his cellie's. In 1993, he received a CDC-115 for contraband, possession of personal clothing and a CDC-115 for tobacco. This was at the Youth Authority. All of these CDC-115's carried no severe punishment. He has been disciplinary free since 1996


X. **PSYCHIATRIC AND MEDICAL HISTORY:** The Subject does not report, nor are there any records of significant psychiatric or medical history. The only noted ongoing medical issue would be hearing loss in the right ear.

XI. **PLANS IF GRANTED RELEASE:** The Subject says that since he has been incarcerated, he has made good use of the opportunities provided him. He has gained an ASE certification in mechanics. He has worked in the warehouse and is certified as a fork lift operator. He says he has learned to operate a 10-key calculator and that he can type 35 words per minute.

Since he has been at DVI, he has participated in anger management classes and earned a certificate of completion from that class. He also attended Alcoholics Anonymous (AA) and considers himself in remission from any alcohol problems. He also has a certificate in air conditioning and heating. His prison release plan is to get a job in one of the two fields, either air conditioning and heating or automobile mechanics.

## Clinical Assessment

XII. **CURRENT MENTAL STATUS/TREATMENT NEEDS:** The Subject was well groomed and made good eye contact during the interview. He spoke clearly and was fully oriented in terms of person, place and situation. He was alert and cooperative. His thought processes were clear. He has had no history of any psychiatric disorder and none were present at this time. His insight and his judgment were within the normal range for his age group. He would be appraised as having fair to good abilities in these areas.

As per DSM-IV, the following diagnostic impressions seem appropriate for this inmate:

| | | |
|---|---|---|
| AXIS I | 305.00 | Alcohol Abuse by history. Now in remission. |
| | 371.01 | Adult Antisocial Behavior. Not a mental disorder, but a focus of clinical attention at the time of the instant offense. |
| AXIS II | V71.09 | No Diagnosis. |
| AXIS III | | Asthma. Food allergies. Deaf in the right ear. |
| AXIS IV | | Major stressor is incarceration with a Life sentence. |
| AXIS V | GAF = 79-81 | Global Assessment of Functioning (on a scale of 0-100): Indicating that the Subject is functioning about normal for his age group. |

XIII. **REVIEW OF LIFE CRIME:** Prior to the instant offense, the Subject had a minimal amount of criminal activity, mainly those that were dismissed; joy riding and driving without a license.

The Subject's current felony is Murder 2nd Degree with Use of a Deadly Weapon. The murder occurred in Stockton, CA, on October 26, 1990. The ensuing investigation revealed that the Subject's gun and clothing were hidden in the attic of another individual's home. A magazine to the gun was found inside the Subject's jacket. This was a .25 caliber automatic. There were five expended shell casings found at the scene of the shooting.

Subject was asked by this Examiner to provide a brief description of the offense. He was asked how he came to have the gun in the first place. He commented that he had bought the gun ...

previous day for his father. It was supposed to be a gift and he had placed it in his jacket pocket and forgotten he had it.

Subject said he had gone to school the day of the crime and left on his bike at noontime for lunch. He proceeded to go to his cousin's house, Larry Strickland. He claimed that his cousin, David Strickland, was there also. He says, "I stayed at the house until approximately 6:30 p.m."

He reports that the three of them began drinking beer. He claims he drank between six plus cans of beer. He says the house was approximately a half block from Weber Park, where the shooting occurred. He reports that later, while he was sitting on the porch with his cousin, two teenage girls and a young man walked by. Subject said that he commented on one of the girl's "behinds" and she responded, "I know I have a cute behind, and I am going to get my brother who is going to beat your ass." Subject then answered, "Well, go get your brother and come back and beat my ass."

At that point, the young man said to the Subject, "I'll beat your ass right now." To which the Subject retorted, "Don't talk about it. Do it." When the young man suggested that they settle their differences in the local park, the Subject agreed. The Subject stated to the Evaluator that this had sounded like an invitation to fight. He admitted that by this time he was under the influence of alcohol and "I guess I got pretty mouthy."

Subject states that he grabbed his jacket and started out for the park to meet what he thought was going to be this one young man. The Subject says he did not realize that the handgun was in his pocket. He claims he had completely forgotten about the weapon. He claims when he arrived at the park where the young man was, there were several "homeboys," three of whom had weapons. He said when they ran toward him, he pulled out a gun from his pocket. He claims the three youths taunted him and said, "Come on, go ahead and shoot." He reports that he felt intimidated and threatened, at which time he claimed he fired three shots into the ground. He then dropped the gun and ran back to the house. Later he claimed he heard two more shots and when he returned to the scene, the one young man had been shot and killed. He claimed it was never his intention to shoot anyone, but having consumed as much alcohol as he had he felt that he was heavily under the influence and had done something that he otherwise, would never have done. He later described the offense as "a very tragic event which took the life of a 16-year-old victim, Danny Topaz."

He says he has felt very bad about this ever since. He wakes up with that image in his mind every day. He further stated, "You can't change the past, you can only change the future. Anger doesn't solve nothing." He says that many times in his mind he said he would like to apologize to the family, because they lost their only son. He is not sure what he would say to them, but he would like to apologize to them.

He states that since he has been in prison, he has tried to change his life by attending every class and getting every certification that he can. He has participated in the Parole Recidivism Prevention Program classes and has completed four of them. He received a high school diploma through GED on 03/26/96. He says that he reads the Bible at least one hour a day and attends discussions on the Bible at the chapel.

It is noted that the police account of the shooting had indicated that there were five shots fired by the Subject and the one that hit the victim in the chest was the one that killed him. This is at variance from his own personal account of that event.



XIV. **ASSESSMENT OF DANGEROUSNESS:** Since the Subject has no long history of violence and has shown no tendency toward that since he has been incarcerated, his violence potential is considered average for males his age in the community.

XV. **CLINICIAN'S OBSERVATIONS/ COMMENTS/ RECOMMENDATIONS:** This is the Subject's first major crime and incarceration for the offense committed. There is no long standing juvenile record nor is there any criminal activity on his part as an adult prior to this particular crime. The Subject's CDC disciplinary record is, at best, sketchy in terms of his negative behavior, only having received a total of four 115's while incarcerated, all of them being somewhat benign, carrying no major loss of time or privileges. 3 1 in CYA

Since his last 115, he has had no other disciplinary actions. He has made many efforts to improve his marketability should he be released and he has definite plans and goals as to what he would do upon his release. His one comment to this Examiner was that, "If I'm not released at this time, I would certainly understand and I will continue to try and improve myself and make myself ready for a normal life outside if indeed that ever happens." This Examiner was concerned about the varying accounts of the actual crime itself. The inmate seemed relaxed during the interview and was trying to be as honest about the instant offense as possible.

The Subject says he has a great deal of remorse about the crime and is somewhat intent on being able to apologize to the victim's family. The Subject is aware that the two different accounts of the crime itself differ considerably and he is also aware that this information is available to the Board. He said that at the time of the crime, events seem somewhat blurred because he was under the influence of alcohol. He says he has accepted the consequences of the crime and feels he got a just and fair trial and sentence.

Noted by:

JOHN MARLETT, Ph.D., LCSW
Psychiatric Social Worker

RICHARD J. OBROCHTA, Ph.D.
Senior Psychologist (CF) Supervisor

JM/ta

Original: C-File
cc: Medical File

EXHIBIT K



INMATE COPY

DEUEL VOCATIONAL INSTITUTION
Life-Term Inmate Evaluation for the Board of Prison Terms
Mental Health Evaluation
(Revised 1998)
February 2004, Lifer Calendar

Addendum to the Board of Prison Terms Clinical Evaluation
Report of December 2001 by John Rekart, Ph.D.

## I. IDENTIFYING INFORMATION:

Name: Lancaster, Michael Francis
CDC#: E-96955

This report is based on a review of the inmate's Central File, Medical/Psychiatric Record, and an individual interview with the inmate. This report is an addendum to the December 2001 full Board Report by John Rekart, Ph.D. The inmate was informed that the interview was not confidential and would serve as the basis for a report to the Board of Prison Terms.

COPY SENT TO INMATE 1/28/04

## II. BACKGROUND INFORMATION:

Inmate Lancaster was interviewed in D-wing lockdown after being transferred from Z-dorm after a disturbance. He denies any participation in the disturbance and states all inmates who were in Z-dorm have been transferred either to a DVI lockdown unit, or out of the institution.

Inmate Lancaster is a 33-year-old Caucasian male who is incarcerated for Second Degree Murder. There have been several changes since the last full Board Report. First, he wanted to be sure this examiner cleared up some misinformation from the last psychological report. On page 2 of the report dated December 10, 2001, it states he received a 115 for possession of a hypodermic needle "which he claims was his cellie's." He denies every making this claim and requests the record be amended. In October of 2003, inmate Lancaster received a 115 disciplinary report for "mutual combat," which makes a total of three 115s. In August of 2003, he received a Certificate of Proficiency in General Fabrication, and in September 2003 he received a certificate showing 5805 hours in Auto Mechanics. He has also earned three more FEMA certificates, and is on the verge of earning one more. He continues to receive laudatory chronos for his work in Prison Industries Authority (PIA) and in October received a job commendation letter from his supervisor. He has completed "Family Ties" one and two, and he continues to donate a relatively significant amount of money to St. Jude Hospital, to help children with cancer, after losing his mother to cancer in 2002. Finally, he was baptized on June 22, 2003.

If granted parole, his parole plans are dependent upon where he is allowed to live. If he is paroled to San Joaquin County, he plans to work as an auto mechanic or in air conditioning and heating; he has applications already sent out. If he paroles to Tennessee, he will live with his father and seek employment in the same fields, and if he were able to parole to Washington, he would live with his sister, where he states he already has a job offer. He thus appears to have enough family support, especially if allowed to parole out of state.

III. MENTAL STATUS EXAMINATION:

Inmate Lancaster came to the interview neatly dressed and well groomed. He was alert, friendly, and cooperative throughout the interview. He was fully oriented to person, place, time, and situation. His affect and mood were within normal limits. No hallucinations or delusions were noted, nor were there any deficits in memory, judgement, or concentration. There appeared to be little risk for suicidal or violent behavior at this time.

IV. DIAGNOSTIC IMPRESSION:

| | | |
|---|---|---|
| AXIS I | V71.09 | No Diagnosis or Condition on Axis I. |
| AXIS II | V71.09 | No Diagnosis or Condition on Axis II. |
| AXIS III | | None known. |
| AXIS IV | | Incarceration with Life Term. |
| AXIS V | GAF = 85 | Global Assessment of Functioning (on a scale of 0-100): Absent or minimal symptoms. Good functioning in all areas. |

V. SUMMARY AND RECOMMENDATIONS:

Inmate Lancaster continues to attempt to improve himself, and appears successful in this endeavor. He has received yet another 115, but again, not for anything truly violent, and this one appears to be more defensive in nature. He continues to take classes as available, and has taken his spirituality seriously enough to go through the trouble of getting baptized. Violence potential for inmate Lancaster appears lower than average for the inmate population, and probably lower than in free society. He has strong family support and viable parole plans if released.

Noted by:

GREG I. GIRTMAN, Ed. D.
Staff Psychologist

EDWARD HOPPE, Ph.D.
Chief Psychologist

GG/tav

Original: C-File
cc: Medical File

EXHIBIT L

MINUTE ORDER
SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE PRINTED: 03/28/06

---

CASE NO. LA012332

THE PEOPLE OF THE STATE OF CALIFORNIA
VS.
DEFENDANT 01: DAVID THAYNE SMITH

---

COUNT 01: 187(A) PC FEL - MURDER.

ON 03/23/06 AT 830 AM IN NORTHWEST DISTRICT DEPT NWF

CASE CALLED FOR MISCELLANEOUS

PARTIES: KATHRYNE A STOLTZ (JUDGE) BEVERLY BOOS (CLERK)
TROYETTE SCOTT (REP) NONE (DDA)

DEFENDANT IS NOT PRESENT IN COURT, AND NOT REPRESENTED BY COUNSEL

ORDER AFTER DEFAULT BY FAILURE TO RESPOND TO ORDER TO SHOW CAUSE IS SIGNED AND FILED THIS DATE.

THE COURT ORDERS THAT PETITIONER'S MAXIMUN PAROLE DATE BE UPHELD AND SET AT 2/13/08 AND A NEW PAROLE HEARING BE HELD WITHIN 30 DAYS OF THIS ORDER IN WHICH THE PAROLE BOARD IS TO CONSIDER ONLY THE CORRECTED PROBATION REPORT AS CONSISTENT WITH THIS COURT'S APRIL 22, 2002 ORDER.

A COPY OF THIS MINUTE ORDER IS SENT TO THE DEPARTMENT OF CORRECTIONS, TO THE DEFENDANT AND TO COUNSEL BRENT MERRITT THIS DATE.

NEXT SCHEDULED EVENT:
PROCEEDINGS TERMINATED

BRENT H. MERRITT S/B# 165479
Attorney at Law
9401 Wilshire Boulevard
Suite 650
Beverly Hills, California 90212
(310) 777-0072
(310) 248-4406 fax

Attorney for Defendant,
DAVID THAYNE SMITH

Copy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| DAVID THANE SMITH,<br><br>Petitioner.<br><br>vs.<br><br>A.P KANE, Warden, et al.,<br><br>Respondents. | Case No. LA012532<br><br>[~~PROPOSED~~] ORDER AFTER DEFAULT BY FAILURE TO RESPOND TO OSC<br><br>Department: F |

TO THE ABOVE-ENTITLED PARTIES, THE ATTORNEY GENERAL FOR THE STATE OF CALIFORNIA AND THE DISTRICT ATTORNEY FOR THE COUNTY OF LOS ANGELES

THE COURT, having received Petitioner's Motion for Order to Correct the Record December 30, 2005 and set the matter for an Order to Show Cause why the defendant's motion for order to correct record (which appears to be a petition for a writ of habeas corpus) filed on December 30, 2005, should not be granted hereby finds as follows:

1. On January 13, 2006 the Court issued the OSC and granted Respondent 30 days in whi

to respond.

2. The Court's order was mailed to the Attorney General of the State of California and District Attorney for the State of California on January 13, 2006.

3. Respondents failed to file any response to the OSC.

4. Good cause having been shown and no opposition having been filed by Responde[nts] Petitioner is granted relief as requested in his moving papers filed December 30, 2005.

It is Hereby Ordered that:

Petitioner's maximum parole date be upheld and set at 2/15/2008 and a new parole heari[ng] be held within 30 days of this order in which the parole board is to consider only the correct probation report as consistent with this Court's April 22, 2002 order.

Dated: March 23, 2006

Kathryne Stoltz,
Judge of the Superior Court

EXHIBIT M

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

In the matter of the Life Term Parole Consideration Hearing of: ) CDC Number E-96955

DAVID LANCASTER

INMATE COPY

CALIFORNIA TRAINING FACILITY

SOLEDAD, CALIFORNIA

April 4, 2006

PANEL PRESENT:

Mr. Archie Joe Biggers, Presiding Commissioner
Ms. Donna H. McBean, Deputy Commissioner

OTHERS PRESENT:

Mr. David Lancaster, Inmate
Ms. Pat Fox, Attorney for Inmate
Correctional Officers Unidentified

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_________ No See Review of Hearing
_________ Yes Transcript Memorandum

P. M. LaChapelle, Peters Shorthand Reporting

his brother perhaps from the transitional halfway house type environment. And there's very important input from his brother's girlfriend. He's gone to that effort because if the girlfriend's not going to be happy, well, Mr. Lancaster's not going to be in that house very long.

So, he does have marketable skills, including writing, as well as the documented certificated skills. And those would benefit any community that he would go to. I've also submitted some poetry, which is remarkable, and I'd ask that the Panel take a look at that. The dates on those coincide with Danny's death. And as a matter of honor, Mr. Lancaster does that every year to recall Danny's contributions to the world.

So, it would be appropriate to find Mr. Lancaster suitable because he is. And I'll submit based on that unless there's anything else that he would like to add.

**INMATE LANCASTER:** No, I will read my statement.

**PRESIDING COMMISSIONER BIGGERS:** Okay. Before I go to you there, Mr. Lancaster, Ms. McBean has something she wanted to ask.

**DEPUTY COMMISSIONER McBEAN:** You know,

and we'll give you another turn if you like, counsel, I meant to ask you about this, it is in the File and I want to give you an opportunity to explain this. You were placed in Ad Seg in June of '05. And this says, I'm looking at the 114D, indicates you made allegations of staff misconduct by your work supervisor. Specifically, you confirmed another inmate's claim that she attempted to coerce an over familiar relationship with inmates. They did an investigation and the investigation confirmed that your allegations were complete fabrications. However, insufficient information was gathered to support a finding of guilt in a disciplinary hearing. Ms. Hicksom has appropriately continued to work in her assignment in the Level 2 clothing distribution, therefore your release to the GP as Solano jeopardizes her welfare. Based on the aforementioned, you're being retained in Ad Seg until your transfer to an alternate institution. So, I guess that's what prompted your transfer here.

**INMATE LANCASTER:** Yes, that's correct.

**DEPUTY COMMISSIONER McBEAN:** So, now, I know that you didn't get a 115 for it, but why don't you -- I want to give you an opportunity

to comment on this.

**INMATE LANCASTER:** Well, an individual, another inmate made some allegations about a female staff. I went to a hearing officer -- he called me out of the witness. The hearing officer asked me if these things happen. I stated, yes. The paperwork then went to the social warden. The social warden gathered some more information, said that well, this stuff might be true, so we going to put you in Ad Seg, that way you don't jeopardize the investigation of this -- the interrogation of this investigation. So we put you in Ad Seg till the investigation's over.

Investigation went on. They found the allegations weren't to be true on his part, so I was --`they stated that I was in cahoots with this other inmate and wrote me a 128G chrono.

**DEPUTY COMMISSIONER McBEAN:** Um hmm. Is that true? Were you in cahoots with the other inmate?

**INMATE LANCASTER:** No, I was not. The hearing officer asked me and I told him. I said, yeah, I believe so. One thing led to another, we went to Ad Seg the same day.

**DEPUTY COMMISSIONER McBEAN:** Um hmm. Okay.

**ATTORNEY FOX:** And I'd just add --

**PRESIDING COMMISSIONER BIGGERS:** Excuse me, just one second.

**ATTORNEY FOX:** Oh, I'm sorry.

**PRESIDING COMMISSIONER BIGGERS:** You keep coming back to, you know, this is what happened, you know, like boom, boom, boom, like you didn't have anything to do with it. You agreed with them. You told the hearing officer, yes, it did -- it was in fact true, that you must have had some knowledge of it.

**INMATE LANCASTER:** I was working in the same institution -- same place he's working at.

**PRESIDING COMMISSIONER BIGGERS:** Then the --

**INMATE LANCASTER:** I was there -- he was working the laundry distribution. I was working on laundry distribution.

**PRESIDING COMMISSIONER BIGGERS:** Then the --

**INMATE LANCASTER:** And the -- excuse me. The hearing officer asked me what did you see?

**PRESIDING COMMISSIONER BIGGERS:** Okay. And the -- but the inmate couldn't substantiate that, correct?

**INMATE LANCASTER:** That's correct.

**PRESIDING COMMISSIONER BIGGERS:** And so

then you said, when Commissioner McBean mentioned that to you, you just said, well, he came up and asked me this. Now, the investigation confirmed that the allegation was completely fabricated. And you're saying that it wasn't fabricated.

**INMATE LANCASTER:** I told the hearing officer what I seen. If the investigation said otherwise, I can't dispute that. I told the hearing officer what I seen happen. If the investigation said no again happened and they said it didn't happen, then I can't respute (sic) that.

**PRESIDING COMMISSIONER BIGGERS:** How long were you in Ad Seg?

**INMATE LANCASTER:** Four months, sir.

**PRESIDING COMMISSIONER BIGGERS:** Four months?

**INMATE LANCASTER:** Yes.

**PRESIDING COMMISSIONER BIGGERS:** Now, go ahead.

**ATTORNEY FOX:** Okay, thank you. I apologize for interrupting.

**PRESIDING COMMISSIONER BIGGERS:** No problem.

**ATTORNEY FOX:** But I would note along that line, that it was a non-adverse transfer to

CTF.

**PRESIDING COMMISSIONER BIGGERS:** Is there anything else from you Ms. Fox?

**ATTORNEY FOX:** No, thank you.

**PRESIDING COMMISSIONER BIGGERS:** Okay.

**ATTORNEY FOX:** Thank you for bringing that up. We need a complete record. Thank you.

**PRESIDING COMMISSIONER BIGGERS:** All right. Now, Mr. Lancaster, you have a chance to address the Panel, tell us why you feel that you're suitable for parole.

**INMATE LANCASTER:** That's correct.

**PRESIDING COMMISSIONER BIGGERS:** You're saying that's correct (indiscernible).

**INMATE LANCASTER:** Yes, it is. But I want to elaborate on the 128G chrono.

**PRESIDING COMMISSIONER BIGGERS:** You can do anything you want to do.

**INMATE LANCASTER:** You know, I can't change --

**DEPUTY COMMISSIONER McBEAN:** Hold on a second. Really at this point, cause you've already commented on that. This is your opportunity to tell us why you're suitable for parole.

**PRESIDING COMMISSIONER BIGGERS:** Why you're suitable for parole.

**DEPUTY COMMISSIONER McBEAN:** And that would be the best use of your time. We gave a chance to comment on this. We see you didn't get a 115, so why don't you move on to why are you suitable for parole.

**INMATE LANCASTER:** I believe that I met the criterias in the Board of Prison Terms Title 15 Rules and Regulations suitabilities and suitable factors, and my suitabilities outweigh more than unsuitability factors. I do have parole plans in the -- my commitment offense, San Joaquin County. I have tried to obtain a job offer on the streets. I have written numerous people, companies out there, asking for their assistance. I have marketable skills in two different trades -- actually three, automotive shop, warehouse and paralegal assistance. I have not attained my paralegal license but once I get out on the streets, I will be able to do that. Once I get a stead job. I have -- I've done a self-help program all thorough my Youth Authority and into the CDC Department and I have -- take full responsibility of the crime itself. And I have shown remorse. In my Central File and under miscellaneous, you see numerous letters I write (sic) to the victim's family. However, I did

not send them to them because my counselors in Youth Authority and my counselors in CDC Department told me not to. Just to write the letters and submit them to my C File. I have done there over numerous of years. I've submitted -- I let you look at some of my poetry I have written. I have remorse of what I have done to the victims Danny Tupas and his family. And what I have done to my own family by coming in here, by committing the crime. I have insight in the crime itself. I have learned since I been incarcerated last 16 years. I have good reports on psych reports and my counselor's report. Good boy chronos and numerous certificates in FEMA classes and stuff like that. I have upgrade my education and my vok. And on that part, I'd like to leave there, but I do want to read a statement, is that okay? You have to bear with me, I'm not a very good reader in front of people.

**DEPUTY COMMISSIONER McBEAN:** That's fine. Just take a deep breath.

**INMATE LANCASTER:** During my carceration (sic), I have plenty of times to reflect on my mistakes, my life, my education and my job skills. Why I came to the conclusion that my being put in jail was a sign that my life had no

meaning, by no means, I'm using this crime as to find myself. Every day of my incarceration, I have been going over what happened 16 years ago, and I have been beating myself with the ways I could have avoided the problem.

Now is the time everything seemed much clearer to me. I know I have destroyed the family of Danny Tupas life, as why I destroyed my life and will -- as well as others. Because of this, I have learned to deal with my anger in a more productive way and directed my negative thoughts to a more positive ones to solve my problems. I have enrolled myself in every possible class that's available to me in order to educate myself to secure a better future.

I have no -- I now know that my past actions could have been avoided. I know I have taken advantage of every possible opportunity to better myself and have finally achieved something that I haven't in the past. I have received my high school diploma. Without my vocational training, I realized what it takes to function out in society in a successful manner. I utilize the resources I gained respectfully in the community.

There are other concerns I wonder about is my parole hearing. I understand completely how

important one's family is and realize that I couldn't have accomplished the goal or deal without the support from my family. They have been there for me at all costs and give me the strength to face my challenge. I am very sorry for what I've put the -- Danny Tupas' family through. I am sorry I have put my family through this and disappointed them. My hope is that one day I get a chance to make up to -- get a chance to -- get a chance to make it up to everyone involved. The very meaning for this letter is to let the Board of Prison Terms know of my feelings. I have committed a crime and I'm paying the price. I have to live with the rest of my life and regret every second of this. The Board will give me -- the Board will be giving a young man a second chance to better his life. A chance to redeem myself in the eyes of my loved ones and to serve my community. That's all I have to say, sir.

**PRESIDING COMMISSIONER BIGGERS:** All right. Thank you very much. We will recess at this time.

**R E C E S S**

--oOo--

EXHIBIT N

**CALIFORNIA BOARD OF PRISON TERMS**

**D E C I S I O N**

**DEPUTY COMMISSIONER STEVENSON:** We're on.

**PRESIDING COMMISSIONER MOORE:** Thank you. Let the record show that all interested parties have returned to the room, and the time is approximately 1440 hours. David Lancaster, CDC number Edward 96955, the Panel has reviewed all information received from the public and relied on the following circumstances in concluding that the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. The committing offense, the commitment offense was carried out in an especially cruel and callous manner. The offense was carried out in a dispassionate and calculated manner. The motive for the crime was inexplicable of very trivial in relationship to the offense. These conclusions are drawn from the Statement of Facts wherein the prisoner was confronting -- actually in an argument with the victim earlier. He went to the -- to a park and was confronted there at Webber Park by the victim and several of the victim's friends. The prisoner pulled out a 25-caliber automatic pistol and shot the victim. He was Danny Tupas, Jr. He

was 16 years of age. The victim was, let me see, wounded with five rounds hitting him in the chin with one, the upper left shoulder, upper left chest area, and then the right lower leg with the bullets. He was later succumbed to these wounds. Previous record, the prisoner actually has a minimal record of misconduct. He failed to profit from society's previous attempts to correct his criminality. Such attempts were juvenile probation and county jail time. And the prisoner has an unstable social history, a prior criminality which includes vehicle theft, substance abuse starting at an early age of about 10. As well as (inaudible) product of a broken home and a high school -- (inaudible) high school drop out. The institutional behavior, the prisoner has not sufficiently participated in beneficial self-help and therapy programming. He's failed to demonstrate evidence of positive change in his conduct while incarcerated includes a serious 115 dated March 19th of 1996 for stimulants and sedatives. Parole plans, the prisoner lacks realistic parole plans in that he does not have acceptable employment plans in the last legal county of residence. Let's see. 3042 notices, the Hearing Panel notes that responses to 3042

indicates an opposition to a finding of parole suitability, specifically the District Attorney's office who had a representative present here today from San Joaquin County. And they were in opposition to a finding of parole suitability at this time today. Remarks, the Panel makes the following findings, that the prisoner needs therapy in order to face, discuss, understand, and cope with stress in a nondestructive manner. Until progress is made, the prisoner continues to be unpredictable and a threat to others. The prisoner's gains are recent, and he must demonstrate the ability to maintain these gains over an extended period of time. Nevertheless, the prisoner should be commended for his participation in Parolee Recidivism Prevention program. Let's see, the Disciplinary, Career, and Development program, the Personal Conflicts Resolutions, Time and Money Management program, as well as participating in the AA Bottle Stopper program. Although he's not at least have a record of him being participating at this point. And as well, he has positive work reports from the PIA furniture program where he's an assembler there. He has two marketable skills, one is in auto mechanic, the other is A/C or air conditioning and heating. He

completed both of those, as well as completing his high school diploma. Nevertheless, -- or however, these positive aspects of his behavior don't outweigh the factors of unsuitability at this time. Mr. Lancaster, this is a two-year denial. And in a separate decision, the Hearing Panel finds that the prisoner has been convicted of murder. And it is not reasonable to expect that parole would be granted at a hearing during the next two years. The specific reasons for the findings are as follows: The committing offense, specifically the committing offense was carried out in an especially cruel and callous manner. As I already talked about, he had an ongoing argument and moving to a park area. And there you were confronted by the victim and his friends. And you pulled out your 25 automatic pistol, and you shot the victim some three times. The offense was carried out in a dispassionate and calculated manner. The motive of the crime was inexplicable or very trivial in relationship to the offense. As I talked about earlier, the prisoner has a minimal history of criminality and misconduct, vehicle theft, which the prisoner was on probation at the time of the instant offense. The prisoner has recently committed a serious 115, that was on 3/19 of '96

for violation for stimulants and sedatives. Therefore, a longer period of observation or evaluation of the prisoner is required before the Board should find that the prisoner is suitable for parole. The Panel makes the following recommendations to you, to remain disciplinary-free, and you're starting to do that. As I said, the last one was in 1996. If it's available to you, to upgrade vocationally and educationally, as well as if it's available, to participate in self-help and therapy programming. Commissioner Stevenson, do you have any comments?

**DEPUTY COMMISSIONER STEVENSON:** Nothing. Thank you.

**PRESIDING COMMISSIONER MOORE:** This concludes our reading. Good luck to you, Mr. Lancaster. The time is 1445 hours.

**ATTORNEY HURST:** May I make one, Commissioner, before we go off record?

**PRESIDING COMMISSIONER MOORE:** Sure.

**ATTORNEY HURST:** It goes to the -- I believe you said that the victim suffered three bullet wounds. And there were two, one, a graze to his chin, and one an entry to his chest, which caused his death. And that's on the top of page four in the Appellate Report. And I didn't bring it up

necessarily except it may go to kind of to intent, you know.

**PRESIDING COMMISSIONER MOORE:** Okay. Well, that's fine. In my report it said there were three. So, I saw it in the -- Let me see here. The chin, the upper left chest area, and then the right lower leg with a bullet.

**ATTORNEY HURST:** Yes, I -- Where did that come from because --

**PRESIDING COMMISSIONER MOORE:** So, that was in the summary from the Probation Officer's report, page one.

**ATTORNEY HURST:** Oh, this is from the Appellate report. And it cites the autopsy report.

**PRESIDING COMMISSIONER MOORE:** Okay.

**ATTORNEY HURST:** So, -- Okay. So, you have --

**PRESIDING COMMISSIONER MOORE:** So that was where --

**ATTORNEY HURST:** --(inaudible).

**PRESIDING COMMISSIONER MOORE:** So that was where I -- No, that is where I got my information from.

**ATTORNEY HURST:** Okay.

**PRESIDING COMMISSIONER MOORE:** So, there is a conflict.

**ATTORNEY HURST:** There is a conflict.

**PRESIDING COMMISSIONER MOORE:** But I don't have a problem if it was two, we can correct that in terms of looking at the autopsy report.

**ATTORNEY HURST:** Sure.

**PRESIDING COMMISSIONER MOORE:** Okay?

**ATTORNEY HURST:** Thank you.

**PRESIDING COMMISSIONER MOORE:** No problem.

--oOo--

PAROLE DENIED TWO YEARS

EFFECTIVE DATE OF THIS DECISION MAR 12 2002

**CERTIFICATE AND**

**DECLARATION OF TRANSCRIBER**

I, APRIL ALLEN, a duly designated transcriber, CAPITOL ELECTRONIC REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 through 69, and which recording was duly recorded at DEUEL VOCATIONAL INSTITUTION, at TRACY, CALIFORNIA, in the matter of the INITIAL PAROLE CONSIDERATION HEARING of DAVID LANCASTER, CDC No. E-96955, on FEBRUARY 6, 2002, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.

Dated February 22, 2002, at Sacramento County, California.

April Allen
Transcriber
**CAPITOL ELECTRONIC REPORTING**

EXHIBIT O

CALIFORNIA BOARD OF PRISON TERMS

D E C I S I O N

**PRESIDING COMMISSIONER ANGELE:** Back on record. This is the matter of inmate David Lancaster, CDC number E-96955. Mr. Lancaster, the Panel has reviewed all information received from the public and relied on the following circumstances in concluding that you're not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. First we have the offense -- carried out in an exceptionally violent and brutal manner. There were multiple victims; one was killed. The offense was carried out in a manner which demonstrates a disregard for human life. These conclusions are drawn from the Statement of Facts wherein the inmate on or about October 25, 1990 after a verbal altercation did shoot and kill one Danny Tupas, T-U-P-A-S, age 16. Mr. Tupas was in the company of another individual in a park where the inmate had followed them, and the second individual was not struck and his last name -- his name was Carlos Martinez. Apparently they were in a group of individuals, all who scattered except for Mr. Tupas and Mr. Martinez, and the inmate fired bullets striking only

Mr. Tupas. The inmate does have a prior arrest for grand theft auto receiving three years probation and receiving 60 days in jail, 30 days suspended. He was on probation at the time of the instant offense. The inmate has programmed in a sufficient manner, receiving only two 115 disciplinary reports, the last one being in 2003. Prior to that it was in 1996. The psychological evaluation which is dated 1-16-04 by Greg Gritman, G-R-I-T-M-A-N, is somewhat inconclusive. The doctor states under summary and recommendations, and after reading this two or three times, it's a little hard to understand: "Violence potential for inmate Lancaster appears lower than the average inmate but lower than average for the inmate population and probably lower than in free society." I don't know what he means by that. Lower than the average inmate in a free society or lower than a citizen in the free society? We need to get that cleared up. He does indicate that he has strong support and viable parole plans if released. He does not have viable parole plans. He has no parole plans in the state of California. There are no responses to 3042 Notices. The Panel believes that the inmate should be commended for his programming, for his educational programming, for his self-help

programming and for his vocational programming. However, these positive aspects of his behavior do not outweigh the factors of unsuitability. The inmate has recently committed a serious 115, this was committed on 8-24-03, it was a mutual combat. Denial is for a period of one year. During that one year we ask that the inmate remain -- I should say become and remain disciplinary-free; that you continue with the present course of programming and also to cooperate with the clinician in the completion of a clinical evaluation. We are asking for an amended clinical evaluation to speak to the issue of assessment of dangerousness as compared to the average citizen if released to the community. That does conclude the reading of the statement. Any comments, Commissioner Roos?

**DEPUTY COMMISSIONER ROOS:** No, Sir.

**PRESIDING COMMISSIONER ANGELE:** That does conclude this hearing. The time is approximately 11:15 p.m., excuse me, a.m.

**ATTORNEY DAVEY:** Thank you, Commissioner.

--oOo--

**PAROLE DENIED ONE YEAR**

**THIS DECISION WILL BE FINAL ON** JAN 13 20__

**YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT DATE, THE DECISION IS MODIFIED.**

**CERTIFICATE AND**

**DECLARATION OF TRANSCRIBER**

I, Marsha Mees, a duly designated transcriber, CAPITOL ELECTRONIC REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 through 61, and which recording was duly recorded at CALIFORNIA STATE PRISON, SOLANO, at VACAVILLE, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of DAVID LANCASTER, CDC No. E-96955 on SEPTEMBER 15, 2004, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.

Dated October 2, 2004 at Sacramento County, California.

Marsha Mees
Transcriber
**CAPITOL ELECTRONIC REPORTING**

EXHIBIT O

MC-275

Name David G. Lancaster

Address P.O. Box 689

Soledad, CA. 93960-0689

Pro se

CDC or ID Number E-96955

SUPREME COURT
FILED
DEC 0 7 2006
Frederick K. Ohlrich Clerk
DEPUTY

CALIFORNIA SUPREME COURT

IN AND FOR THE STATE OF CALIOFRNIA

(Court)

| David Gene LANCASTER<br>Petitioner<br>vs.<br>A.P. KANE, Warden, Soledad,<br>Respondent | PETITION FOR WRIT OF HABEAS CORPUS<br>No. S148618<br>(To be supplied by the Clerk of the Court) |
|---|---|

ORIGINAL

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**
- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.
- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.
- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."
- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.
- If you are filing this petition in the Court of Appeal, file the original and four copies.
- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.
- Notify the Clerk of the Court in writing if you change your address after filing your petition.
- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

RECEIVED
DEC 6 – 2006
CLERK SUPREME

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the Judicial Council of California MC-275 [Rev. January 1, 1999] Optional Form

PETITION FOR WRIT OF HABEAS CORPUS

THOMSON WEST

Penal Code, § 1473 et seq.; Cal. Rules of Court, rules 56.5, 201(h)

**S148618**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re DAVID GENE LANCASTER on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

OCT 31 2007

Frederick K. Ohlrich Clerk

Deputy

GEORGE

Chief Justice

MC-275

Name David Lancaster

Address P.O. Box 689

Soledad, CA. 93960-0689

Pro se

CDC or ID Number E-96955

FILED
SUPERIOR COURT-STOCKTON
06 JUL 28 AM 11:57
ROSA JUNQUEIRO, CLERK
BY ________ DEPUTY

SAN JAQUIN COUNTY SUPERIOR COURT

IN AND FOR THE STATE OF CALIFORNIA

(Court)

David Gene LANCASTER,
Petitioner

vs.

A.P. KANE, Warden, Soledad,
Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No. SC48951A
(To be supplied by the Clerk of the Court)

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**
- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.
- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.
- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."
- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.
- If you are filing this petition in the Court of Appeal, file the original and four copies.
- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.
- Notify the Clerk of the Court in writing if you change your address after filing your petition.
- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the Judicial Council of California MC-275 [Rev. January 1, 1999] Optional Form

PETITION FOR WRIT OF HABEAS CORPUS

THOMSON WEST

Penal Code, § 1473 et seq.; Cal. Rules of Court, rules 56.5, 201(h)

RECEIVED
OCT 10 2006
By [signature] Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

In the Matter of the Petition of

DAVID LANCASTER

For Writ of Habeas Corpus.

CASE NO. SC 048957 A
ORDER

A petition for Writ of Habeas Corpus having been filed herein on July 28, 2006, and good cause appearing therefore, the petition is hereby denied.

Petitioner, David Lancaster was convicted of second degree murder by jury verdict and, on June 10, 1991, sentenced to a term of 15 years to life plus 3 years for use of a firearm in the commission of the offense. Petitioner, who was 20 years old at the time of the offense, was housed at the California Youth Authority until 25 years of age and has been serving time in the California Department of Corrections since April 1998. Petitioner had his Initial Parole Consideration Hearing February 6, 2002. He was found unsuitable for parole and denied further parole consideration for a period of two years. Petitioner filed a habeas petition with this court regarding the outcome of that hearing. However, the court declined to consider the substantive issues raised in that petition on the ground petitioner had not exhausted his administrative remedies as required by In re Muszalski (1975) 52 CA3d 500. Petitioner had a Subsequent Parole Consideration Hearing on September 15, 2004, was again found unsuitable for parole and was denied further parole consideration for one year. Petitioner filed a habeas petition with this court regarding the result of the September 15, 2004 hearing. That petition was considered on its substantive merits and denied. Petitioner had a second Subsequent Parole Consideration Hearing on April 4, 2006, was again found unsuitable for parole and again denied further consideration

1995

for parole for one year. Petitioner has filed this new habeas petition seeking a judicial review of the April 4, 2006 determination by the Board of Prison Hearings that he is unsuitable for prole.

Petitioner first contends he is entitled to be released on parole, at the latest, by October 27, 2007. Petitioner has submitted a calculation worksheet provided by the California Department of Corrections and Rehabilitation (CDCR) which sets forth the institution's calculation of petitioner's Maximum Eligible Parole Date as October 27, 2007, fifteen years after the start of his prison sentence, and the Minimum Eligible Parole Date (MEPD) as October 27, 2002, fifteen years minus all possible conduct credits petitioner could earn to reduce his term of imprisonment. Citing In re Rodriquez (1975) 14 C3d 639, 646-653, petitioner contends he must be released by October 27, 2007, when the Maximum Eligible Parole Date calculated by the CDCR expires.

Petitioner's reliance on Rodriquez, which was decided before the indeterminate sentencing laws were changed in 1977, is misplaced. In re Dannenberg (2005) 34 C4th 1061, 1090 recognizes that Penal Code § 3041, as it now exists, partially combines the term-setting and parole functions Rodriguez described as separate under prior law. Now, the term-fixing provisions of Penal Code § 3041(a) call for firm parole release dates, fixed in advance under principles of uniform incarceration for similar offenses, but Penal Code § 3041(b) makes clear that the parole authority has the express power and duty, in an individual case, to postpone the fixing of a firm release date, and thus to continue the inmate's indeterminate status within his or her life-maximum sentence, if it found that the circumstances of the prisoner's crime or criminal history presents a continuing risk to public safety. The calculation of October 27, 2007 as petitioner's Maximum Eligible Parole Date does not entitle him to be paroled by that date.

Petitioner next contends the Board of Parole Hearing's finding that he is unsuitable for parole is invalid for several reasons. He contends the decision is not based on appropriate findings and the findings are not supported by the evidence.

A court reviewing a denial of parole by the Board of Prison Hearings can only scrutinize the decision to the point of finding "some evidence" supporting it. This requires such review as is necessary to determine whether there is any evidence in the record supporting the denial. Once

the factors considered are supported by "some evidence," the precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the Board, but the decision must reflect an individualized consideration of the specified criteria and cannot be arbitrary or capricious. It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole. In re Rosenkrantz (2002) 29 Cal.4th 616, 658-679.

The Board concluded petitioner was not suitable for parole in that he would pose an unreasonable risk of danger to society or a threat to the public safety if released from prison. The factors that led the Board to that conclusion were that the offense was carried out in an especially violent and brutal manner in which a 16-year old boy lost his life in a crime primarily caused by petitioner's willingness to engage in an altercation over a few derogatory remarks. The Board noted petitioner could have easily avoided the altercation, but chose to pursue it, taking a gun.

Petitioner argues the Board improperly relied on the nature of his offense in determining him unsuitable for parole, as there is no evidence the offense was carried out in an especially violent and brutal manner.

That a prisoner committed his offense in an especially heinous, atrocious or cruel manner is a circumstance tending to establish unsuitability for parol. 15 CCR § 2402(c). A finding that the prisoner committed the offense in an especially heinous, atrocious, or cruel manner may be based on a finding the motive for the crime is inexplicable or very trivial in relation to the offense. 15 CCR § 2402(c)(1) Although the terms used by the Board referred to the violent and brutal nature of petitioner's offense, other comments clearly refer to the trivial motive for the offense. While petitioner was drinking beer on the porch of a friend's house, two juvenile girls and a young man walked by. When petitioner made some comment about one of the girl's butt, a short exchange of hostile comments ensued which led to a suggestion the parties settle their differences in a near-by park. Petitioner followed the girls and young man to the park, taking his jacket which had a gun in its pocket. When petitioner arrived at the park he was confronted by the young man and several of his friends, one of whom was armed with a broken bottle and another with a knife. Petitioner pulled his gun, causing everyone to scatter except 16-year old Danny Tupas and Carlos

Martinez who challenged petitioner to shoot them. Petitioner fired his gun approximately five time, hitting Tupas twice and causing his death. The circumstances relating to the shooting of Tupas indicate petitioner shot him for trivial motive, making the crime especially heinous.

Petitioner also contends the Board cannot continue to deny him parole based on the nature of his offense.

Although the Board may not adopt a blanket rule that automatically excludes parole for individuals who have been convicted of a particular type of offense, it properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant. A denial of parole based upon the nature of the offense alone might rise to the level of a due process violation where, for example, no circumstance of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense. As discussed above, the Board properly considered certain circumstances of petitioner's offense which were egregious beyond the minimum necessary to sustain a conviction for second degree murder. Accordingly, the Board could properly consider the nature of the offense in denying parole. In re Rosenkrantz, at page 683.

Petitioner next contends there is no evidence to support the Board's conclusion that he would pose an unreasonable risk of danger to society or a threat to the public safety if released from prison. He points out that none of the psychiatric evaluations done on him over the years have indicated he poses a high risk and the most recent evaluation, done March 10, 2006, indicates his potential for dangerous behavior is no greater than the average citizen in society. Petitioner argues the Board ignored the psychiatric reports in finding he posed an unreasonable risk to society. Petitioner argues, in view of the psychiatric reports, there is no evidence to support the Board's conclusion that he poses an unreasonable risk of danger to society.

While the Board must consider all relevant, reliable information in determining suitability for parole, including psychiatric evaluations, it is not required to simply accept the opinion of the psychiatrist/psychologist and thereby relinquish its roll in determining whether petitioner poses an unreasonable risk of danger to society. The evidence indicates the Board considered the psychiatric evaluations relating to petitioner. However, there ~~was~~ were other factors, in addition to the

nature of petitioner's offense, from which the Board could conclude petitioner poses an unreasonable risk of danger if paroled at this time.

The Board noted that petitioner had accomplished a lot in regard to self-help programing and vocational training. However, it could properly conclude petitioner needed additional participation in AA in view of the significant role alcohol had in his committing offense. The Board was appropriately concerned that petitioner had been placed in administrative segregation, though never issued a disciplinary violation, for becoming involved in false allegations about a correctional officer. Finally, the Board could justifiably conclude that petitioner's parole plans were not firm. Although petitioner has acquired some excellent vocational skills and made some effort to secure employment, he had no definite offer of employment. Furthermore, family members who could have offered him a home, no longer live in California.

Finally, petitioner contends the decision of the Board regarding his suitability for parole is invalid because the composition of the Board does not comply with the requirement set forth in Penal Code § 5075 that its members be drawn from a cross-section of the community. Petitioner contends a majority of the members appointed to the Board are members of law enforcement and, therefore, not representative of a cross-section of the community.

Penal Code § 5075 provides that the persons appointed by the Governor and confirmation by the Senate as commissioner on the Board shall reflect as nearly as possible a cross section of the racial, sexual, economic, and geographic features of the population of the state. Penal Code § 5075 contains no limitation as to the occupation a Board appointee may have previously had.

Given the nature of petitioner's offense, recent involvement in false accusations against a correctional officer and lack of firm employment and living arrangement upon parole, the Board's determination that the positive factors regarding petitioner's programming do not outweigh the factors of unsuitability was not arbitrary or capricious. The petition is, therefore, denied.

Date:

T. Van [signature]
Judge of the Superior Court

tgr 10-06-06




RECEIVED
OCT 1 0 2006
By

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

In the Matter of the Petition re

DAVID GENE LANCASTER

for Writ of Habeas Corpus.

CASE NO. SC 048957 A
CERTIFICATE OF SERVICE BY MAIL

I, the undersigned, declare that I am a deputy of the Clerk of the Superior Court of San Joaquin County, State of California, and not a party to the action; on OCT 1 2 2006 deposited in the United States Post Office at Stockton, California, true and correct copies of the ORDER regarding the above-entitled petition for writ of habeas corpus, copies of which are hereto attached and made a part hereof, one copy of which being addressed to each of the following named persons at the following named addresses:

DAVID GENE LANCASTER E-96955
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689
SOLEDAD, CA 93960-0689

I further declare that each of said copies so mailed and addressed was enclosed in a separate envelope, sealed, with the postage thereon fully prepaid.

I declare under pe
nalty of perjury that the foregoing is true and correct.

Executed at Stockton, California on the date above specified.

Deputy Court Clerk



Filed SEP 26 2006
By

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN JOAQUIN

| | |
|---|---|
| In the Matter of the Petition of<br><br>DAVID GENE LANCASTER<br><br>for Writ of Habeas Corpus. | CASE NO. SC048957A<br>CERTIFICATE OF SERVICE BY MAIL |

I, the undersigned, declare that I am a deputy of the Clerk of the Superior Court of San Joaquin County, State of California, and not a party to the action; on SEP 26 2006 I deposited in the United States Post Office at Stockton, California, true and correct copies of the Order regarding the above-entitled petition for writ of habeas corpus, a printed copy of which is hereto attached and made a part hereof, one copy of which being addressed to each of the following named persons at the following named addresses:

DAVID GENE LANCASTER E-96955
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689
SOLEDAD, CA 93960-0689

I further declare that each of said copies so mailed and addressed was enclosed in a separate envelope, sealed, with the postage thereon fully prepaid. I declare under penalty of perjury that the foregoing is true and correct.

Executed at Stockton, California on the date above specified.

Deputy Court Clerk

IN THE

# Court of Appeal of the State of California

IN AND FOR THE

## THIRD APPELLATE DISTRICT

FILED

NOV 16 2006

COURT OF APPEAL - THIRD DISTRICT
DEENA C. FAWCETT

BY________________ Deputy

In re DAVID G. LANCASTER on Habeas Corpus.

C054064
Monterey County
No.

BY THE COURT:

The petition for writ of habeas corpus is denied.

Dated: November 16, 2006

CANTIL-SAKAUYE, Acting P.J.

--------------------------------

cc: See Mailing List

Name David G. Lancaster

Address P.O. Box 689

Soledad, CA. 93960-0689

Pro se

CDC or ID Number E-96955

FILED

NOV -7 2006

COURT OF APPEAL - THIRD DISTRICT
DEENA C. FAWCETT

BY__________________Deputy

THIRD DISTRICT COURT OF APPEAL

IN THE STATE OF CALIFORNIA
(Court)

David Gene LANCASTER,
Petitioner

vs.

A.P. KANE, Warden, Soledad,
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. C054064
(To be supplied by the Clerk of the Court)

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**
- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.
- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.
- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."
- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.
- If you are filing this petition in the Court of Appeal, file the original and four copies.
- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.
- Notify the Clerk of the Court in writing if you change your address after filing your petition.
- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the Judicial Council of California
MC-275 [Rev. January 1, 1999]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.,
Cal. Rules of Court, rules 56.5, 201(h)

# PROOF OF SERVICE BY MAIL
## BY PERSON IN STATE CUSTODY
(C.C.P. §§ 1013(A), 2015,5)

I, David Lancaster, declare:

I am over 18 years of age and I am party to this action. I am a resident of CORRECTIONAL TRAINING FACILITY prison, in the County of Monterrey, State of California. My prison address is:

David Lancaster, CDCR #: E-96955
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: CW-219-Up
SOLEDAD, CA 93960-0689.

On Nov. 29, 2007, I served the attached:

Petition under 28 U.S.C. § 2254 For writ of Habeas Corpus by a Person in State Custody.

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope (verified by prison staff), with postage thereon fully paid, in the United States Mail in a deposit box so provided at the above-named institution in which I am presently confined. The envelope was addressed as follows:

CLERK of the Court
U.S. District Court
Eastern District of California
501 "I" Street, Suite 4-200
Sacramento, CA. CA. 95814

State of CAlifornia
Department of Justice
Office of the Attorney General
P.O. Box 944255
Sacrament, CA. 94244-2550

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on Nov. 29, 2007.

David Lancaster
Declarant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

FILED

DEC 17 2007

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY DEPUTY CLERK

DAVID LANCASTER,
Plaintiff(s)/Petitioner(s),

vs.

CASE NO. 2:07-CV-02583-GEB-KJM

A. P. KANE,
Defendant(s)/Respondents(s).

---

☐ **CONSENT TO JURISDICTION OF UNITED STATES MAGISTRATE JUDGE**

In accordance with the provisions of Title 28, U.S.C Sec. 636(c)(1), the undersigned hereby voluntarily consents to have a United States Magistrate Judge conduct all further proceedings in this case, including trial and entry of final judgment, with direct review by the Ninth Circuit Court of Appeals, in the event an appeal is filed.

Date: 12-10-07 Signature: [signature]

Print Name: David Lancaster
(X) Plaintiff/Petitioner ( ) Defendant/Respondent
( ) Counsel for * Not Applicable.

---

☐ **DECLINE OF JURISDICTION OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to Title 28, U.S.C. Sec 636(c)(2), the undersigned acknowledges the availability of a United States Magistrate Judge but hereby declines to consent.

Date: ____________ Signature: ____________

Print Name: ____________
( ) Plaintiff/Petitioner ( ) Defendant/Respondent
( ) Counsel for * ____________

---

****If representing more than one party, counsel must indicate name of each party responding.***

**UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF CALIFORNIA
Office of the Clerk
501 "I" Street
Sacramento, CA 95814

**Victoria C. Minor**
Clerk of Court

Divisional Office
2500 Tulare Street
Fresno, CA 93721

**December 4, 2007**

**Case Number: 2:07-CV-02583-GEB-KJM**

**Case Title: DAVID LANCASTER, vs. A. P. KANE,**

Dear Litigant,

You are hereby notified that the above case number has been assigned to your action. You are to include the complete case number on all documents sent to the court for filing in this case. Failure to do so results in delayed processing of your documents.

All matters in this action shall be sent to the following address until further notice:

Office of the Clerk
United States District Court
Eastern District of California
501 "I" Street , Suite 4-200
Sacramento, CA 95814

For timely processing of your pleadings or correspondence, please comply with our Local Rules of Court, in particular:

**Local Rule 5-133** The court requires an original plus one copy of each document sent for filing. If you desire to receive a conformed copy for your records, you must send an original and two copies of your document and a pre-addressed postage-paid envelope for us to return your copy to you.

**Local Rule 5-135** Once the defendant(s) have served a responsive pleading, you are under an ongoing duty to serve them with copies of all documents you submit to the court. A proof of service shall be attached to the original of any document lodged or filed with the court, showing the date, manner and place of service. A sample proof of service is attached.

**Local Rule 7-130** Documents submitted to the court must be legible, on 8-½ " x 11" paper, with writing on one (1) side of the page only. Each separate document must be stapled at the top left corner and pre-punched with two (2) holes centered 2-¾" apart, ½" from the top edge of the page. Each page should be numbered consecutively at the bottom.

**Local Rule 7-132** Every document submitted to the court must include your name, address and prisoner identification number in the upper left hand corner of the first page. The caption on the first page must include the title of this court, the title of the action, the case number assigned to this action (including all initials and letters that follow the number), and the title of your document. If you are pursuing more than one action in this court, you must submit a separate original document and the appropriate number of copies for each action in which you want the document filed.

**Local Rule 6–142** A request for extension of time must state the reason an extension is needed. A request for extension of time should be filed before the deadline in question.

**Local Rules 30–250, 33–250, 34–250 and 36–250** Discovery requests or responses should not be submitted to the court unless they are relevant and necessary to support or oppose a motion at issue before the court.

**Local Rule 83–182** Each party appearing in propria persona is under a continuing duty to notify the Clerk and all other parties of any change of address.

**Other Provisions:**

**Request for Case Status** The court will notify you as soon as any action is taken in your case. Due to the large number of civil actions pending before the court, THE CLERK IS UNABLE TO RESPOND IN WRITING TO INDIVIDUAL INQUIRES REGARDING THE STATUS OF YOUR CASE. As long as you keep the court apprised of your current address, you will receive all court decisions which might affect the status of your case.

**Copy Work** The Clerk's Office does not provide copies of documents to parties. Copies of documents may be obtained from Attorney's Diversified Service (ADS) by writing to them at: 1424 21st Street, Sacramento, CA 95814, or by phoning 916–441–4396 or 916–441–4466. The court will provide copies of docket sheets at $0.50 per page. **Note: In Forma Pauperis** status does not include the cost of copies.

Victoria C. Minor
Clerk of Court
United States District Court

by: /s/ L. Mena–Sanchez
Deputy Clerk

The following is a sample Proof of Service. Pursuant to Rule 5 of the F.R.Cv.P. and Local Rule 5–135, each document filed after the court orders service in your case shall be served on opposing counsel and a proof of service attached to your document filed with the court.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

(Case Title) ______________________
Plaintiff or Petitioner

V.

Case Number: 2:99–CV–99999 ABC DFG
(example case no.)

______________________
Defendant or Respondent

**SAMPLE PROOF OF SERVICE**

______________________ /

I hereby certify that on (Date) ______________________, I served a copy

of the attached (Title of Document Served and Filed) ______________________,

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said

enevelope in the United States Mail at (Location of Mailing) ______________________:

**(List Name and Address of Each Defendant or Attorney Served)**

I declare under penalty of perjury that the foregoing is true and correct.

______________________
(Name of Person Completing Service)

OP UJDF !P G!BWBJMBCJMJUZ !P G!B !N BHJTUSBUF !KVEHF

UP !FYFSDJTF !KVSJTEJDUJP O!BOE !BQQFBM!JOTUSVDUJP OT

!!!!!Z pv!bsf !i f sf cz!opujgj f e!jo!bddpsebodf !x j ui !39!V/T/D!° 747)d*-!G/S/DjwQ/84!boe!Mpdbm Svmf!84. 416-!ui f !Vojuf e!Tubuf t !N bhjt usbuf !Kvehf t !tjuujoh!jo!Tbdsbn f oup!boe!Gsf t op!bsf !bwbjmbcmf up!f yf sdjtf !ui f !dpvsu(t !dbtf !ejt qpt jujwf !kvsjt ejdujpo!boe!up!dpoevdu!boz!ps!bmm!dbtf !ef t qpt jujwf qspdf f ejoht !jo!ui jt !bdujpo-!jodmvejoh!n pujpot !up!ejt n jt t -!n pujpot !gps!t vn n bsz!kvehn f ou-!b!kvsz ps!opokvsz!usjbm-!boe!f ousz!pg!b!gjobm!kvehn f ou/!!Fyf sdjtf !pg!ui jt !kvsjt ejdujpo!cz!b!N bhjt usbuf !Kvehf jt !i px f wf s-!qf sn juuf e!pomz!jg!bmm!qbsujf t !wpmvoubsjmz!dpot f ou/!!Z pv!n bz-!x j ui pvu!bewf stf tvct uboujwf !dpot f r vf odf t -!x j ui i pme!zpvs!dpot f ou-!cvu!ui jt !x jmm!qsf wf ou!ui f !dpvsu(t !dbtf ejt qpt jujwf !kvsjt ejdujpo!gspn !cf joh!f yf sdjtf e!cz!b!N bhjt usbuf !Kvehf /

!!!!!Boz!bqqf bm!gspn !b!kvehn f ou!f ouf sf e!cz!b!N bhjt usbuf !Kvehf !jt !ubl f o!ejsf dumz!up!ui f !Vojuf e Tubuf t !Dpvsu!pg!Bqqf bmt!gps!ui f !Ojou i !Djsdvju!ps-!x i f sf !bqqspqsjbuf -!gps!ui f !Gf ef sbm!Djsdvju!jo!ui f tbn f !n boof s!bt !bo!bqqf bm!gspn !boz!pui f s!kvehn f ou!pg!b!Ejt usjdu!Dpvsu/

!!!!!X i f ui f s!ps!opu!ui f !qbsujf t !dpot f ou!up!qvstvbou!up!39!V/T/D/!° !747)d*!ui f !bt t jhof e N bhjt usbuf !Kvehf !x jmm!i f bs!bmm!n pujpot !f ydf qu!ui pt f !dbt f !ejt qpt jujwf !n pujpot !t f u!gpsui !jo!39 V/T/D/!° !747)c*)2*)B*/

!!!!!!B !dpqz!pg!ui f !Gpsn !gps!#Dpot f ou!up!0Ef dmjof !pg!Kvsjt ejdujpo!pg!V ojuf e!Tubuf t !N bhjt usbuf Kvehf#!jt !buubdi f e!i f sf up!gps!qsp!qf s!vt f !boe!buupsof z!jogpsn bujpo/!!Ui jt !gpsn !jt !bwbjmbcmf!jo gjmmbcmf!/qeg!gpsn bu!po!ui f !dpvsu(t !x f c!tjuf !bu!x x x /dboe/vt dpvsut/hpw!gps!bmm!buupsof z!FDG!gjmf st / Ui jt !gpsn !n bz!cf !gjmf e!ui spvhi !DN 0FDG!ps!cz!qsp!tf !mjujhbout !bu!ui f !bqqspqsjbuf !Dmfsl (t Pggjdf !mpdbujpo/

| Pggjdf !pg!ui f !Dmfsl | Pggjdf !pg!ui f !Dmfsl |
|---|---|
| 612!J!Tusf f u-!Sppn !5. 311 | 3611!Uvmbsf !Tusf f u-!Tvjuf !2612 |
| Tbdsbn f oup-!DB!: 6925 | Gsf t op-!DB!: 4832 |

VOJUFE!TUBUFT!EJTUSJDU!DPVSU
FBTUFSO!EJTUSJDU!PG!DBMJGPSOJB

EBWJE!MBODBTUFS-
!!!!!!!!Qmbjoujgg)t*0Qfujujpofs)t*-

wt/

DBTF!OP/!!3;18.DW.13694.HFC.LKN

B/!Q/!LBOF-
!!!!!!!!Efgfoebou)t*0Sftqpoefou)t*/

!JNQPSUBOU
!JG!ZPV!DIPPTF!UP!DPOTFOU!PS!EFDMJOF!UP!DPOTFOU!UP!KVSJTEJDUJPO!PG B!VOJUFE!TUBUFT!NBHJTUSBUF!KVEHF-!DIFDL!BOE!TJHO!UIF!BQQSPQSJBUF TFDUJPO!PG!UIJT!GPSN!BOE!SFUVSO!JU!UP!UIF!DMFSL(T!PGGJDF/

☐ DPOTFOU!UP!KVSJTEJDUJPO!PG
VOJUFE!TUBUFT!NBHJTUSBUF!KVEHF

!!!!!Jo!bddpsebodf!xjui!uif!qspwjtjpot!pg!Ujumf!39-!V/T/D/!Tfd/!747)d*)2*-!uif!voefstjhofe!ifsfcz!wpmvoubsjmz!dpotfout!up!ibwf!b!Vojufe!Tubuft!Nbhjtusbuf!Kvehf!dpoevdu!bmm!gvsuifs!qspdffejoht!jo!uijt!dbtf-!jodmvejoh!usjbm!boe!fousz!pg!gjobm!kvehnfou-!xjui!ejsfdu!sfwjfx!cz!uif!Ojoui!Djsdvju!Dpvsu!pg!Bqqfbmt-!jo!uif!fwfou!bo!bqqfbm!jt!gjmfe/

!!!!!!!!Ebuf;!`````````````````` Tjhobuvsf;!````````````````````````````

Qsjou!Obnf;!````````````````````````````
!!!)!*!Qmbjoujgg0Qfujujpofs!!)!*!Efgfoebou0Sftqpoefou
)!*!Dpvotfm!gps!+`````````````````````````

☐ EFDMJOF!PG!KVSJTEJDUJPO!PG
VOJUFE!TUBUFT!NBHJTUSBUF!KVEHF

!!!!!Qvstvbou!up!Ujumf!39-!V/T/D/!Tfd/!747)d*)3*-!uif!voefstjhofe!bdlopxmfehft!uif!bwbjmbcjmjuz!pg!b!Vojufe!Tubuft!Nbhjtusbuf!Kvehf!cvu!ifsfcz!efdmjoft!up!dpotfou/

!!!!!!!!Ebuf;!`````````````````` Tjhobuvsf;!````````````````````````````

Qsjou!Obnf;!````````````````````````````
!!!)!*!Qmbjoujgg0Qfujujpofs!!)!*!Efgfoebou0Sftqpoefou
)!*!Dpvotfm!gps!+`````````````````````````

+Jg!sfqsftfoujoh!npsf!uibo!pof!qbsuz-!dpvotfm!nvtu!joejdbuf!obnf!pg!fbdi!qbsuz!sfqsftfoujoh/

STATES DISTRICT COURT
N DISTRICT OF CALIFORNIA
OF THE CLERK
REET, SUITE 4-200
MENTO, CA 95814-2322

BUSINESS

049J82023891
$00.970
04/04/2008
Mailed From 95814
US POSTAGE

RECEIVED

APR - 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA